UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

DIESEL PROPS S.R.L. and
DIESEL KID S.R.L.,

                                           Civil Action No. 07 CV 9580 (HB)

                          Plaintiffs,

                -against-                                 **COMPLAINT**


GREYSTONE BUSINESS CREDIT II LLC
and GLOBAL BRAND MARKETING INC.,

                           Defendants.
-----------------------------------------------------------------x

       Plaintiffs Diesel Props S.r.l. ("Props") and Diesel Kid S.r.l. ("Kid"), by their attorneys Dreier LLP, allege on knowledge as to their own acts and otherwise on information and belief as follows:

### NATURE OF THE ACTION

       1.     This is an action for breach of contract, unjust enrichment and conversion involving Defendants failure to pay for $16 million in Diesel branded shoes, millions of dollars in consequential damages and the attempt by Defendants to convert 158,927 pairs of Diesel branded shoes owned by Plaintiffs. Plaintiffs seek an injunction, damages, return of all of their property and related relief.

### JURISDICTION AND VENUE

       2.     This Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1332. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of a foreign state and citizens of different states. Venue is properly founded in this district pursuant to 28 U.S.C. § 1391(a).

## THE PARTIES

3.     Plaintiff Diesel Props S.r.l. ("Props") is a corporation organized under the laws of Italy with registered offices at Via Fosse 14, Marostica (Vicenza), Italy.  Among other things, Props is involved in the sale of men's and women's footwear bearing the Diesel trademarks owned by Diesel S.p.A. ("Spa").  Props is also the exclusive licensee of Spa, the owner of the "Diesel" trademarks, for the manufacture and sale worldwide for adult footwear bearing the trademarks belonging to Spa.

4.     Plaintiff Diesel Kid S.r.l. ("Kid") is a corporation organized under the laws of Italy with registered offices at Via Fosse 14, Marostica (Vicenza), Italy.  Among other things, Kid is involved in the sale of children's footwear bearing the Diesel trademarks owned by Spa ("Spa"). Kid is also a licensee of Spa for the manufacture and sale worldwide for children's footwear bearing the trademarks belonging to Spa.

5.     Non-party Spa is a corporation organized under the laws of Italy with registered offices at Via dell'Industria 7, Molvena (Vicenza), Italy.  Among other things, Spa is involved in the ownership and licensing of the Diesel trademarks.

6.     Defendant Greystone Business Credit II LLC ("Greystone") is a limited liability company organized under the laws of the State of Delaware, with a principal place of business at 152 W. 57th St., New York, NY 10019.

7.     Defendant Global Brand Marketing Inc. ("GBMI") is a corporation organized under the laws of the State of California, with a principal place of business at 6410 Via Real, Carpinteria, CA 93013.

2

## FACTUAL BACKGROUND

8.      Spa, Props and Kid are involved in the licensing, manufacture, distribution and/or sale of Diesel branded clothing, footwear, accessories and other items worldwide. Spa is the owner of numerous valuable trademarks in the United States and elsewhere using the Diesel name, and those trademarks, from time to time, have been licensed to Props and Kid by Spa.

9.      On November 30, 2001, Spa and GBMI entered into a license agreement for GBMI to make and sell Diesel branded adult shoes in numerous areas of the world. That license expired by its terms on December 31, 2006.

10.     On June 3, 2002, Kid and GBMI entered into a license agreement for GBMI to make and sell Diesel branded children's shoes in numerous areas of the world. That license expired by its terms on December 31, 2006.

11.     GBMI was in severe default of its royalty and advertising contribution obligations under the aforementioned licenses as of December 31, 2006.  At that time, GBMI owed Spa and Kid over $11.2 million in back royalties and advertising contributions excluding accrued interest.  That amount remains unpaid.  Indeed, interest continues to accrue.  Under the license agreements, the exclusive forum to recover those amounts is in Milan, Italy, and the license agreements are governed by Italian law.

