UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

DIESEL PROPS S.R.L. and
DIESEL KID S.R.L.,

                                        Plaintiffs,

      -against-

Civil Action No. 07 CV 9580 (HB)

**DECLARATION OF GERMANO FERRARO**

GREYSTONE BUSINESS CREDIT II LLC
and GLOBAL BRAND MARKETING INC.,

                                        Defendants.
---------------------------------------------------------------x

        GERMANO FERRARO, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury under the laws of the United States as follows:

        1.     I am Managing Director of Diesel Kid S.r.l. ("Kid"), a plaintiff herein.  I submit this declaration in support of Plaintiffs' Diesel Props S.r.l.'s ("Props") and Kid's motion for a temporary restraining order and a preliminary injunction restraining Defendants Global Brand Marketing, Inc. ("GMBI") and Greystone Business Credit II LLC ("Greystone") from seizing, liening, transferring, selling, effecting, distributing or otherwise disturbing or asserting control over the inventory of 158,927 pairs of Diesel branded footwear (the "Warehouse Product") presently believed to be stored at a warehouse used by GBMI located in Chino, California (c/o Gilbert West facilities) for which GBMI and Greystone have not paid.  Other than as expressly set forth, I have personal knowledge of all facts set forth herein.

2.  As set forth in more detail below, Kid is under threat of imminent irreparable harm absent the immediate issuance of a temporary restraining order and, thereafter, the issuance of a preliminary injunction. As set forth in the accompanying Declaration of Luigi Mezzasoma, Managing Director of Props, dated October 26, 2007, Greystone has, without right, threatened to immediately take possession and sell off the Warehouse Product, the children's shoe portion of which is rightfully the property of Kid. Doing so will irreparably harm Kid. Not only will Kid lose control over trademarked goods, causing consumer confusion, but Kid's relationships with customers will be irreparably damaged due to the tremendous number of orders which will go unfilled or delayed. Kid's position in the footwear market will also suffer incalculable damage due to the absence of its product in its normal channels of distribution. Accordingly, a temporary restraining order is warranted and necessary to preserve the status quo pending a resolution of this action.

## **BACKROUND FACTS**

3.  Spa and Kid are involved in the licensing, manufacture, distribution and/or sale of Diesel branded clothing, footwear, accessories and other items worldwide. Spa is the owner of numerous valuable trademarks in the United States and elsewhere using the Diesel name. A copy of trademark registrations owned by Spa in the United States is included in the exhibit binder (the "Exhibit Binder"), filed herewith, as Exhibit A. Those trademarks have been licensed to Kid for the manufacturing and sales worldwide of children's footwear.

4.  On November 30, 2001, Spa and GBMI entered into a license agreement for GBMI to make and sell Diesel branded adult shoes in numerous areas of the world.

That license expired by its terms on December 31, 2006. On June 3, 2002, Kid and GBMI entered into a license agreement for GBMI to make and sell Diesel branded children's shoes in numerous areas of the world. That license expired by its terms on December 31, 2006.

5. GBMI was in severe default of its royalty obligations and advertising contributions under the aforementioned licenses as of December 31, 2006. At that time, GBMI owed Spa and Kid over $11.2 million in back royalties and advertising contributions, excluding interest. That amount remains unpaid. Indeed, interest continues to accrue. Under the license agreements, the exclusive forum to recover those amounts is in Milan, Italy, and the license agreements are governed by Italian law.

6. On November 4, 2005, Kid entered into a distribution agreement with GBMI (the "Distribution Agreement"). The term of the Distribution Agreement was from May 1, 2006 (for the Spring/Summer 2007 collection) through December 31, 2008 (for the Fall/Winter 2008 collection), unless earlier terminated under the agreements. (The Distribution Agreement is included in Exhibit B in the Exhibit Binder).

7. Because many of the documents included in the Exhibit Binder are confidential by their terms and contain sensitive business terms, we ask that the Exhibit Binder be held confidential and filed under seal.

8. GBMI continued in severe financial difficulty. As a result, GBMI negotiated a loan and security agreement with Greystone (the "Loan Agreement"). That Loan Agreement was effective December 4, 2006. It is governed by New York law and provided for jurisdiction in the state and federal courts in New York County, New York to hear and determine any claims or disputes pertaining to the Loan Agreement or any

matter arising out of or related to the Loan Agreement. (The Loan Agreement is Exhibit C in the Exhibit Binder.)

