UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

DIESEL PROPS S.R.L. and
DIESEL KID S.R.L.,

                      Plaintiffs,

      -against-


GREYSTONE BUSINESS CREDIT II LLC
and GLOBAL BRAND MARKETING INC.,

                      Defendants.
----------------------------------------------------------------x

Civil Action No.


# MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR A
# TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION


Ira S. Sacks
Mark S. Lafayette
DREIER LLP
499 Park Avenue
New York, New York 10022
(212) 328-6100

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

FACTS ...........................................................................................................................................2

ARGUMENT .................................................................................................................................9

I.      THE COURT SHOULD ISSUE A TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION ENJOINING
GBMI & GREYSTONE FROM TAKING ANY ACTION
WITH RESPECT TO THE WAREHOUSE PRODUCT ...................................................9

    A.    Diesel Will Be Irreparably Harmed In The Absence
of A Temporary Restraining Order And Preliminary Injunction..................................9

        1.    Diesel's Business Will Be Irreversibly And Adversely Damaged .........................10

        2.    Diesel Will Suffer A Loss Of Goodwill And Reputation .......................................10

        3.    Monetary Damages To Diesel Are Inadequate Or
Cannot Be Reasonably Calculated..........................................................................12

    B.    Diesel Has Demonstrated A Likelihood of Success On The Merits............................13

        1.    Diesel Will Succeed On Its Claim For Conversion ...............................................13

    C.    A Balancing Of The Equities Clearly Favors Interim Relief......................................14

Conclusion ....................................................................................................................................15

## **TABLE OF AUTHORITIES**

**Case**                                                                                                  **Page(s)**

*Abdul Wali v. Coughlin*,
    754 F.2d 1015 (2d Cir.1985)..................................................................................13

*Brenntag Int'l Chems. Inc. v. Bank of India*,
    175 F.3d 245 (2d Cir. 1999)....................................................................................10

*Cardiocall, Inc. v. Serling and EKG Professionals, Inc.*,
    492 F.Supp.2d 139 (E.D.N.Y. 2007) .......................................................................13

*Ecolab, Inc. v. Paolo*,
    753 F.Supp. 1100 (E.D.N.Y. 1991) ........................................................................10

*EMI Latin v. Bautista*,
    2003 WL 470333 ...............................................................................................11, 12

*Hamilton Watch Co. v. Benrus Watch Co.*,
    206 F.2d 738 (2d Cir. 1953)....................................................................................13

*Painewebber Inc. v. Nwogugu*,
    1998 WL 545327 (S.D.N.Y. 1998).........................................................................13

*Register.com, Inc. v. Verio, Inc.*,
    126 F.Supp.2d 238 (S.D.N.Y. 2000).......................................................................12

*Reuters Ltd. v. United Press Int'l, Inc.*,
    903 F.2d 904 (2d Cir. 1990)................................................................................9, 10

*Roso-Lino Beverage Distribs., Inc. v. Coca -Cola Bottling Co. of New York, Inc.*,
    749 F.2d 124 (2d Cir. 1984)................................................................................9, 14

*S.E.C. v. Princeton Econ. Int'l, Ltd.*,
    73 F. Supp. 2d 420 (S.D.N.Y. 1999).......................................................................10

*Smith v. Goord*,
    2007 WL 2229832 (W.D.N.Y. July 31, 2007).........................................................9

*Tom Doherty Assocs. v. Saban Entmt., Inc.*,
    60 F.3d 27 (2d Cir. 1995).............................................................................9, 10, 11

*Travelers Int'l AG v. Trans World Airlines, Inc.*,
    684 F. Supp 1206 (S.D.N.Y. 1986) ........................................................................14

*TVT Records v. Island Def Jam Music*,
   225 F.Supp.2d 398 (S.D.N.Y. 2002)..................................................................................11

*Velez v. Prudential Health Care Plan of N.Y.*,
   943 F. Supp. 332 (S.D.N.Y. 1996) ...................................................................................9

