UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DIESEL PROPS S.R.L. and
DIESEL KID S.R.L.,

                                                     Civil Action No.
                                                     07 CV 9580 (HB)

                       Plaintiffs / Counter-Defendants,

        -against-


GREYSTONE BUSINESS CREDIT II LLC
and GLOBAL BRAND MARKETING INC.,

                     Defendants/Counter-Plaintiffs,

        -against-

DIESEL S.p.A.,

                     Third-Party Defendant.
-------------------------------------------------------------x


## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
## MOTION TO DISMISS COUNTERCLAIMS OF GLOBAL BRAND MARKETING INC.

Ira S. Sacks
Mark S. Lafayette
DREIER LLP
499 Park Avenue
New York, New York 10022
(212) 328-6100
(212) 328-6101 (fax)
*Counsel for Plaintiffs*

# TABLE OF CONTENTS

TABLE OF CONTENTS............................................................................................................. i

TABLE OF AUTHORITIES ...................................................................................................... ii

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS
COUNTERCLAIMS OF GLOBAL BRAND MARKETING INC. .................................... 1

BACKGROUND FACTS ........................................................................................................... 2

I.   ALL OF THE COUNTERCLAIMS MUST BE DISMISSED BECAUSE MILAN, ITALY
IS THE ONLY COMPETENT JURISDICTION ................................................................. 8

(A)   Conversion ....................................................................................................................... 11

(B)   Tortious Interference ....................................................................................................... 11

(C)   Fraud ................................................................................................................................ 11

(D)   Breach of Oral Agreement .............................................................................................. 12

(E)   Unjust Enrichment .......................................................................................................... 12

(F)   Breach .............................................................................................................................. 13

II.   GBMI'S COUNTERCLAIMS ALSO MUST BE DISMISSED FOR FAILURE TO STATE
A CLAIM ............................................................................................................................ 13

A.   The First, Second, Third And Eighth Counterclaims Against Kid Must Be Dismissed....... 16

B.   The Fourth Counterclaim For Unjust Enrichment Must Be Dismissed Because GBMI Has
Alleged That Controlling Valid Contracts Exist .................................................................. 17

C.   The Sixth Counterclaim Must Be Dismissed: The Alleged Oral Agreement Is Governed By
A Written Agreement, Lacks Consideration And Is Barred By A No Oral Modification
Clause; And, In Any Event, Must Be Dismissed As To Kid .............................................. 18

D.   The Eighth Counterclaim Alleging Fraud Must Be Dismissed ........................................... 20

1.   GBMI Fails To Meet The Heightened Rule 9(b) Pleading Standard As Against Kid.......... 21

2.   The Alleged Representations Are Not Misrepresentations of Fact, GBMI Has Not Pled
Facts Demonstrating Reasonable Reliance, And The Fraud Claim Is No More Than A
Dressed Up Claim For Breach Of Contract ........................................................................ 22

3.   At The Very Least, The Fraud Counterclaim Must Be Dismissed Against Kid.................. 24

III.   GBMI'S DAMAGES  MUST BE LIMITED AND MAY NOT EXCEED THE AMOUNT
DEMANDED BY PLAINTIFFS ......................................................................................... 24

CONCLUSION ......................................................................................................................... 25

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Apace Commc'ns, Ltd. v. Burke*, 2007 WL 4125232 (W.D.N.Y. Nov. 16, 2007)..................13, 15

*Asoma Corp. v. SK Shipping Co., Ltd.*, 467 F.3d 817 (2d Cir. 2007)..............................9

*ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) .........................15

*In re Adler, Coleman Clearing Corp.*, 469 F. Supp.2d 112 (S.D.N.Y. 2007) ...............14

*Babitt v. Vebeliunas,* 332 F.3d 85 (2d Cir. 2003) ...........................................14

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ...................................... *passim*

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d.Cir. 2002) ....................................16

*Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 124 (2d Cir. 2001)....................10

*In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp.2d 385 (S.D.N.Y. 2003)...............15

*Deutsche Asset Mgmt., Inc. v. Callaghan*, 2004 WL 758303 (S.D.N.Y. Apr. 7, 2004) ...............19

*EED Holdings v. Palmer Johnson Acquisition Corp.,* 387 F. Supp.2d 265 (S.D.N.Y. 2005) ............................................................................15

*EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508 (S.D.N.Y. 2005) .............24

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) .................................................14

*Kuhne v. Midland Credit Mgmt., Inc.*, 2007 WL 2274873 (S.D.N.Y. Aug. 7, 2007) ..............2, 16

*Mangiafico v. Blumenthal*, 471 F.3d 391 (2d Cir. 2006)........................................2, 15

*Matusowsky v. Merrill Lynch*, 186 F. Supp.2d 397 (S.D.N.Y. 2002)...............................2, 16

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993)...................................21

*Mouawad Nat'l Co. v. Lazare Kaplan Int'l, Inc.*, 476 F. Supp.2d 414 (S.D.N.Y. 2007)..........9, 24

*In re Musicland Holding Corp. v. Wachovia Bank*, 374 B.R. 113 (S.D.N.Y. 2007)....................16

*New Moon Shipping Co., Ltd v. MAN B & W Diesel AG*, 121 F.3d 24 (2d Cir. 1997) ..................9

*Phillips v. Audio Active Ltd.*, 494 F.3d 378 (2d Cir. 2007) ...................................9

*Playwell Toy, Inc. v. Bureau Veritas Consumer Prod. Serv., Inc.*, 2007 WL 2892031 (W.D.N.Y. Sept. 28, 2007) ...........................................................15

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117 (2d Cir. 2007)..................13

*Rey-Willis v. Citibank, N.A.*, 2004 WL 315267 (S.D.N.Y. Feb. 18, 2004) ...................21

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007).............................................2, 15

*In re Scottish Re Group Sec. Litig.*, 2007 WL 3256660 (S.D.N.Y. Nov. 2, 2007)........................13

*Shenango Inc. v. Am. Coal Sales Co.*, 2007 WL 2310869 (W.D. Pa. Aug. 9, 2007) ..................15

*Spagnola v. The Chubb Corp.*, 2007 WL 927198 (S.D.N.Y. Mar. 27, 2007) ........................15, 16

*Statharos v. New York City Taxi and Limousine Comm.*, 198 F.3d 317 (2d Cir. 1999)...............14

*Telstar Res. Group, Inc. v. MCI, Inc.*, 476 F. Supp.2d 261 (S.D.N.Y. 2007)...............................17

*Tokio Marine and Fire Ins. Co., Ltd. v. Fed. Marine Terminal, Inc.*, 397 F. Supp.2d 530
(S.D.N.Y. 2005)...............................................................................................................19

*Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304 (2d Cir. 1994)...........................................10

*U.S. v. Investronica, Inc.*, 2 F. Supp.2d 330 (W.D.N.Y. 1998) ....................................................21

*Williams v. Deutsche Bank Securities, Inc.*, 2005 WL 1414435 (S.D.N.Y. June 13, 2005) .........10

## STATE CASES

*Auburn Steel Co. v. Westinghouse Elec. Corp.*, 158 A.D.2d 938, 551 N.Y.S.2d 101 (4th
Dep't 1990).......................................................................................................................25