12.     On November 4, 2005, Props and Kid entered into similar distribution agreements with GBMI (the "Props Distribution Agreement" and the "Kid Distribution Agreement", respectively, and collectively the "Distribution Agreements").  The term of the Distribution Agreements was from May 1, 2006 (for the Spring/Summer 2007

3

collection) through December 31, 2008 (for the Fall/Winter 2008 collection), unless earlier terminated under the agreements.

13.    GBMI continued in severe financial difficulty.  As a result, GBMI negotiated a loan and security agreement with Greystone (the "Loan Agreement").  That Loan Agreement was effective December 4, 2006.  It is governed by New York law and provided for jurisdiction in the state and federal courts in New York County, New York to hear and determine any claims or disputes pertaining to the Loan Agreement or any matter arising out of or related to the Loan Agreement.

14.    In its essence, the Loan Agreement provided for revolving loans of up to $25 million from Greystone to GBMI.  Importantly, the Loan Agreement expressly provided that GBMI expressly authorized Greystone to wire proceeds of revolving loans of GBMI to Diesel pursuant to the terms of an agreement between GBMI, Greystone and Props/Kid with respect to the payment of Diesel invoices.  (Loan Agreement, ¶1.6).

15.    In connection with the Loan Agreement, and prior to its execution, Greystone sought from Spa and Kid – as licensors who were owed substantial amounts for past due royalties and advertising contributions – an acknowledgment that Spa and Kid each consented to GBMI's entry into the Loan Agreement and agreed not to assert security interests, liens, retentions of title or similar rights in assets of GBMI until Greystone was paid in full under the Loan Agreement.  No such letter was requested from – or signed by – Props; and no such letter was requested from Kid under the Distribution Agreement.

16.    Also in connection with the Loan Agreement, Spa, Kid and Props entered into amendments of their prior agreements with GBMI (the "12/7/06 Letter

Agreements"). In the 12/7/06 Letter Agreements, (a) Spa, Kid and GBMI agreed on a mechanism for the payment of the past dues royalties and advertising contributions; (b) Kid and Props amended the Distribution Agreements with GBMI; and (c) Kid and Props conditioned their assent to the Loan Agreement on strict adherence to the payment provisions in a tripartite agreement between GBMI, Greystone and Props/Kid.

17.     Two tripartite agreements – one involving Kid and one involving Props – were executed effective December 4, 2006 (the "TPA" or "ISP"). The TPA provided that GBMI would send copies of purchase orders for Diesel product to Props/Kid and Greystone. Props/Kid would then send a Diesel Invoice to GBMI and Greystone for the ordered goods. Upon request, Greystone would confirm to Props/Kid that the proposed customer was a *bona fide* customer and that there was availability for revolving loans under the Loan Agreement to pay for the goods. Relying on such availability, Props/Kid would then ship the product to GBMI. When GBMI invoiced the retailer for the products ordered, it would send a copy of the Customer Invoice to Props/Kid and Greystone, and Greystone was required to pay Props/Kid the proceeds of a revolving loan in an amount equal to the corresponding Diesel Invoice within two business days. Greystone also unconditionally agreed to provide Props/Kid with written notice of any request for a revolving loan for a Diesel Invoice that was not permitted to be made pursuant to the terms of the Loan Agreement.

18.     That procedure was intended to insure that Props and Kid were paid for shipments. If payment was not made, however, the products remained property of Props or Kid under the Distribution Agreements, which expressly provided that product shipped to GBMI remained the property of Props or Kid until full payment for the shipment by

5

GBMI.  (Distribution Agreements, ¶ 5.4).  The rights of Props and Kid under the Distribution Agreements were expressly preserved by the TPA.

19.     The TPA was governed by New York law and GBMI, Greystone, Props and Kid all submitted to the jurisdiction of the state and federal courts in New York County, New York for the resolution of disputes.

20.     The TPA procedure was streamlined slightly in March 2007.

21.     Pursuant to the TPA, Props/Kid sent Diesel Invoices to Greystone commencing in January 2007, through and including September 3, 2007.  The total amount of those Diesel Invoices due under the TPA was $23.5 million.  The balance owing from Greystone (and GBMI) is $15,941,934, plus return of unpaid product.  That relates to hundreds of thousands of pairs of Diesel branded shoes, many of which have been sold by GBMI to its customers.