9. In its essence, the Loan Agreement provided for revolving loans of up to $25 million from Greystone to GBMI. Importantly, the Loan Agreement expressly provided that GBMI expressly authorized Greystone to wire proceeds of revolving loans of GBMI to Props or Kid pursuant to the terms of agreements between GBMI, Greystone and Props or Kid with respect to the payment of Diesel invoices. (Loan Agreement, ¶1.6).

10. In connection with the Loan Agreement, and prior to its execution, Greystone sought from Spa and Kid – as licensors who were owed substantial amounts for past due royalties and advertising contributions – an acknowledgment that Spa and Kid each consented to GBMI's entry into the Loan Agreement and agreed not to assert liens, retention of title or similar rights in assets of GBMI until Greystone was paid in full under the Loan Agreement. (See November 30, 2006 and December 1, 2006 letter agreements (the "12/1/06 Agreements"), included in Exhibit D in the Exhibit Binder.) No such letter was requested from – or signed by – Kid in connection with the Distribution Agreement.

11. Also in connection with the Loan Agreement, Spa and Kid entered into amendments of their prior agreements with GBMI. (See December 7, 2006 letter from GBMI (the "12/7/06 Letter Agreement"), with attached agreements, Exhibit E in the Exhibit Binder.) In the 12/7/06 Letter Agreement, (a) Spa and GBMI agreed on a mechanism for the payment of the past dues royalties and advertising contributions; (b) Kid amended the Distribution Agreement with GBMI; and (c) Kid conditioned their

assent to the Loan Agreement on strict adherence to the payment provisions in a tripartite agreement between GBMI, Greystone and Props.

12. The tripartite agreement was executed effective December 4, 2006 (the "TPA" or "ISP") (The TPA is Exhibit F in the Exhibit Binder.) The TPA provided that GBMI would send copies of purchase orders for Diesel product to Kid and Greystone. Kid would then send a Diesel Invoice to GBMI and Greystone for the ordered goods. <u>Upon request</u>, Greystone would confirm to Kid that the proposed customer was a *bona fide* customer and that there was availability for revolving loans under the Loan Agreement to pay for the goods. Relying on such availability, Kid would then ship the product to GBMI. When GBMI invoiced the retailer for the products ordered, it would send a copy of the Customer Invoice to Kid and Greystone, and Greystone was required to pay Kid the proceeds of a revolving loan in an amount equal to the corresponding Diesel Invoice within two business days. Greystone also <u>unconditionally</u> agreed to provide Kid with written notice of any request for a revolving loan for a Diesel Invoice that was not permitted to be made pursuant to the terms of the Loan Agreement.

13. That procedure was intended to insure that Kid was paid for shipments. If payment was not made, however, the products remained property of Kid under the Distribution Agreement, which expressly provided that product shipped to GBMI remained the property of Kid until full payment for the shipment by GBMI. (Distribution Agreement, ¶ 5.4). The rights of Kid under the Distribution Agreement were expressly preserved by the TPA.

14. The TPA was governed by New York law and GBMI, Greystone and Kid all agreed to submit to the jurisdiction of the state and federal courts in New York County, New York for the resolution of disputes.

15. The TPA procedure was streamlined slightly in March 2007. (A copy of the revised procedure is Exhibit G in the Exhibit Binder).

16. Pursuant to the TPA, Kid sent Diesel Invoices to Greystone commencing in January 2007, through and including June 2007. The total amount due from Greystone (and GBMI) was $1.1 million. The present balance, excluding interest, is $ .7 million.

17. With each Diesel Invoice it sent, Kid requested notice from Greystone under the TPA as to whether (i) there was availability under the Loan Agreement for revolving loans to pay the invoice, (ii) GBMI was otherwise prevented from requesting such revolving loans, or (iii) GBMI was not in compliance with, or was in default of, any of the covenants and/or warranties of the Loan Agreement. Greystone sat mute.

18. On September 4, 2007, Kid notified Greystone that it had thirty (30) days to cure the specified outstanding defaults under the TPA. (A copy of that default notice is included in Exhibit J in the Exhibit Binder). Greystone did not reply and did not cure the defaults.