*Xelus, Inc. v. Servigistics, Inc.*,
   371 F.Supp.2d 387(W.D.N.Y. 2005)................................................................................11

Plaintiffs Diesel Kid, S.r.l. ("Kid") and Diesel Props, S.r.l. ("Props") (collectively, "Diesel") respectfully submit this memorandum of law in support of their motion for a temporary restraining order and a preliminary injunction, pursuant to Fed. R. Civ. P. 65, enjoining defendants Global Brand Marketing, Inc. ("GBMI") and Greystone Business Credit II LLC ("Greystone") (collectively "Defendants") from seizing, liening, taking any action with respect to, transferring, selling, effecting, distributing or otherwise disturbing, or asserting control over 158,927 pairs (the "Warehouse Product") of Diesel brand shoes that GBMI is holding in a warehouse it uses in Chino, California and directing that GBMI transfer the Warehouse Product to Diesel.

As set forth in more detail below and in the accompanying declarations and exhibits, Props and Kid are under threat of imminent irreparable harm absent the immediate issuance of a temporary restraining order and, thereafter, the issuance of a preliminary injunction. Greystone has, without right, and after failing to pay Kid and Props $16 million, threatened to immediately take possession and sell off the Warehouse Product. Doing so will irreparably harm Props and Kid because Props' and Kid's relationships with wholesale and retail customers, and the goodwill associated with their products, will be irreparably damaged. A tremendous number of footwear orders will go unfilled or will be delayed and Props' and Kids' position in the footwear market will also suffer incalculable damage due to the absence of its product in its normal channels of distribution.

In addition, it is clear that Plaintiffs will succeed on its conversion cause of action against GBMI and Greystone. GBMI has wrongfully retained and has refused to return to Props and Kid 158,927 pairs of Diesel branded footwear which is, without dispute, the property of Kid and

Props. In addition, Greystone is threatening to seize the footwear product and sell it, again despite the fact that such footwear is clearly the property of Props and Kid.

Accordingly, a temporary restraining order and preliminary injunction is warranted and necessary.

## FACTS

Diesel S.p.A ("Spa"), Diesel Props S.r.l. ("Props") and Diesel Kid S.r.l ("Kid") are involved in the licensing, manufacture, distribution and/or sale of Diesel branded clothing, footwear, accessories and other items worldwide. Spa is the owner of numerous valuable trademarks in the United States and elsewhere using the Diesel name. *See* Declaration of Luigi Mezzasoma, dated October 26, 2007 and submitted in support of Plaintiffs' motion at ¶ 3 ("Mezzasoma Decl.); Declaration of Germano Ferraro, dated October 26, 2007 and submitted in support of Plaintiffs' motion at ¶ 3 ("Ferraro Decl."); Exhibit A.[1] Those trademarks have been licensed to Props and Kid for the manufacturing and sales worldwide of adult and children's footwear.

On November 30, 2001, Spa and GBMI entered into a license agreement for GBMI to make and sell Diesel branded adult shoes in numerous areas of the world. That license expired by its terms on December 31, 2006. *See* Mezzasoma Decl. ¶ 4; Ferraro Decl. ¶ 4. On June 3, 2002, Kid and GBMI entered into a license agreement for GBMI to make and sell Diesel branded children's shoes in numerous areas of the world. That license expired by its terms on December 31, 2006. *See* Ferraro Decl. ¶ 4

GBMI was in severe default of its royalty obligations under the aforementioned licenses as of December 31, 2006. At that time, GBMI owed Spa and Kid over $11.2 million in back royalties and advertising contributions, excluding interest. That amount remains unpaid. Indeed,

---

[1] References to exhibits are to the Exhibit Binder filed herewith.

interest continues to accrue. Under the license agreements, the exclusive forum to recover those amounts is in Milan, Italy, and the license agreements are governed by Italian law. *See* Mezzasoma Decl. ¶ 5; Ferraro Decl. ¶ 5. As a result, those claims are not raised in this action.