*Brett Fabrics, Inc. v. Garan, Inc.*, 170 A.D.2d 253, 565 N.Y.S.2d 521 (1st Dep't 1991) .............20

*Daily News, L.P. v. Rockwell Int'l Corp.*, 256 A.D.2d 13, 680 N.Y.S.2d 510 (1st Dep't
1998) ................................................................................................................................25

*Feeney v. City of New York*, 255 A.D.2d 484, 681 N.Y.S.2d 62 (2d Dep't 1998)........................19

*Morris v. New York State Dep't of Taxation*, 82 N.Y.2d 135, 603 N.Y.S.2d 807 (1993) .............14

*Peach Parking Corp. v. 346 West 40th St., LLC*, 42 A.D.3d 82, 835 N.Y.S.2d 172 (1st
Dep't 2007)......................................................................................................................20

*The River Glen Assoc. Ltd. v. Merrill Lynch Credit Corp.*, 295 A.D.2d 274, 743 N.Y.S.2d
870 (1st Dep't 2002).........................................................................................................23

*Roney v. Janis*, 72 A.D.2d 555, 430 N.Y.S.2d 333 (1st Dep't 1980)...........................................20

*Rose v. Spa Realty Assoc.*, 42 N.Y.2d 338, 397 N.Y.S.2d 922 (1977) ........................................19

*Salvador v. Uncle Sam's Auctions & Realty, Inc.*, 307 A.D.2d 609, 397 N.Y.S.2d 922 (3d
Dep't 2003).......................................................................................................................23

## STATUTES AND RULES

Fed.R.C.P. Rule 9(b) ...................................................................................................................2, 20

Fed.R.C.P. Rule 12(b)...................................................................................................................9

Fed.R.C.P. Rule 12(b)(6)..............................................................................................................13

N.Y. General Obligations Law § 15-301 ...................................................................................18

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS
COUNTERCLAIMS OF GLOBAL BRAND MARKETING INC.**

Plaintiffs Diesel Props S.r.l. ("Props") and Diesel Kid S.r.l. ("Kid") (collectively "Plaintiffs") respectfully submit this Memorandum of Law in support of their motion (the "Motion") to dismiss the counterclaims against them alleged by Defendant Global Brand Marketing, Inc. ("GBMI") in its Answer.  The counterclaims must be brought in Italy, are insufficiently pled and/or are belied by the very agreements which they purport to be based upon.

First, all of GBMI's counterclaims must be dismissed because the contracts between Kid/ Props and GBMI contain mandatory forum selection clauses which designate Milan, Italy as the only competent forum to litigate any claims arising under or connected with those contracts.  All of the counterclaims asserted by GBMI arise under or are connected with these contracts and, therefore, must be brought in Milan, Italy.

Second, GBMI brings several tort claims against both Kid and Props, while failing to allege any actions taken by Kid that would serve as a factual predicate for those tort claims.

Third, GBMI's Fourth Counterclaim for unjust enrichment must be dismissed because GBMI specifically alleges that express contracts exist which govern the relationships between the parties.

Fourth, the alleged oral agreement asserted in GBMI's Sixth Counterclaim fails to state a claim because (i) GBMI has alleged that the actions constituting a breach of the alleged oral agreement also are alleged by GBMI to constitute a breach of a written agreement for which GBMI asserts a separate counterclaim herein, (ii) the alleged oral agreement would constitute a modification or amendment of existing agreements between Props/Kid and such agreements prohibit oral modifications and amendments and (iii) because GBMI has failed to allege that the oral agreement was supported by consideration.

Finally, GBMI's fraud claim is deficient because of its failure to plead fraud with specificity as required by Fed.R.Civ.P. Rule 9(b), failure to set forth material misrepresentations of fact made by Kids/Props and failure to plead representations upon which GBMI could reasonably rely.

## BACKGROUND FACTS[1]

Plaintiffs Props and Kid, Italian corporations having registered offices in Marostica (Vicenza), Italy, are, among other things, involved in the sale of men's, women's or children's footwear bearing the Diesel trademarks owned by Diesel S.p.A. ("SpA"). *See* Complaint, ¶ 3; Answer to Amended Complaint, Counterclaims and Third Party Complaint of GBMI dated January 9, 2008, (the "Answer") at ¶¶ 58-59. Third-Party Defendant SpA, also an Italian corporation, having registered offices in Molvena (Vicenza), Italy, is the owner of numerous valuable trademarks in the United States and elsewhere using the Diesel name. Complaint, ¶¶ 5, 8; Answer, ¶ 60. Those trademarks have been licensed to Props and Kid for the manufacturing and sale worldwide of adult footwear and children's footwear. Complaint, ¶¶ 3-4.

On November 30, 2001, SpA and Global Brand Marketing Inc. ("GBMI") entered into a license agreement for GBMI to make and sell Diesel branded adult shoes in numerous areas of the world. *Id.* at ¶ 9. That license expired by its terms on December 31, 2006. Complaint, ¶ 9. On June 3, 2002, Kid and GBMI entered into a license agreement for GBMI to make and sell

---

[1]  As required on this Motion, the facts material to the Motion accept the well-pleaded allegations in the Answer as true and are based on those alleged facts and the documents referred to in the Answer. *See Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir. 2006); *Roth v. Jennings,* 489 F.3d 499, 503 (2d Cir. 2007*); Kuhne v. Midland Credit Mgmt., Inc.,* 2007 WL 2274873, at *1 (S.D.N.Y. Aug. 7, 2007); *Matusowsky v. Merrill Lynch,* 186 F. Supp.2d 397, 400 (S.D.N.Y. 2002). Certain background facts are supported by the allegations of the Amended Complaint, and, in addition, GBMI incorporates by reference the declarations of Luigi Mezzasoma, dated October 26, 2007 (the "Mezzasoma Dec."), Germano Ferraro, dated October 26, 2007 (the "Ferraro Dec."), and Rosanna Sartori, dated October 26, 2007 (the "Sartori Dec."), and the exhibits thereto (the "Exhibit Binder"), in support of Props' and Kid's motion for a temporary restraining order and preliminary injunction, filed October 26, 2007.

Diesel branded children's shoes in numerous areas of the world.  *Id*. at ¶ 10.  That license expired by its terms on December 31, 2006.  *Id*.

GBMI was in severe default of its royalty obligations under the aforementioned licenses as of December 31, 2006.  *Id*. at ¶ 11.  At that time, GBMI owed SpA and Kid over $11.2 million in back royalties, advertising contributions and interest.  *Id*.  That amount remains unpaid.  *Id*. Under the license agreements, the exclusive forum to recover those amounts is in Milan, Italy, and the license agreements are governed by Italian law and, accordingly, SpA and Kid have not brought suit in New York to recover these amounts.

On November 4, 2005, both Props and Kid entered into distribution agreements with GBMI (the "Distribution Agreements").  The Distribution Agreements were executed by Mezzasoma ("Mezzasoma") as Managing Director of Props and Germano Ferraro ("Ferraro") as Managing Director of Kid.  *Id*.  The terms of the Distribution Agreements were from May 1, 2006 (for the Spring/Summer 2007 collection) through December 31, 2008 (for the Fall/Winter 2008 collection), unless terminated by either of the parties.  *Id*.  Diesel SpA was not a party to the Distribution Agreements.  The Distribution Agreements provide that the exclusive forum for resolution of claims is Milan, Italy.   The forum selection clauses of the Distribution Agreements provide, in relevant part:

> 21.2    For any dispute between the Parties and arising out of or connected with this Agreement regarding in particular, but without prejudice to the generality of the foregoing, its conclusion, execution, validity, breach, termination, and determination of damages, which cannot be settled amicably, the exclusive competent jurisdiction shall be the Court of Milan, Italy.