22.     With each Diesel Invoice it sent, Props/Kid requested notice from Greystone under the TPA as to whether (i) there was availability under the Loan Agreement for revolving loans to pay the invoice, (ii) GBMI was otherwise prevented from requesting such revolving loans, or (iii) GBMI was not in compliance with, or was in default of, any of the covenants and/or warranties of the Loan Agreement.  Greystone sat mute. On only two occasions – on January 29, 2007 and on August 2, 2007 – did Greystone indicate any issue with the availability of revolving loans.  Indeed, after the January 29, 2007 notice, Greystone paid over $7.6 million in Diesel Invoices.

23.     On June 1, 2007, Props wrote to Greystone to inquire as to why Greystone was five (5) weeks behind in paying Diesel Invoices.  Greystone did not reply.

6

24.    On September 4, 2007, Props and Kid notified Greystone that it had thirty (30) days to cure the specified outstanding defaults under the TPA.  Greystone did not reply and did not cure the defaults.

25.    On September 4, 2007, Props and Kid notified GBMI that it had thirty (30) days to cure the specified outstanding defaults under the Distribution Agreements. GBMI did not cure the defaults.

26.    As a result, on October 17, 2007, Props and Kid notified that the Distribution Agreements were terminated effective October 4, 2007.  At the same time, Spa and Kid informed GBMI of its default under the 12/7/06 Agreement regarding past-due royalties and advertising contributions and demanded immediate payment of all overdue royalties and advertising contributions.

27.    In their October 17, 2007 letters, Props and Kid demanded, *inter alia*, that

- Pursuant to paragraph 12.1 of the Distribution Agreement, within 15 (fifteen) days of October 4, 2007, GBMI shall communicate to the Company its complete inventory of the Products by season of reference;

- GBMI return to the Company all Products in its inventory which has not been paid for by GBMI to the Company. As you know, under paragraph 5.4 of the Distribution Agreement, the ownership of the Products will be transferred to the Distributor only when total payment of the same is collected by the Company;

- Alternatively, that GBMI return to Props/Kid all Diesel Props/Kid product in inventory pursuant to paragraph 12.3 of the Distribution Agreements at the original cost price that GBMI paid for such product –which to date is zero (and as to which Props and Kid will waive their right to be paid).

- Pursuant to paragraphs 11.3 of the Distribution Agreements, GBMI cease taking orders from customers; and

- Pursuant to paragraph 4.3 of the Distribution Agreements, GBMI provide the Company a complete list, and copies, of all open orders in relation to Fall/Winter 2007 and Spring/Summer 2008 seasons.

28.     GBMI has not complied with any of the demands of the October 17, 2007 letters save one – it gave Props and Kid a detailed accounting of Diesel branded shoes in its warehouse – 164,467 pairs.  Of that amount, Greystone and GBMI have not paid for 154,627 pairs of adult shoes and 4,300 pairs of children's shoes, a total of 158,927 pairs (the "Warehouse Product").

29.     That Warehouse Product does not belong to GBMI and Greystone has no rights in the product.  The Warehouse Product belongs to Props and Kid under ¶ 5.4 of the Distribution Agreements.  What is more, even if it did not, Props and Kid have the right to purchase that Warehouse Product from GBMI at cost.

30.     Greystone has asserted that the Warehouse Product is subject to its liens under the Loan Agreement.  It has indicated that it intends to immediately take possession and sell off the Warehouse Product.  Doing so will irreparably harm Props and Kid and their relationships with customers.

31.     The actions of Defendants have already seriously injured Plaintiffs in their businesses.

32.     The goodwill of Props and Kid and its customer relations are the lifeblood of its business.  Customers expect prompt delivery of the goods that they have ordered, and they require a level of comfort and certainty that they can rely upon the supplier or distributor with whom they are dealing.  If Greystone wrongly takes possession of the Warehouse Product, those customer expectations and relationships will be irreparably harmed.  Diesel footwear for fall and winter 2007 will not be delivered, in a timely fashion or at all.  Customers will lose money and/or switch to other brands.  And this will occur just at the point that spring and summer 2008 order must be taken and shipped.