19. On September 4, 2007, Kid notified GBMI that it had thirty (30) days to cure the specified outstanding defaults under the Distribution Agreement. (A copy of that default notice is included in Exhibit K in the Exhibit Binder). GBMI did not cure the defaults.

20. As a result, on October 17, 2007, Kid notified GBMI that the Kid Distribution Agreement was terminated effective October 4, 2007. At the same time, Spa

and Kid informed GBMI of its default under the 12/7/06 Agreement regarding past-due royalties and advertising contributions and demanded immediate payment of all overdue royalties, advertising contributions, accrued interest and liquidated damages. (A copy of those letters is included in Exhibit L in the Exhibit Binders).

21. In its October 17, 2007 letter, Kid demanded, *inter alia*, that

- Pursuant to paragraph 12.1 of the Distribution Agreement, within 15 (fifteen) days of October 4, 2007, GBMI shall communicate to the Company its complete inventory of the Products by season of reference;

- GBMI return to the Company all Products in its inventory which has not been paid for by GBMI to the Company. As you know, under paragraph 5.4 of the Distribution Agreement, the ownership of the Products will be transferred to the Distributor only when total payment of the same is collected by the Company;

- Alternatively, that GBMI return to Kid all Kid product in inventory pursuant to paragraph 12.3 of the Distribution Agreement at the original cost price that GBMI paid for such product –which to date is zero (and as to which Kid will waive its right to be paid).

- Pursuant to paragraphs 11.3 of the Distribution Agreement, GBMI cease taking orders from customers; and

- Pursuant to paragraph 4.3 of the Distribution Agreement, GBMI provide the Company a complete list, and copies, of all open orders in relation to Fall/Winter 2007 and Spring/Summer 2008 seasons.

22. GBMI has not complied with any of the demands of the October 17, 2007 letters save one – it gave Kid and Props a detailed accounting of Diesel branded shoes in the warehouse it uses – 164,467 pairs. GBMI has not paid Kid for 4,300 of those children's shoes (the "Warehouse Product").

23. That Warehouse Product does not belong to GBMI and Greystone has no rights in the product. The Warehouse Product consisting of children's shoes belongs to Kid under ¶ 5.4 of the Distribution Agreement. What is more, even if it did not, Kid has the right to purchase that Warehouse Product from GBMI at cost pursuant to paragraph

12.3 of the Distribution Agreement.

24. As set forth in the accompanying Declaration of Luigi Mezzasoma, dated October 26, 2007, on October 17, 2007, he received an email from Sudeepto Datta, the President of GBMI. Mr. Datta forwarded to Mr. Mezzasoma an email from Greystone indicating that Greystone asserts that the Warehouse Product is subject to its liens under the Loan Agreement and that it intends to take possession of the Warehouse Product. Further, on October 23, 2007, Mr. Mezzasoma received a telephone call from Mr. Datta advised who advised Mr. Mezzasoma that Greystone intends to take possession of the Warehouse Product on Friday October 26, 2007 and sell off the Warehouse Product. Doing so will irreparably harm Kid and its relationships with customers.

25. The goodwill of Kid and its customer relations are the lifeblood of its business. Customers expect prompt delivery of the goods that they have ordered, and they require a level of comfort and certainty that they can rely upon the supplier or distributor with whom they are dealing. If Greystone wrongly takes possession of the Warehouse Product, those customer expectations and relationships will be irreparably harmed. Diesel footwear for fall and winter 2007 will not be delivered, in a timely fashion or at all. Customers will lose money and/or switch to other brands. And this will occur just at the point that spring and summer 2008 order must be taken and shipped. Thereafter, product will be missing in our normal retail channels causing consumers to switch to other brands further irreparably harming our business and the Diesel brand. Finally, if GBMI or Greystone is allowed to ship the Warehouse Product, much of it will be shipped to improper off-price outlets – as GBMI has already done with other product – further injuring the brand. The harm will be enormous and incalculable.

26. As a result, the temporary restraining order and preliminary injunction must be entered immediately.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: October 26, 2007                                    s/ Germano Ferraro_____
                                                           Germano Ferraro