On November 4, 2005, both Props and Kid entered into a distribution agreement with GBMI (the "Distribution Agreement"). *See* Exhibit B. The term of the Distribution Agreement was from May 1, 2006 (for the Spring/Summer 2007 collection) through December 31, 2008 (for the Fall/Winter 2008 collection), unless earlier terminated under the agreements. *See* Mezzasoma Decl. ¶ 6; Ferraro Decl. ¶ 6.

GBMI continued in severe financial difficulty. As a result, GBMI negotiated a loan and security agreement with Greystone Business Credit II LLC ("Greystone") (the "Loan Agreement"). *See* Exhibit C. That Loan Agreement was effective December 4, 2006. It is governed by New York law and provided for jurisdiction in the state and federal courts in New York County, New York to hear and determine any claims or disputes pertaining to the Loan Agreement or any matter arising out of or related to the Loan Agreement. *See* Mezzasoma Decl. ¶ 8; Ferraro Decl. ¶ 8.

In its essence, the Loan Agreement provided for revolving loans of up to $25 million from Greystone to GBMI. Importantly, the Loan Agreement expressly provided that GBMI expressly authorized Greystone to wire proceeds of revolving loans of GBMI to Props/Kid pursuant to the terms of an agreement between GBMI, Greystone and Props/Kid with respect to the payment of Diesel invoices. *See* Exhibit C ¶ 1.6; Mezzasoma Decl. ¶ 9; Ferraro Decl. ¶ 9.

In connection with the Loan Agreement, and prior to its execution, Greystone sought from Spa and Kid – as <u>licensors</u> who were owed substantial amounts for past due royalties and advertising contributions – an acknowledgment that Spa and Kid each consented to GBMI's

entry into the Loan Agreement and agreed not to assert liens, retention of title or similar rights in assets of GBMI until Greystone was paid in full under the Loan Agreement. *See* Exhibit D. No such letter was requested from – or signed by – Props; and no such letter was requested from – or signed by – Kid in connection with the Distribution Agreement. *See* Mezzasoma Decl. ¶ 10; Ferraro Decl. ¶ 10.

Also in connection with the Loan Agreement, on December 7, 2006, Spa, Props and Kid entered into amendments of their prior agreements with GBMI ("12/7/06 Letter Agreements"). *See* Exhibit E. In the 12/7/06 Letter Agreements, (a) Spa and GBMI agreed on a mechanism for the payment of the past dues royalties and advertising contributions; (b) both Props and Kid amended the Distribution Agreements with GBMI; and (c) both Props and Kid conditioned their assent to the Loan Agreement on strict adherence to the payment provisions in a tripartite agreement between GBMI, Greystone and Props/Kid. *See* Mezzasoma Decl. ¶ 11; Ferraro Decl. ¶ 11.

The tripartite agreement was executed effective December 4, 2006 (the "TPA" or "ISP"). *See* Exhibit F. The TPA provided that GBMI would send copies of purchase orders for Diesel product to Props or Kid and Greystone. Props or Kid would then send a Diesel Invoice to GBMI and Greystone for the ordered goods. <u>Upon request</u>, Greystone would confirm to Props or Kid that the proposed customer was a *bona fide* customer and that there was availability for revolving loans under the Loan Agreement to pay for the goods. Relying on such availability, Props or Kid would then ship the product to GBMI. When GBMI invoiced the retailer for the products ordered, it would send a copy of the Customer Invoice to Props or Kid and Greystone, and Greystone was required to pay Props or Kid the proceeds of a revolving loan in an amount equal to the corresponding Diesel Invoice within two business days. Greystone also <u>unconditionally</u>

-4-

agreed to provide Props or Kid with written notice of any request for a revolving loan for a Diesel Invoice that was not permitted to be made pursuant to the terms of the Loan Agreement. *See* Mezzasoma Decl. ¶ 12; Ferraro Decl. ¶ 12.