*See* Exhibit Binder, Ex. B.

In addition, the Distribution Agreements expressly limited the type of damages that could be sought in an action arising under the Agreements.  Thus, paragraph 5.6 provides:

> 5.6 . . . Under no circumstances shall either party be liable to the other for loss of profit, indirect, special, incidental, consequential, or similar, damages arising out from this Agreement, or manufacture, distribution sale or use of any of the Products.

The parties to the Distribution Agreements also expressly agreed to limit the ability of GBMI to counterclaim if Diesel started a legal action against GBMI. Thus, paragraph 13 provides:

> 13.    <u>No Indemnity</u>
>
> …Should the Company start a legal action against the Distributor and/or its affiliates due to breaches or failures of the Distributor and/or its affiliates which have led to the termination of the Agreement pursuant to the provisions of <u>Article 11</u> hereof, the Distributor and/or its affiliates shall be entitled to defend themselves by counterclaiming exclusively with regard and to the extent of the specific claims brought by the Company and/or its affiliates and not for any other kind of indemnity.

On November 4, 2005, GBMI and Props also entered into the Diesel Adult Footwear Developing, Sourcing and Buying Agreement ("Sourcing Agreement").[2] The Sourcing Agreement also provides that the exclusive forum for claims is Milan, Italy. The forum selection clause of the Sourcing Agreement provides, in relevant part:

> 24.    Applicable Law: Jurisdiction: ...Any Dispute that may arise or should be associated with this Agreement, concerning in particular, but not limited to, its termination, execution, validity, default, withdrawal and damages assessment, shall be submitted to the exclusive jurisdiction of the Court of Milan, Italy.

*See* Sacks Decl., Ex. A. The Sourcing Agreement is signed by Mezzasoma as Managing Director of Props.

---

[2] *See* Exhibit A to the declaration of Ira S. Sacks dated January 22, 2008 (the "Sacks Decl.").

After the parties signed these Agreements, GBMI continued in severe financial difficulty. *See* Complaint, ¶ 13; Answer, ¶ 13.  As a result, GBMI negotiated a loan and security agreement with Greystone Credit Business II, L.L.C. ("Greystone") (the "Loan Agreement").  That Loan Agreement was effective December 4, 2006.  *Id.*; Exhibit Binder, Ex. C.

In its essence, the Loan Agreement provided for revolving loans of up to $25 million from Greystone to GBMI.  *See* Complaint, ¶ 14; Answer, ¶ 14; Exhibit Binder, Ex. C. Importantly, the Loan Agreement expressly provided that GBMI authorized Greystone to wire proceeds of revolving loans of GBMI to Props/Kid pursuant to the terms of an agreement between GBMI, Greystone and Props/Kid with respect to the payment of Diesel invoices.  *Id*.

In connection with the Loan Agreement, and prior to its execution, Greystone sought from SpA and Kid – expressly as licensors who were owed substantial amounts for past due royalties – an acknowledgment that SpA and Kid each consented to GBMI's entry into the Loan Agreement and agreed not to assert liens or retention of title or similar rights in assets of GBMI until Greystone was paid in full under the Loan Agreement (the "Non-Interference Agreements").  *See* Complaint, ¶ 15; Exhibit Binder, Ex. D.  The Non-Interference Agreement was signed by Marina Tosin ("Tosin") as Managing Director of SpA and Ferraro as Managing Director of Kid.  No such letter was signed by Props, which at the time was not owed any money by GBMI under the Distribution Agreement.  *Id.*  As a result, Props is not a party to the Non-Interference Agreements.  *See* Exhibit Binder, Ex. D.

Also in connection with the Loan Agreement, on December 7, 2006, SpA, Props and Kid entered into amendments of their prior agreements with GBMI. (the "12/7/06 Letter Agreements").  *See* Exhibit Binder, Ex. E.  In the 12/7/06 Letter Agreements, (a) SpA, Kid and GBMI agreed on a mechanism for the payment of the past due royalties and advertising

5

contributions; (b) both Props and Kid amended the Distribution Agreements with GBMI; and (c) both Props and Kid conditioned their assent to the Loan Agreement on strict adherence to the payment provisions in a tripartite agreement between GBMI, Greystone and Props/Kid.  *Id.*; *see* Complaint, ¶ 16.   The December 7, 2006 Letter Agreements were signed by Tosin on behalf of SpA, Ferraro on behalf of Kid and Mezzasoma on behalf of Props.  Exhibit Binder, Ex. E.

Tripartite agreements were executed effective December 4, 2006 among (i) Props or Kid, (ii) GBMI and (iii) Greystone (the "TPA" or "ISP").  *See* Exhibit Binder, Ex. F.  Mezzasoma and Ferraro each executed a TPA on behalf of Props and Kid, respectively.  The TPA provided a procedure pursuant to which Props and Kid would be able to present invoices to Greystone, ship product to GBMI and be assured by Greystone that Greystone would pay Props or Kid for such product within two business days.  *See* Complaint, ¶ 16; *See* Answer, ¶ 17.  Subsequently, in March 2007 the procedure specified by the parties within the TPA was streamlined.  *See* Complaint, ¶ 19.  The rights of Props and Kid under the Distribution Agreements were expressly preserved by the TPA.  *Id.* at ¶ 18.

Pursuant to the TPA, Props and Kid sent invoices to Greystone commencing in January 2007, through and including September 3, 2007.  *Id.* at ¶ 21.  The total amount of those Diesel Invoices due under the TPA was $23.5 million.  *Id.*  The balance owing from Greystone (and GBMI) is approximately $20 million.  *Id.*  That relates to hundreds of thousands of pairs of Diesel branded shoes, many of which have been sold by GBMI to its customers, with the proceeds flowing to Greystone under the Loan Agreement.  *Id.*

On September 4, 2007, Props and Kid notified Greystone that it had thirty (30) days to cure the specified outstanding defaults under the TPA.  *Id.* at ¶ 24; Answer, ¶ 24; Exhibit Binder, Ex. K.  These default notices were signed by Ferraro and Mezzasoma on behalf of Kid and

Props, respectively.  Exhibit Binder, Ex. J.  Greystone did not reply and did not cure the defaults.

*See* Complaint, ¶ 24.  On September 4, 2007, Props and Kid notified GBMI that it had thirty (30)

days to cure the specified outstanding defaults under the Distribution Agreements.  *Id*. at ¶ 25;

Answer, ¶ 25.  These default notices were signed by Ferraro and Mezzasoma on behalf of Kid

and Props, respectively.  Exhibit Binder, Ex. K.  GBMI did not cure the defaults.    *See*

Complaint, ¶ 25.  As a result, on October 17, 2007, Props and Kid notified GBMI that the

Distribution Agreement was terminated effective October 4, 2007.  *Id*. at ¶ 26; Answer, ¶ 26;

Exhibit Binder, Ex. L.  These default notices were signed by Ferraro and Mezzasoma on behalf

of Kid and Props, respectively.  Exhibit Binder, Ex. L.  At the same time, SpA informed GBMI

of its default under the 12/7/06 Agreement regarding past-due royalties and advertising

contributions and demanded immediate payment of all overdue royalties, advertising

contributions, accrued interest and liquidated damages.  *See* Complaint, ¶ 26.  In addition, in or

around October 17, 2007, Props advised GBMI that it was terminating the Sourcing Agreement

due to GBMI's default.  *See* Answer, ¶ 111.