Thereafter, product will be missing in normal retail channels causing consumers to switch to other brands further irreparably harming Props and Kid's business and the Diesel brand. Finally, if GBMI or Greystone is allowed to ship the Warehouse Product, much of it will be shipped to improper off-price outlets – as GBMI has already done with other product – further injuring the brand. The harm will be enormous and incalculable.

## FIRST CAUSE OF ACTION
### (Breach of Contract Against Greystone and GBMI)

33.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 32 as if fully set forth herein.

34.    Plaintiffs fully complied with all of their material obligations under the TPA.

35.    As described above, Greystone and GBMI have breached their material obligations under the TPA by failing to pay over $16 million due to Plaintiffs. Moreover, those breaches have seriously injured Plaintiffs' businesses.

36.    As a result, Greystone and GBMI are jointly and severally liable to Plaintiffs in an amount to be proved at trial, presently estimated to exceed $16 million plus interest and consequential damages in the millions of dollars.

## SECOND CAUSE OF ACTION
### (Unjust Enrichment Against Greystone and GBMI)

37.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 36 as if fully set forth herein.

38.    Greystone and GBMI received the proceeds and benefit of the sale of shoes shipped by Plaintiffs to GBMI without paying for those shoes. It is unfair and

unjust for Greystone and GBMI to be allowed to retain those proceeds without payment for the underlying goods.

39.    As a result, Greystone and GBMI are jointly and severally liable to Plaintiffs in an amount to be proved at trial, presently estimated to exceed $16 million plus interest.

### THIRD CAUSE OF ACTION
### (Conversion Against Greystone and GBMI)

40.    Plaintiffs repeat and reallege the allegations of paragraphs 1 through 39 as if fully set forth herein.

41.    The Warehouse Product, as well as related orders concerning product to be shipped to customers, is property of Props and Kid.  GBMI has no right to sell the Warehouse Product since it has not paid for it.  Plaintiffs have demanded the return of the Warehouse Product and orders and GBMI has wrongfully refused to do so.  As a result, GBMI has converted the Warehouse Product and orders.  Moreover, Greystone has threatened to seize the Warehouse Product and sell it as its own property.

42.    The foregoing acts and threatened acts of GBMI and Greystone threaten Plaintiffs with immediate irreparable harm, for which Plaintiffs have no adequate remedy at law.

43.    As a result, Plaintiffs are entitled to an injunction requiring the return of the Warehouse Product and orders and enjoining GBMI and Greystone from seizing, liening, transferring, selling, effecting, taking any action with respect to, distributing or otherwise disturbing or asserting control over the Warehouse Product.

WHEREFORE, Plaintiffs demand judge as follows:

A.    On the First Cause of Action, damages in an amount to be proven at trial, presently estimated to exceed $16 million plus interest and consequential damages in the millions of dollars;

B.    On the Second Cause of Action, damages in an amount to be proven at trial, presently estimated to exceed $16 million plus interest;

C.    On the Third Cause of Action, directing that GBMI and Greystone return the Warehouse Product and orders to Plaintiffs and enjoining and restraining GBMI and Greystone, and their officers, members, agents, servants, employees and attorneys and those in active concert or participation with them, from seizing, liening, transferring, selling, effecting, taking any action with respect to, distributing or otherwise disturbing or asserting control over the Warehouse Product;

D.    Prejudgment interest and costs; and

E.    Granting Plaintiffs such other, further and different relief as the nature of the case may require or as may be determined to be just, equitable, and proper by this Court.

Dated: New York, New York
       October 26, 2007                    Respectfully submitted,

                                          s/ Ira S. Sacks
                                          Ira S. Sacks
                                          Mark S. Lafayette
                                          Dreier LLP
                                          499 Park Avenue
                                          New York, NY 10022
                                          (212) 328-6100