That procedure was intended to insure that Props and Kid were paid for shipments. If payment was not made, however, the products remained property of Props or Kid under the Distribution Agreements, which expressly provided that product shipped to GBMI remained the property of Props or Kid until full payment for the shipment by GBMI. *See* Exhibit B, ¶ 5.4. The rights of Props and Kid under the Distribution Agreements were expressly preserved by the TPA. *See* Mezzasoma Decl. ¶ 13; Ferraro Decl. ¶ 13.

The TPA was governed by New York law and GBMI, Greystone and Props/Kid all agreed to submit to the jurisdiction of the state and federal courts in New York County, New York for the resolution of disputes. *See* Mezzasoma Decl. ¶ 14; Ferraro Decl. ¶ 14.

The TPA procedure was streamlined slightly in March 2007. *See* Exhibit G; Mezzasoma Decl. ¶ 15; Ferraro Decl. ¶ 15. Pursuant to the TPA, Props and Kid sent Diesel Invoices to Greystone commencing in January 2007, through and including September 3, 2007. The total amount of those Diesel Invoices due under the TPA was $23.5 million. *See* Declaration of Rosanna Sartori, dated October 26, 2007 and submitted in support of Plaintiffs' motion ("Sartori Decl."), ¶ 4; Ferraro Decl. ¶ 16; Mezzasoma Decl. ¶ 16. The balance owing from Greystone (and GBMI) is $16 million. *See* Sartori Decl. ¶ 4; Ferraro Decl. ¶ 16; Mezzasoma Decl. ¶ 16. That relates to hundreds of thousands of pairs of Diesel branded shoes, many of which have been sold by GBMI to its customers, with the proceeds flowing to Greystone under the Loan Agreement. *See* Sartori Decl. ¶ 4; Mezzasoma Decl. ¶ 16.

With each Diesel Invoice it sent, Props and Kid requested notice from Greystone under the TPA as to whether (i) there was availability under the Loan Agreement for revolving loans to pay the invoice, (ii) GBMI was otherwise prevented from requesting such revolving loans, or (iii) GBMI was not in compliance with, or was in default of, any of the covenants and/or warranties of the Loan Agreement. *See* Exhibit I. Greystone sat mute. On only two occasions – on January 29, 2007 and on August 2, 2007 – did Greystone indicate any issue with the availability of revolving loans. Indeed, after the January 29, 2007 notice, Greystone paid over $7.6 million in Diesel Invoices. *See* Mezzasoma Decl. ¶ 17.

On June 1, 2007, Props wrote to Greystone to inquire as to why Greystone was five (5) weeks behind in paying Diesel Invoices. Greystone did not reply. *See* Mezzasoma Decl. ¶ 18.

On September 4, 2007, Props and Kid notified Greystone that it had thirty (30) days to cure the specified outstanding defaults under the TPA. *See* Exhibit J. Greystone did not reply and did not cure the defaults. *See* Mezzasoma Decl. ¶ 19; Ferraro Decl. ¶ 18.

On September 4, 2007, Props and Kid notified GBMI that it had thirty (30) days to cure the specified outstanding defaults under the Distribution Agreement. *See* Exhibit K. GBMI did not cure the defaults. *See* Mezzasoma Decl. ¶ 20; Ferraro Decl. ¶ 19.

As a result, on October 17, 2007, Props and Kid notified GBMI that the Distribution Agreement was terminated effective October 4, 2007. At the same time, SpA and Kid informed GBMI of its default under the 12/7/06 Agreement regarding past-due royalties and demanded immediate payment of all overdue royalties, accrued interest and liquidated damages. *See* Exhibit L; s*ee also* Mezzasoma Decl. ¶ 21; Ferraro Decl. ¶ 20.