On October 26, 2007, Props and Kid commenced this action against Greystone and

GBMI; and on December 4, 2007, Props and Kid amended their complaint.  Props and Kid

intentionally did not assert claims that arise under or are connected with the Distribution and

Sourcing Agreements because those agreements contain mandatory forum selection clauses

designating Milan, Italy as the exclusive competent jurisdiction to hear such claims.

On or about January 9, 2007, GBMI answered the Amended Complaint, and asserted nine

counterclaims and six third-party causes of action against Props, Kid and/or SpA:

- The First Counterclaim/First Third-Party Cause of Action is for conversion against Props, Kid and SpA.

- The Second Counterclaim/Second Third-Party Cause of Action is for tortious interference

with business relationships against Props, Kid and SpA.

- The Third Counterclaim/Third Third-Party Cause of Action is for tortious interference with contractual relationships against Props, Kid and SpA.

- The Fourth Counterclaim/Fourth Third-Party Cause of Action is for unjust enrichment against Props, Kid and SpA.

- The Fifth Counterclaim is for breach of the Distribution Agreements against Props and Kid.

- The Sixth Counterclaim/Fifth Third-Party Cause of Action is for breach of oral agreement against Props, Kid and SpA.

- The Seventh Counterclaim is for breach of the Sourcing Agreement against Props.

- The Eighth Counterclaim/Sixth Third-Party Cause of Action is for fraud against Props, Kid and SpA.

The Answer contains no specific allegations as to any misconduct by Kid.  Instead, the Complaint makes allegations concerning Mezzasoma, which GBMI baldly and conclusorily alleges to be a senior employee of the "Diesel Entities," which GBMI defines as "Diesel SpA and two of its subsidiaries, [Kid] and [Props]" (*see* Answer,  ¶¶ 53, 98) and otherwise baldly and conclusorily attributes all other conduct to an unspecified actor on behalf of the Diesel Entities. These counterclaims are nothing more than an unsuccessful attempt by GBMI to (1) circumvent the mandatory forum selection clauses in the Distribution and Sourcing Agreements and (2) ignore, avoid and delay its contractual obligations to SpA, Props and Kid.

## I.    ALL OF THE COUNTERCLAIMS MUST BE DISMISSED BECAUSE MILAN, ITALY IS THE ONLY COMPETENT JURISDICTION

All of the counterclaims asserted by GBMI must be dismissed, and/or this court should decline jurisdiction, because mandatory forum selection clauses exist within the applicable agreements which preclude suit in New York and require that suit be exclusively brought in Milan, Italy.  The existence of a valid forum selection clause places the burden on the party seeking to circumvent the clause to "make a strong showing to defeat that contractual

commitment." *Mouawad Nat'l Co. v. Lazare Kaplan Int'l, Inc.*, 476 F. Supp.2d 414, 420 (S.D.N.Y. 2007).[3]  Here, GBMI cannot make a showing that the forum selection clauses of the parties' contracts should be ignored.

A forum selection clause is presumptively enforceable if "the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007).  Here, the forum selection clauses are contained within written agreements which were executed by GBMI, demonstrating its awareness of the inclusion of this clause.[4]  The use of the phrases "exclusive competent jurisdiction" and "exclusive jurisdiction" establishes that Italy "is the obligatory venue for proceeding within the scope of the clause." *Phillips*, 494 F.3d at 386.  This is confirmed by the Declaration of Carlo Pascotto, dated January 22, 2008 ("Pascotto Decl."), relating to the scope and effect of the clauses under Italian law.  *Phillips*, 494 F.3d. at 384-86 (analysis of whether clause was mandatory and whether the claims and parties involved in the suit are subject to the forum selection clause is controlled by the law chosen in the contract).

The forum selection clause contained in the Distribution Agreements specifically encompasses "any dispute between the Parties and arising out of or connected with this Agreement."  *See* Exhibit Binder, Ex. B.  The forum selection clause contained in the Sourcing

---

[3] "The Supreme Court has not specifically designated a single clause of Rule 12(b) as the proper procedural mechanism to request dismissal of a suit based upon a valid forum selection clause." *Asoma Corp. v. SK Shipping Co., Ltd.*, 467 F.3d 817, 822 (2d Cir. 2007) (internal quotations omitted).  However, the Second Circuit has developed a framework for analyzing these motions.  "Under this framework, the moving party must first show evidence of an apparently governing forum selection clause.  The burden is then on the plaintiff who brought suit in a forum other than the one designated by that clause to make a strong showing to defeat that contractual commitment.  That burden is analogous to that imposed on a plaintiff to prove that the federal court has subject matter jurisdiction over his suit or personal jurisdiction over the defendant." *Mouawad Nat'l Co. v. Lazare Kaplan Int'l. Inc.*, 476 F. Supp.2d 414, 420 (S.D.N.Y. 2007) (citing *New Moon Shipping Co., Ltd v. MAN B & W Diesel AG*, 121 F.3d 24, 28 (2d Cir. 1997)) (internal citations and quotations omitted).

[4] In addition, the Distribution Agreements contain a provision above GBMI's signature in which GBMI acknowledges that it has carefully and entirely examined the entire language of Paragraph 21 and that it expressly approves the entire content of same.  *See* Exhibit Binder, Ex. B at ¶ 21.  Further, GBMI has alleged that the Distribution and Sourcing Agreements "are valid and enforceable." Answer, ¶¶ 161, 173.

Agreement specifically encompasses "[a]ny Dispute that may arise or should be associated with this Agreement." *See* Sacks Decl., Ex. C. The Second Circuit has determined that the scope of the phrase "related to" is broader than "arising under." *See Coregis Ins. Co. v. Amer. Health Found., Inc.*, 241 F.3d 124, 128-29 (2d Cir. 2001) ("the term 'related to'...is broader than the term "arising out of"). In addition, in relation to or related to, is "equivalent to the phrase 'in connection with' and 'associated with.'" *Id.*[5] Therefore, not only are the claims for breach of the Distribution Agreement or Sourcing Agreement subject to exclusive jurisdiction in Milan, Italy, but also any disputes which are **connected with** the Distribution Agreement **or associated with** the Sourcing Agreement must be litigated in Milan, Italy.

GBMI's claims for conversion, tortious interference with business relationships, tortious interference with contractual relationships, and fraud are all connected with the Distribution Agreements. The Second Circuit, in an analogous situation, has explicitly held that a "choice of law provision that covers any controversy 'arising out of or relating to' the [contract]…is sufficiently broad to include tort claims" related to the contract. *Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304, 310 (2d Cir. 1994); *Williams v. Deutsche Bank Sec., Inc.*, 2005 WL 1414435, at *4 (S.D.N.Y. June 13, 2005). It is clear that the tort claims alleged by GBMI are connected with the Distribution Agreements, and are therefore covered by the forum selection clause in the Distribution Agreements. In addition, GBMI's claims for unjust enrichment and breach of oral agreement are also connected with or associated with the Distribution Agreements and/or Sourcing Agreement, and must be dismissed by virtue of the forum selection clause. Finally, claims for breach of the Distribution Agreement and Sourcing Agreement must also be dismissed because such claims obviously arise out of such agreement.