In their October 17, 2007 letters, Props and Kid demanded, *inter alia*, that

- Pursuant to paragraph 12.1 of the Distribution Agreement, within 15 (fifteen) days of October 4, 2007, GBMI shall communicate to the Company its complete inventory of the Products by season of reference;

- GBMI return to the Company all Products in its inventory which has not been paid for by GBMI to the Company. As you know, under paragraph 5.4 of the Distribution Agreement, the ownership of the Products will be transferred to the Distributor only when total payment of the same is collected by the Company;

- Alternatively, that GBMI return to Props all Props product in inventory pursuant to paragraph 12.3 of the Distribution Agreement at the original cost price that GBMI paid for such product –which to date is zero (and as to which Props will waive its right to be paid).

- Pursuant to paragraphs 11.3 of the Distribution Agreement, GBMI cease taking orders from customers; and

- Pursuant to paragraph 4.3 of the Distribution Agreement, GBMI provide the Company a complete list, and copies, of all open orders in relation to Fall/Winter 2007 and Spring/Summer 2008 seasons.

GBMI has not complied with any of the demands of the October 17, 2007 letters save one – it gave Props and Kid a detailed accounting of Diesel branded shoes in the warehouse it uses – 164,467 pairs, of which only 4,501 pairs are children's shoes, the balance being adult shoes. GBMI and Greystone have not paid for 158,927 pairs of those shoes, 154,627 adult and 4,300 children's (the "Warehouse Product"). *See* Mezzasoma Decl. ¶¶ 22-23; Ferraro Decl. ¶¶ 21-22; Sartori Decl. ¶ 5.

That Warehouse Product does not belong to GBMI and Greystone has no rights in the product. The Warehouse Product consisting of adult shoes belongs to Props under ¶ 5.4 of the Distribution Agreement. The Warehouse Product consisting of children's shoes belongs to Kid under ¶ 5.4 of the Distribution Agreement. What is more, even if it did not, both Props and Kid have the right to purchase– and have exercised the right to purchase – that Warehouse Product from GBMI at cost pursuant to paragraph 12.3 of the Distribution Agreement. *See* Exhibit L; Mezzasoma Decl. ¶ 24; Ferraro Decl. ¶ 23.

-7-

On October 17, 2007, Mr. Mezzasoma received an email from Sudeepto Datta, the President of GBMI. Mr. Datta forwarded to Mr. Mezzasoma an email from Greystone indicating that Greystone asserts that the Warehouse Product is subject to its liens under the Loan Agreement and that it intends to take possession of the Warehouse Product. Further, on October 23, 2007, Mr. Mezzasoma received a telephone call from Mr. Datta advised who advised Mr. Mezzasoma that Greystone intends to take possession of the Warehouse Product on Friday October 26, 2007 and sell off the Warehouse Product. Doing so will irreparably harm Kid and its relationships with customers. *See* Mezzasoma Decl. ¶ 25.

The goodwill of Props and Kid and their customer relations are the lifeblood of its business. Customers expect prompt delivery of the goods that they have ordered, and they require a level of comfort and certainty that they can rely upon the supplier or distributor with whom they are dealing. If Greystone wrongly takes possession of the Warehouse Product, those customer expectations and relationships will be irreparably harmed. Diesel footwear for fall and winter 2007 will not be delivered, in a timely fashion or at all. Customers will lose money and/or switch to other brands. And this will occur just at the point that spring and summer 2008 order must be taken and shipped. Thereafter, product will be missing in normal retail channels causing consumers to switch to other brands further irreparably harming our business and the Diesel brand. The harm will be enormous and incalculable. *See* Mezzasoma Decl. ¶ 26; Ferraro Decl. ¶ 25. As a result, the temporary restraining order and preliminary injunction must be entered immediately.