---

[5] As noted above, analysis of whether the forum selection clause was mandatory and whether the claims and parties involved in the suit are subject to the forum selection clause is controlled by Italian law here. Reference is made to federal decisions to confirm the conclusions set forth in the Pascotto Decl.

**(A)**    **Conversion**:    GBMI's First Counterclaim for conversion is clearly <u>connected</u> <u>with</u> the Distribution Agreements.    GBMI expressly alleges that the ownership of the Long Beach Shoes is governed by the Distribution Agreement.    *See* Answer, ¶ 124 (citing to Section 5.4 of the Distribution Agreement).    In addition, GBMI has asserted that the Diesel Entities failure to release the Long Beach Shoes to GBMI is a breach of the Distribution Agreements. *See* Answer, ¶ 127.    Therefore, GBMI's claim for conversion must be dismissed because of the forum selection clause.

**(B)**    **Tortious Interference**:    GBMI's Second and Third Counterclaims for tortious interference are also connected with and related to the Distribution Agreement as alleged by GBMI.    In the tort claims, GBMI alleges that beginning in October 2007, the month in which GBMI was given notice of termination of the Distribution Agreements, "the Diesel Entities" contacted GBMI's customers and tried to convince them to have those orders filled by the "Diesel Entities".    Answer, ¶¶ 109-111, 130.    In addition, GBMI asserts that beginning in October 2007, the Diesel Entities refused to release the Long Bench Shoes and ship certain other shoes necessary to fill GBMI's customer orders pursuant to the Distribution Agreement and informed GBMI's customers that GBMI was out of business.    *Id*. at 130.    Each of these actions also is alleged to breach the Distribution Agreement.    *See* Answer, ¶¶ 127, 133-134.    Therefore, GBMI's claims for tortious interference are clearly connected with and related to the Distribution Agreement, and must be dismissed.

**(C)**    **Fraud**:    GBMI's Ninth Counterclaim for fraud is also connected with the Distribution Agreement.    GBMI alleges that the Diesel Entities made misrepresentations of fact regarding their ability to deliver shoes on time, their willingness to help GBMI overcome consequences of late delivery, their intention to continue their relationship with GBMI, and their

willingness to release bills of lading for the Long Beach Shoes.  Answer, ¶ 179.  Each of these allegations of fraud is connected with the Distribution Agreement.  The timely delivery of shoes is not only <u>connected with</u>, but, as alleged by GBMI, is <u>governed by</u> the Distribution Agreement. *See* Answer, ¶ 95.  The relationship between the Diesel Entities and GBMI is also connected with the Distribution Agreement; and as set forth above, GBMI has asserted that the ownership of the Long Beach Shoes is directly connected to and governed by the Distribution Agreement. *See* Answer, ¶ 124 (citing to Section 5.4 of the Distribution Agreement).  Therefore, GBMI's Ninth Counterclaim for fraud must be dismissed because of the forum selection clause.

**(D)** **Breach of Oral Agreement**:  The Sixth Counterclaim for breach of an oral agreement to release the Long Beach Shoes is also directly connected with the Distribution Agreement.  GBMI has asserted that the ownership of the Long Beach Shoes is governed by the Distribution Agreement.  *See* Answer, ¶ 124.  In addition, GBMI alleges that such shoes were shipped to fill customer orders taken by GBMI pursuant to the Distribution Agreement.  Answer, ¶¶ 121, 124, 127.  Finally, GBMI has asserted that the Diesel Entities' actions in connection with the bills of lading for the Long Beach Shoes constitute a breach of the Distribution Agreements. *See* Answer, ¶ 127.  Therefore, any alleged breach of an oral agreement to release those shoes is connected with the Distribution Agreements and must be dismissed.

**(E)** **Unjust Enrichment**:  GBMI's Fourth Counterclaim for unjust enrichment also arises out of or is connected with the Distribution Agreement.  GBMI asserts that the Diesel Entities were unjustly enriched by their control over the Long Beach Shoes, appropriation of the benefits of GBMI's efforts to develop and sell shoes for the Spring/Summer 2008 and Fall/Winter 2008 seasons, breaches of the Distribution Agreement, interference with GBMI's contractual relationships, interference with GBMI's business relationships, breach of oral

agreements, and failure to make payments under the Sourcing Agreements. *See* Answer, ¶ 157. Each of these allegations has a direct connection with the Distribution Agreement and/or Sourcing Agreements and falls squarely within those matters covered by the forum selection clause. *See* Answer, ¶¶ 63-64, 112-113, 115, 124, 127-128, 175.

　　　　**(F)**　　**Breach**:　GBMI's Fifth and Seventh Counterclaims asserting breach by "the Diesel Entities" of the Distribution and Sourcing Agreements. *See* Answer, ¶¶ 163, 175. Both of those agreements contain mandatory forum selection clauses that establish the Court of Milan, Italy as the exclusive jurisdiction.

　　　　Accordingly, all of GBMI's counterclaims must be dismissed, or this court should decline jurisdiction, because Milan, Italy is the only competent forum.

## II.　　GBMI'S COUNTERCLAIMS ALSO MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

　　　　Even if all of GBMI's counterclaims were not required to be dismissed under the mandatory forum selection clauses, the counterclaims must be dismissed for failure to state a claim. As this Court is well aware, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts which make each claim alleged plausible on its face. *Bell Atlantic Corp v. Twombly*, 127 S.Ct. 1955, 1965 (2007); *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 120-21 (2d Cir. 2007) ("a complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion"); *In re Scottish Group Sec. Litig.*, 2007 WL 3256660, at *6 (S.D.N.Y. Nov. 2, 2007) (complaint must meet standard of plausibility); *Apace Commc'ns, Ltd. v. Burke*, 2007 WL 4125232, at *9-10 (W.D.N.Y. Nov. 16, 2007) ("it is not enough for a plaintiff simply to allege, in broad, conclusory terms, some claim to relief").

　　　　The Supreme Court in *Twombly* required pleadings with "enough facts to state a claim to

relief that is plausible on its face." 127 S. Ct. at 1974. In the words of the Court, "[w]hile a complaint attacked by a Rule12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 1964-65 (citations omitted).

The Second Circuit has observed that *Twombly* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original). As applied here, *Twombly* requires specific pleading of what conduct was actionable by **each** of the three Diesel Entities and/or facts upon which one such entity is responsible for the actions of another.

As the Second Circuit has explained, "under New York law, where the corporation is essentially an alter ego of a family or individual, the [corporate] veil may be pierced" and that family or individual held personally liable for what were ostensibly the acts of the corporation. *Statharos v. New York City Taxi and Limousine Comm.,* 198 F.3d 317, 324 (2d Cir. 1999). A party seeking to pierce the corporate veil under such a theory must generally show that: "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury." *Morris v. New York State Dep't of Taxation,* 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807, 810-11 (1993); *Babitt v. Vebeliunas,* 332 F.3d 85, 91-92 (2d Cir. 2003); *In re Adler, Coleman Clearing Corp.,* 469 F. Supp.2d 112, 117-18 (S.D.N.Y.2007).