### I.   THIS COURT SHOULD ISSUE A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ENJOINING GBMI AND GREYSTONE FROM TAKING ANY ACTION WITH <u>RESPECT TO THE WAREHOUSE PRODUCT</u>

This Court should issue a temporary restraining order and preliminary injunction enjoining GBMI and Greystone from exercising any rights in the Warehouse Product. Indeed, it should be returned to Props and Kid forthwith. As this Court is well aware, a "party seeking preliminary injunctive relief must establish (a) that the injunction is necessary to prevent irreparable harm and (b) either that (i) it is likely to succeed on the merits of the underlying claim or (ii) there are sufficiently serious questions going to the merits of the claim as to make it a fair ground for litigation and that the balance of the hardships tips decidedly toward the movant." *Tom Doherty Assocs. v. Saban Entmt., Inc.*, 60 F.3d 27, 33-34 (2d Cir. 1995) (citations omitted). *See also Velez v. Prudential Health Care Plan of N.Y.*, 943 F. Supp. 332, 338 (S.D.N.Y. 1996). "In the Second Circuit, the standard for a temporary restraining order is the same as for a preliminary injunction." *Smith v. Goord*, 2007 WL 2229832, at * 1(W.D.N.Y. July 31, 2007). As set forth below, Props and Kid have clearly established that an injunction is necessary to prevent irreparable harm and that they are likely to succeed on the merits in this Action. Accordingly, Props and Kid are entitled to the temporary restraining order sought and a preliminary injunction.

### A.   Diesel Will Be Irreparably Harmed In The Absence <u>of A Temporary Restraining Order And Preliminary Injunction</u>

In determining whether a temporary restraining order or preliminary injunction should issue, the most critical factor is the showing of irreparable harm. *See e.g., Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 907 (2d Cir. 1990); *Roso-Lino Beverage Distribs., Inc. v. Coca-Cola Bottling Co. of New York, Inc.*, 749 F.2d 124, 126 (2d Cir. 1984). As set forth below, if

Defendants are not enjoined from selling the Warehouse Product, Diesel will experience irreparable harm because (i) its business will be irreversibly and adversely damaged, (ii) it will suffer a loss of goodwill, and (iii) it will suffer injury that cannot be adequately compensated by monetary damages.

### 1. Diesel's Business Will Be Irreversibly Damaged

It is well-settled that irreparable harm exists where, "but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chems. Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999) (internal citation omitted); *S.E.C. v. Princeton Econ. Int'l, Ltd.*, 73 F. Supp. 2d 420, 425 (S.D.N.Y. 1999). That is plainly the case here.

Greystone has already indicated its intentions to seize the Warehouse Product and sell it. *See* Mezzasoma Decl. ¶ 25; Ferraro Decl. ¶ 24. In addition, GBMI has failed and refused to return the Warehouse Product to Props and Kid. *See* Mezzasoma Decl. ¶ 22-23; Ferraro Decl. ¶ 21-22. If Greystone is permitted to seize and sell the Warehouse Product, Diesel's business cannot return to the position it previously occupied. Numerous orders will go unfilled or be delayed, and Diesel's position in the footwear market will suffer irreparable damage due to the absence of its product in its normal channels of distribution. *See* Mezzasoma Decl. ¶ 26; Ferraro Decl. ¶ 25. Absence of Diesel footwear in the normal retail channels will cause consumers to switch to other brands, causing irreparable harm to its business. *See* Mezzasoma Decl. ¶ 26; Ferraro Decl. ¶ 25.

### 2. Diesel Will Suffer A Loss Of Goodwill And Reputation

Irreparable harm also exists when a business will suffer a significant loss of goodwill or reputation. *See Tom Doherty Assocs.*, 60 F.3d at 37-39 (holding that a loss of prospective goodwill can constitute irreparable harm); *Reuters Ltd.*, 903 F.2d at 908-909 (same); *Ecolab, Inc.*

*v. Paolo*, 753 F.Supp. 1100, 1110 (E.D.N.Y. 1991); *EMI Latin v. Bautista*, 2003 WL 470333, at *14 (same); *Xelus, Inc. v. Servigistics, Inc.*, 371 F.Supp.2d 387, 390 (W.D.N.Y. 2005) (same). That is also plainly the case here.