"Purely conclusory allegations cannot suffice to state a claim based on veil-piercing or

alter-ego liability, even under the liberal notice pleading standard." *In re Currency Conversion Fee Antitrust Litig.,* 265 F. Supp.2d 385, 426 (S.D.N.Y. 2003). *See, e.g., Shenango Inc. v. Am. Coal Sales Co.,* 2007 WL 2310869, at *4 (W.D. Pa. Aug. 9, 2007) ("averments reciting elements of the veil-piercing test, without any supporting facts, constitute legal conclusions. Even under a notice pleading standard, as interpreted in *Twombly,* such averments cannot support a veil-piercing claim"); *EED Holdings v. Palmer Johnson Acquisition Corp.,* 387 F. Supp.2d 265, 274 (S.D.N.Y. 2004) ("to avoid dismissal, a party seeking application of the doctrine must come forward with factual allegations as to both elements of the veil-piercing claim"); *Apace Commc'ns, Ltd.*, 2007 WL 4125232, at *9-10 (bald allegations of corporate domination are insufficient); *Playwell Toy, Inc. v. Bureau Veritas Consumer Prod. Serv., Inc.,* 2007 WL 2892031, at *11 (W.D.N.Y. Sept. 28, 2007) ("the allegations in the complaint as pleaded are conclusory and insufficient to pierce the corporate veil and impose liability on" the parent corporation).

    Further, while the Court generally must accept the complaint's factual allegations and all reasonable inferences therefrom as true, (a) if a claim is not amplified by sufficient factual allegations to render the claim plausible or (b) if it appears beyond doubt based upon (i) the allegations of the complaint, (ii) from documents annexed to the complaint, incorporated therein by reference, or integral to the complaint even if not incorporated by reference, and (iii) from matters to which the court may take judicial notice, that the plaintiff can prove no set of facts in support of its claim, a motion to dismiss should be granted. *Spagnola v. The Chubb Corp.*, 2007 WL 927198, at *2 (S.D.N.Y. Mar. 27, 2007) (Baer, J.); *see ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007); *Mangiafico,* 471 F.3d at 398; *Roth,* 489 F.3d at 503. Thus, "even where a document is not incorporated by reference, the court may consider it [in

connection with a motion pursuant to Rule 12(b)(6)] where the Complaint relies heavily upon its terms and effect, which renders the document integral to the Complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d.Cir. 2002) (citations and internal quotations omitted); *Spagnola*, 2007 WL 927198 at *2 (Baer, J.).   As a result, when a plaintiff's conclusory allegations are contradicted by documentary evidence which may be considered by the court in connection with a motion pursuant to Rule 12(b)(6), the court is not required to accept them. *See, e.g., In re Musicland Holding Corp. v. Wachovia Bank,* 374 B.R. 113, 119 (S.D.N.Y. 2007); *Kuhne,* 2007 WL 22744873, at *1; *Matusowsky v. Merrill Lynch,* 186 F. Supp.2d at 400.

As demonstrated below, GBMI has failed to meet the required standard of specificity and plausibility with respect to many of its counterclaims.

## A.    The First, Second, Third And Eighth Counterclaims Against Kid Must Be Dismissed

GBMI alleges in the First, Second, Third and Eighth Counterclaims that Kid, SpA, and Props (1) converted the Long Beach Shoes; (2) tortiously interfered with GBMI's business relationships; (3) tortiously interfered with GBMI's contractual relationships, and (4) defrauded GBMI.   However, GBMI fails to allege that Kid was responsible for any of the actions that form the basis for these claims and fails to allege facts sufficient to establish that the corporate veil between Kid and Props or SpA should be pierced, or that there is an agency relationship between the entities.   Therefore, those counterclaims must be dismissed as against Kid.

In its allegations in support of its claims for conversion, tortious interference and fraud, GBMI refers to "the Diesel Entities" as having committed the actions which form the basis for the torts.   GBMI defines the "Diesel Entities" in the Answer as SpA, Props and Kids.   Answer, ¶ 53.   However, GBMI fails to plead <u>which</u> of the Diesel Entities is responsible for any of the complained of actions.   To the extent that GBMI does specifically identify any actor on behalf of

the Diesel Entities, it only identifies Mezzasoma, as an alleged "senior employee" of the Diesel Entities.   However, it is clear from the agreements referred to in GBMI's Answer that Mezzasoma was a Managing Director of <u>Props</u> and had no relationship with Kid and SpA. Indeed, as GBMI well knew, Kid and SpA were separate entities from Props and other individuals (Tosin and Ferraro) acted on behalf of Kid and SpA.  *See* Exhibit Binder, Exs. B and D through F.  GBMI does not identify any representatives of Kid that were responsible for the alleged conversion of the Long Beach Shoes, tortious interference with GBMI's business relationships and contracts or fraud.

In addition, the extent that GBMI is attempting to pierce the corporate veil between Kid, Props and SpA, that argument fails.  GBMI's only basis for holding **<u>Kid</u>** liable for conduct by SpA or Props is by defining Props, Kid and SpA as the Diesel Entities and then failing to distinguish which entity did what.  That sleight of hand does not pierce the corporate veils. Indeed, as the various agreements referred to in the counterclaims make plain, GBMI dealt with all three entities as separate corporations.    Therefore, the First, Second, Third and Eighth Counterclaims must be dismissed as against Kid.

**B.**    **<u>The Fourth Counterclaim For Unjust Enrichment Must Be Dismissed Because GBMI Has Alleged That Controlling Valid Contracts Exist</u>**

The Fourth Counterclaim for unjust enrichment must be dismissed because GBMI pleads throughout its Answer that there are valid contracts that govern the alleged relationship between GBMI and Props or Kid.  It is well-established under New York Law that "the existence of a contract governing a particular dispute normally forecloses recovery by an unjust enrichment theory."  *Telstar Res. Group, Inc. v. MCI, Inc.*, 476 F. Supp.2d 261, 274 (S.D.N.Y. 2007) (an exception to this rule exists only in cases where a "bona fide dispute" exists as to the existence of a contract).  No such allegation warranting a "bona fide dispute" exists here.  Therefore the

alleged existence of valid written contract precludes any claim for unjust enrichment brought by GBMI and based upon these agreements.

In the Fourth Counterclaim GBMI asserts that the Diesel Entities were unjustly enriched by their: (a) assertion of control over the Long Beach Shoes; (b) breaches of the Distribution Agreements; (c) interference with GBMI's contractual relationships; (d) interference with GBMI's business relationships; (e) solicitation of GBMI employees; (f) breach of oral agreements with GBMI; (g) appropriation of benefits of GBMI's efforts to develop and sell shoes for the Spring/Summer 2008 and Fall/Winter 2008 season; and (h) failure to make payments under the Sourcing Agreements. Answer, ¶ 157.