The Second Circuit has recognized that damage to business relationships is a significant harm. *See Xelus, Inc.*, 371 F.Supp.2d at 390 (citing *TVT Records v. Island Def Jam Music*, 225 F.Supp.2d 398, 405 (S.D.N.Y. 2002). In *EMI Latin*, for example, this Court enjoined a musical recording artist from interfering with EMI's rights to exploit certain recordings on an album that was to be released by EMI, because its failure to release the album on the scheduled release date could result in EMI's loss of goodwill and reputation with the distributors and retail stores marketing the album. *See EMI Latin*, 2003 WL 470333, at *14.

Diesel stands to lose goodwill and reputation if a temporary restraining order and preliminary injunction are not issued. The Warehouse Product belongs to Diesel, and has been ordered by certain customers. Customers who do not receive promised product will be understandably upset and may not want to buy Diesel footwear in the future. Therefore, there is a great likelihood that if Diesel is unable to deliver promised product, Diesel will lose goodwill if it is unable to deliver the goods as promised to the retailers. *See Tom Doherty Assocs.*, 60 F.3d at 37-39.

Furthermore, if Diesel ultimately prevails in this action, but temporarily loses its ability to deliver goods to its customers, Diesel's long-standing reputation will be irreparably harmed once it becomes known that it was unable to deliver on its promises. Customers expect prompt delivery of the goods that they have ordered, and they require a level of comfort and certainty that they can rely upon the supplier or distributor with whom they are dealing. *See* Mezzasoma Decl. ¶ 26; Ferraro Decl. ¶ 25. If Greystone wrongly takes possession of the Warehouse

Product, those customer expectations and relationships will be irreparably harmed. *See* Mezzasoma Decl. ¶ 26; Ferraro Decl. ¶ 25. Diesel footwear anticipated for the fall and winter 2007 season will not be delivered, in a timely fashion or at all. *See* Mezzasoma Decl. ¶ 26; Ferraro Decl. ¶ 25. Customers will lose money and/or switch to other brands. *See* Mezzasoma Decl. ¶ 26; Ferraro Decl. ¶ 25. And this will occur just at the point that spring and summer 2008 order must be taken and shipped. *See* Mezzasoma Decl. ¶ 26; Ferraro Decl. ¶ 26. In addition, the unavailability of Diesel branded footwear to consumers will lead consumers loyal to the Diesel brand to purchase another company's footwear product, leading to the potential loss of such customer forever. Finally, if GBMI or Greystone is allowed to ship the Warehouse Product, much of it will be shipped to improper off-price outlets – as GBMI has already done with other product – further injuring the brand. *See* Mezzasoma Decl. ¶ 26; Ferraro Decl. ¶ 25. The harm will be enormous and incalculable.

    **3.**    **Monetary Damages To Diesel Are Inadequate And/Or Cannot Be Reasonably Calculated**

Irreparable harm also exists where a plaintiff demonstrates an injury for which monetary damages are not adequate compensation or cannot be reasonably determined. *EMI Latin*, 2003 WL 470333, at *14. Diesel has no way of calculating the monetary damages to which it would be entitled if Defendants are not enjoined from seizing and selling the Warehouse Product. The injury stemming from the loss of consumer and retail loyalty and the damage to Diesel's reputation cannot be easily quantified or adequately compensated by money damages. *See Register.com, Inc. v. Verio, Inc.*, 126 F.Supp.2d 238, 248 (S.D.N.Y. 2000) ("[n]either this Court nor the parties to this action could calculate with any precision the amount of the monetary loss which has resulted and which would result in the future from the loss of [plaintiff's] relationships with customers and co-brand partners"). Where the harm to the plaintiff is the undermining of

12-

"the confidence of present and future customers and creditors…[t]he extent of damages are incalculable." *Painewebber Inc. v. Nwogugu*, 1998 WL 545327, at *2 (S.D.N.Y. 1998).

This is exactly the type of harm anticipated by Props and Kid as a result of GBMI conversion and Greystone's threatened conversion. GBMI's acts and Greystone's threatened acts undermine customer expectations and undermine Props and Kids current relationships. *See* Mezzasoma Decl. ¶ 26; Ferraro Decl. ¶ 25. Under these circumstances, it is clear that Diesel will suffer irreparable harm if a temporary restraining order and preliminary injunction are not issued.