However, GBMI also has alleged that matters (a), (e), (f) and (g) are governed by the Distribution Agreements and/or Sourcing Agreements and constitute a breach of such agreements (*see* Answer, ¶¶ 63-65, 112-113, 121-122, 124, 127, 133-134, 138, 160, 163, 172, 175); and GBMI has separately asserted claims for breach of the Distribution Agreements (matter (b)), breach of the Sourcing Agreement (matter (h)), and claims for tortious interference with business relations and contractual relations (matters (c) and (d)). Answer, ¶¶ 152-161, 166-171 and 178-83.[6] Accordingly, the Fourth Counterclaim must be dismissed.

**C.     The Sixth Counterclaim Must Be Dismissed: The Alleged Oral Agreement Is Governed By A Written Agreement, Lacks Consideration And Is Barred By A No Oral Modification Clause; And, In Any Event, Must Be Dismissed As To Kid**

In the Sixth Counterclaim, GBMI alleges that the Diesel Entities, through an oral promise of Mezzasoma, breached an oral agreement to release the "Long Beach Shoes" to GBMI. However, the alleged oral agreement must be dismissed because (1) GBMI asserts that the failure to release the Long Beach Shoes also constitutes a breach of the Distribution Agreement; (2) GBMI fails to allege any consideration to support the Diesel Entities alleged promise and (3)

---

[6] GBMI also seeks the same estimated $30 million in damages in connection therewith. *See* Answer, pp. 36-37.

the Distribution Agreements contain clauses which prohibit oral modification or amendment of those contracts.

GBMI's Answer asserts that the Diesel Entities presented bills of lading to customs agents and induced them to release the Long Beach Shoes to them and alleges that these actions constitute a breach of a written agreement, the Distribution Agreement.  *See* Answer, ¶¶ 126-27.  Accordingly, the allegation of the existence of oral agreement is contradicted by GBMI's own pleadings and must be dismissed.

Moreover, the oral agreement claim must also be dismissed for lack of consideration, an essential element to contract formation.  *Deutsche Asset Mgmt, Inc. v. Callaghan*, 2004 WL 758303, at *15 (S.D.N.Y. Apr. 7, 2004); *Tokio Marine and Fire Ins. Co., Ltd. v. Fed. Marine Terminal, Inc.*, 397 F. Supp.2d 530, 535 (S.D.N.Y. 2005); *Feeney v. City of New York*, 255 A.D.2d 484, 485, 681 N.Y.S.2d 62, 62 (2d Dep't 1998).

Further, the alleged oral agreement is invalid under the Distribution Agreements, which specifically prohibits oral modification or amendments.  *See* Exhibit Binder, Ex. B.[7]  Such an agreement to prohibit oral modifications is protected by subdivision 1 of section 15-301 of the General Obligations Law.  Where the "only proof of an alleged agreement to deviate from a written contract is the oral exchanges between the parties, the writing controls." *See Rose v. Spa Realty Assoc.*, 42 N.Y.2d 338, 343, 397 N.Y.S.2d 922, 926 (1977).[8]  GBMI has expressly alleged that the ownership of the Long Beach Shoes is governed by the Distribution Agreements.  *See* Answer, ¶ 124.  Therefore, any alleged oral agreement that Mezzasoma reached with respect to

---

[7] Paragraph 22.1 of the Distribution Agreements provides that:  "No amendment or modification of this Agreement nor waiver of any of the terms or provisions hereof shall be deemed valid unless made in writing and signed by both Parties hereto."  *See* Binder, Ex. B.

[8] General Obligations Law §15-301 provides that  "A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent."

the Long Beach Shoes is either a modification of, or amendment to, the Distribution Agreements. As a result, such an oral promise is barred by the Paragraph 22.1 of the Distribution Agreements.

Even if the alleged oral agreement is found to be enforceable, the claim must be dismissed as to Kid. GBMI alleges Mezzasoma made the alleged oral promise. *See* Answer, ¶¶ 53, 123. However, it is clear from the documents referred to in GBMI's Answer that Mezzasoma acted on behalf of Props, not SpA or Kid. *See* Exhibit Binder, Exs. B through F. For all of those reasons, the Sixth Counterclaim must be dismissed.

**D.     The Eighth Counterclaim Alleging Fraud Must Be Dismissed**

In addition to the reasons set forth above for dismissal against Kid, the fraud counterclaim must be dismissed in its entirety. In order to successfully plead a claim for fraud, a party must allege: "(1) misrepresentation or a material omission of fact which was false and known to be false by the defendant; (2) that the misrepresentation was made for the purpose of inducing the other party to rely upon it; (3) justifiable reliance of the other party on the misrepresentation or material omission; and (4) injury." *Peach Parking Corp. v. 346 West 40th St., LLC*, 42 A.D.3d 82, 86, 835 N.Y.S.2d 172, 175 (1st Dep't 2007). *See Roney v. Janis*, 77 A.D.2d 555, 556-67, 430 N.Y.S.2d 333, 335 (1st Dep't 1980) (cause of action for fraud requires an alleged misrepresentation of a present or pre-existing fact). Moreover, a stated intent, "rather than being a material misrepresentation of fact, [is] only a statement of future intentions, speculative expectations, or an expression of hope when made," and cannot form the basis for a fraud claim. *See Brett Fabrics, Inc. v. Garan, Inc.*, 170 A.D.2d 253, 254, 565 N.Y.S.2d 521, 522 (1st Dep't 1991) (a stated intent to maintain a business relationship was not a material misrepresentation of fact); *Roney*, 77 A.D.2d at 557, 430 N.Y.S.2d at 335 (cause of action for fraud cannot be based on statement of future intentions).

In addition, Rule 9(b) provides:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

To satisfy this heightened pleading standard, the "complaint must allege when and where the alleged statements were made, identify the individual responsible for the statements, and specify the content of the alleged fraudulent statements." *U.S. v. Investronica, Inc.*, 2 F. Supp.2d 330, 336 (W.D.N.Y. 1998) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)); s*ee Rey-Willis v. Citibank, N.A.*, 2004 WL 315267, at *1 (S.D.N.Y. Feb. 18, 2004).

GBMI has failed to plead fraud with particularity as required by Rule 9(b) and has failed to identify (i) statements which constitute misrepresentations of a present or pre-existing fact or (ii) representations on which GBMI may allege reasonable reliance, as required to properly allege a cause of action for fraud. Accordingly, the Eighth Counterclaim must be dismissed.

1. GBMI Fails To Meet The Heightened Rule 9(b) Pleading Standard As Against Kid

The fraud counterclaims must be dismissed against Kid because GBMI has failed to plead fraud with particularity. GBMI alleges that the "Diesel Entities" (a) "repeatedly assured GBMI that they wanted the relationship [with GBMI] to continue throughout 2008 and beyond;" (b) "represented to GBMI that deliveries [of shoes] would be completed on time;" and (c) "represented that the Fall/Winter 2007 shoes would begin reaching GBMI in April 2007 - one month earlier than expected," but fails to identify the person who made these statements, or on behalf of which entity the alleged statements was made, or when the statements were made. *See* Answer, ¶¶ 66, 90, 102. GBMI also alleges that "the Diesel Entities informed GBMI that deliveries would be much better for the Fall/Winter 2007," but once again fails to identify the speaker or when this statement occurred. *See* Answer, ¶ 102.

In other instances, GBMI identifies Mezzasoma as the speaker of certain statements, but

fails to allege when and where the statements were made, as required under Second Circuit law. *See* Answer, ¶¶ 99, 108.    In addition to failing to allege when and where these alleged statements were made, GBMI ignores that Mezzasoma is the Managing Director of Props, and does not work for SpA or Kid.  *See* Binder, Exs. B and D through F.  Thus, GBMI has failed to plead fraud with the required particularly.