### B.     Diesel Has Demonstrated A Likelihood of Success On The Merits

It is well established that a party seeking injunctive relief based on a likelihood of success need not show that success is an absolute certainty. The movant "need only make a showing that the probability of his prevailing is better than fifty percent. There may remain considerable room for doubt." *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir.1985); *see also Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 740 (2d Cir. 1953). Diesel is clearly likely to succeed on its conversion cause of action against Defendants.[2]

#### 1.     Diesel Will Succeed On Its Claim For Conversion

Conversion is the "'unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights.'" *Cardiocall, Inc. v. Serling and EKG Professionals, Inc.*, 492 F.Supp.2d 139, 153 (E.D.N.Y. 2007). In order to prevail on a claim for conversion, the plaintiff must be able to specifically identify the converted property and must show that a demand for the property was made. *See id.*

---

[2]  The conversion cause of action is the most directly relevant on the request for injunctive relief.

Under the Distribution Agreements, any footwear products that are not paid for by the Defendants remain the property of Diesel, even if they are in the possession of the defendants. Thus, pursuant to Paragraph 5.4 of the Distribution Agreements:

> 5.4 <u>Delivery</u>. The Distributor undertakes to withdraw the Products from the warehouses and/or factories that the Company shall communicate from time to time, wherever located, through a carrier duly appointed by the distributor…Without prejudice to what is agreed above, the ownership of the Products will be transferred to the Distributor <u>***only***</u> when total payment of the same is collected by the Company. (emphasis added).

*See* Exhibit B. In addition, the rights of Props and Kid under the Distribution Agreements were expressly preserved under the TPA, an agreement to which Greystone was a party. *See* Exhibit F, Mezzasoma Decl. ¶13; Ferraro Decl. ¶ 13. Therefore, it is clear under the applicable agreements that until Pros and Kid are paid for the footwear product, such footwear product is their property.

Defendants have not paid for the Warehouse Product. *See* Sartori Decl. ¶ 5; Mezzasoma Decl. ¶ 23; Ferraro Decl. ¶ 22. Therefore, it is clear that Diesel owns the Warehouse Product. Finally, Diesel has demanded a return of the Warehouse Product from GBMI, and GBMI has not complied. *See* Mezzasoma Decl. ¶¶ 22-23; Ferraro Decl. ¶¶ 21-22; *see also* Exhibit L.

Therefore, Diesel's success of their cause of action for conversion is plain.

**C.    <u>A Balancing Of The Equities Clearly Favors Interim Relief</u>**

To the extent that Defendants' actions create an "imbalance of hardships" in favor of Diesel, Diesel "need not show a likelihood of success, but need only raise substantial questions going to the merits of the case." *Travelers Int'l AG v. Trans World Airlines, Inc*., 684 F. Supp 1206, 1216 (S.D.N.Y. 1986); *accord Roso-Lino Beverage. Distribs., Inc.*, 749 F.2d at 127. As set forth above, Diesel has demonstrated that, at a minimum, there are serious questions going to

the merits of its claims.  Further, the balance of hardships tips decidedly towards Diesel.  Indeed, it is unlikely that Defendants will suffer greatly if they are prohibited from distributing goods for which they have not paid.  Diesel, on the other hand, stands to lose its extensive and hard earned good-will, and incalculable damage to its reputation.  Accordingly, the Court should grant the relief sought herein.

## Conclusion

For all the reasons set forth herein, it is respectfully requested that the Court grant Diesel's motion in its entirety.

Dated: New York, New York
October 26, 2007

                                      DREIER LLP

                                      By:    s/ Ira S. Sacks
                                                Ira S. Sacks
                                                Mark S. Lafayette
                                    499 Park Avenue
                                    New York, New York
                                    Telephone: (212) 328-6100
                                    Facsimile: (212) 328-6101
                                    *Attorneys for Plaintiff*