>    2.    The Alleged Representations Are Not Misrepresentations of Fact, GBMI Has Not Pled Facts Demonstrating Reasonable Reliance, And The Fraud Claim Is No More Than A Dressed Up Claim For Breach Of Contract

As set forth above, GBMI's allegations of fraud encompass several different statements allegedly made by representatives of the Diesel Entities, mostly unspecified.  These statements include the following:  "prior to September 2007, the Diesel Entities repeatedly assured GBMI that they wanted the relationship to continue throughout 2008 and beyond" (Answer, ¶ 66); "the Diesel Entities knew or should have known that circumstances were present that would prevent them from shipping the shoes in time for GBMI to meet the cancel dates…they represented to GBMI that the deliveries would be completed on time" emphasis added (Answer, ¶ 90); "Mezzasoma informed GBMI that the Diesel Entities would strive to improve their performance and help GBMI  overcome the negative impact on GBMI's business" (Answer, ¶ 99); "the Diesel Entities informed GBMI that deliveries would be much better for the Fall/Winter 2007 season" (Answer, ¶ 102); "Mezzasoma consistently informed GBMI that the Diesel Entities intended to work with GBMI throughout the Fall/Winter 2007 season and beyond" (Answer, ¶ 108).

These statements, even if made, are not misrepresentations of a present fact.  In particular, GBMI characterizes the alleged false representations as concerning the Diesel Entities' "(a) <u>ability</u> to deliver shoes on time to GBMI for the Spring/Summer 2007 and Fall/Winter 2007 seasons; (b) <u>willingness</u> to help GBMI overcome the consequences of the late

delivery of the Spring/Summer 2007 shoes; (c) <u>intention</u> to continue their relationship with GBMI through the Spring/Summer 2008 season and beyond; and (d) <u>willingness</u> to release bills of lading for the Long Beach Shoes." Answer, ¶ 185 (emphasis added). These allegations are statements of intentions or speculative expressions of hope which, as set forth above, are not misrepresentations of present or pre-existing fact as a matter of law.

In addition, to the extent that this Court finds any of the alleged representations with respect to "late deliveries" or the "Long Beach Shoes" to be representations of fact, such representations fail to support a cause of action for fraud. Those alleged misrepresentations are also alleged by GBMI to be breaches of the Distribution Agreement and an alleged oral agreement, for which GBMI has sought the same damages. *See* Answer, ¶¶ 95, 163 (late deliveries), and ¶¶ 124, 127, 146, 166, 169, 173 (Long Beach Shoes). Because the fraud claim is duplicative of the breach of contract claims, the fraud claim must be dismissed. *See*, *e.g*., *The River Glen Assoc. Ltd. v. Merrill Lynch Credit Corp.*, 295 A.D.2d 274, 275, 743 N.Y.S.2d 870, 871 (1st Dep't 2002); *Salvador v. Uncle Sam's Auctions & Realty, Inc*., 307 A.D. 2d 609, 611, 763 N.Y.S.2d 360, 362 (3d Dep't 2003).

Further, GBMI has not – and cannot – assert reasonable reliance with respect to the alleged representations. For example, GBMI alleges that "on or about October 4, 2007, Mezzasoma represented to GBMI's Chief Executive Officer, Sudeepto Datta, that the Diesel Entities would deliver the bills of lading to GBMI and thus allow GBMI to obtain the Long Beach Shoes." However, GBMI pleads that such statement was allegedly made thirty days <u>after</u> GBMI was advised that it was in default of the Distribution Agreements and that if such default was not cured within thirty days Props and Kid would terminate the Distribution Agreements pursuant to which the alleged shipment was made. *See* Answer, ¶¶ 109, 111, 123; Exhibit

Binder, Exs. K, L.  In addition, GBMI cannot be heard to assert that it reasonably relied upon alleged representations that future deliveries would be timely at the same time it alleges a history of late deliveries by "the Diesel Entities." *See* Answer, ¶¶ 85-97.  Finally, GBMI cannot have reasonably relied upon representations of a continuing relationship between GBMI and the "Diesel Entities" when the parties had written contracts which contained termination dates.  *See* Exhibit Binder, Ex. B and Sacks Decl., Ex. A.

    3.   <u>At The Very Least, The Fraud Counterclaim Must Be Dismissed Against Kid</u>

At the very least, the fraud claim against Kid must be dismissed.  GBMI fails to allege how Kid is responsible for any of the complained of fraudulent representations.  As discussed above, the only identified speaker of any alleged misrepresentation is Mezzasoma, the Managing Director of Props, not Kid.  *See* Exhibit Binder, Exs. B, and D through F and I through L. Further, GBMI has completely failed to allege any facts necessary to make Kid liable for the acts of Props.  *See EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512-14 (S.D.N.Y. 2005); *Mouawad Nat'l Company*, 476 F. Supp.2d at 421.

For all of the foregoing reasons, the fraud claim must be dismissed.

## III.   <u>GBMI'S DAMAGES  MUST BE LIMITED AND MAY NOT EXCEED THE AMOUNT DEMANDED BY PLAINTIFFS</u>

GBMI alleges claims of more than $159 million against Props, Kids and SpA in its Answer.  Those claims must be capped because, as noted above, the Distribution Agreement contains provisions (1) prohibiting lost profits, indirect, special, incidental, consequential, or similar, damages; and (2) limiting counterclaims by GBMI to an amount which offsets any claims asserted by Kids and Props.  *See* Exhibit Binder Ex. B, ¶¶ 5.6 and 13.

While GBMI's Answer makes clear that it is seeking lost profits and consequential damages, with respect to the Distribution Agreement and otherwise.  GBMI's counterclaims

must be dismissed to the extent they seek for lost profits, indirect, special, incidental, consequential, or similar, damages. *See Daily News, L.P. v. Rockwell Int'l Corp.*, 256 A.D.2d 13, 13-14, 680 N.Y.S.2d 510, 510 (1st Dep't 1998) ("breach of contract claim seeking consequential damages was properly dismissed since the parties' contract…expressly exclude[d] as a remedy the recovery of consequential damages); *Auburn Steel Co. v. Westinghouse Elec. Corp.*, 158 A.D.2d 938, 938, 551 N.Y.S.2d 101, 101 (4th Dep't 1990) (sophisticated business entities may contract to exclude claims for consequential damages).

Finally, as quoted above, the Distribution Agreements cap any claims by GBMI the Distributor to the extent of the specific claims brought by Plaintiffs. Props and Kid have asserted claims for $20 million in the Amended Complaint. *See* Complaint and Exhibit Binder, Ex. B, ¶13. Therefore, pursuant to paragraph 13 of the Distribution Agreement, GBMI must limit its claims to the extent of the specific claims brought by Plaintiffs.

## CONCLUSION

For all the foregoing reasons, the Motion should be granted in its entirety.

Dated: New York, New York
January 22, 2008

DREIER LLP

By:_____

　　Ira S. Sacks
499 Park Avenue
New York, New York
Telephone: (212) 328-6100
Facsimile: (212) 328-6101
*Counsel for Plaintiffs*