UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

DIESEL PROPS S.R.L. and
DIESEL KID S.R.L.,

                                          Civil Action No.
                                          07 CV 9580 (HB)

                    Plaintiffs/Counter-Defendants,

          -against-


GREYSTONE BUSINESS CREDIT II LLC
and GLOBAL BRAND MARKETING INC.,

                    Defendants/Counter-Plaintiffs,

          -against-

DIESEL S.p.A.,

                    Third-Party Defendant.
--------------------------------------------------------------x




**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO
DISMISS COUNTERCLAIMS OF GREYSTONE BUSINESS CREDIT II, LLC**




                                        Ira S. Sacks
                                        Mark S. Lafayette
                                        DREIER LLP
                                        499 Park Avenue
                                        New York, New York 10022
                                        (212) 328-6100
                                        (212) 328-6101 (fax)
                                        *Counsel for Plaintiffs*

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES ............................................................ ii

MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS
COUNTERCLAIMS OF GREYSTONE BUSINESS CREDIT II, LLC..Error! Bookmark not
defined.

BACKGROUND FACTS .................................................................. 3

I.  GREYSTONE'S COUNTERCLAIMS MUST BE DISMISSED BECAUSE MILAN,
    ITALY IS THE ONLY COMPETENT JURISDICTION ................................. 9

II. GREYSTONE'S COUNTERCLAIMS ALSO MUST BE DISMISSED FOR FAILURE
    TO STATE A CLAIM ........................................................ 11

A.  GBMI and Greystone Allege The Same Claims .................................. 14

B.  The First Counterclaim Must Be Dismissed .................................. 14

C.  The Second, Third, Fourth, Fifth, Eighth and Ninth Counterclaims Must Be Dismissed
    As Against Kid ........................................................... 16

D.  The Third, Fourth, Sixth, Seventh And Eighth Counterclaims Must Be Dismissed
    Because Greystone Lacks Standing To Assert Those Claims .................... 16

1.  Greystone Cannot Assert Claims As Assignee Of GBMI ........................ 17

2.  Greystone Cannot Assert Contract Claims As Alleged Assignee From GBMI ..... 18

3.  Greystone Cannot Assert Tort Claims As Alleged Assignee From GBMI ......... 19

4.  Greystone's Interest In Any Cause Of Action Must Be Capped ................ 20

E.  The Fifth Counterclaim For Unjust Enrichment Must Be Dismissed Because Valid
    Contracts Exists ......................................................... 21

F.  The Seventh Counterclaim Must Be Dismissed Because The Alleged Oral Agreement
    Is Barred By A No Oral Modification Clause And Lacks Consideration ........ 22

G.  The Ninth Counterclaim Alleging Fraud Must Be Dismissed ................... 23

CONCLUSION ........................................................................ 25

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

*In re Adler, Coleman Clearing Corp.*, 469 F. Supp.2d 112 (S.D.N.Y. 2007) ...............................12

*Apace Commc'ns, Ltd. v. Burke*, 2007 WL 4125232 (W.D.N.Y. Nov. 16, 2007)................. *passim*

*Applied Companies v. U.S.*, 144 F.3d 1470 (C.A. Fed. 1998) ........................................................20

*Asoma Corp. v. SK Shipping Co., Ltd.*, 467 F.3d 817 (2d Cir. 2007)..........................................10

*ATSI Comm'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir.2007) ....................................12, 13

*Babitt v. Vebeliunas*, 332 F.3d 85 (2d Cir. 2003) .........................................................................12

*Beaconwear Clothing Co. v. United States*, 355 F.2d 583 (1966)..........................................17, 20

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ........................................................ *passim*

*Capital Nat'l Bank of New York v. McDonald's Corp.*, 625 F. Supp. 874 (S.D.N.Y. 1986)... 18-20

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d.Cir. 2002) ......................................................13

*In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp.2d 385 (S.D.N.Y. July 7,
       2003) .............................................................................................................................. 12-13

*Coalition of 9/11 Families, Inc. v. Rampe*, 2005 WL 323747 (S.D.N.Y. Feb. 8, 2005) ...............18

*EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp.2d 265
       (S.D.N.Y.2004)....................................................................................................................13

*EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508 (S.D.N.Y. 2005) . 15-16, 25

*In re Elevator Antitrust Litig.*, 502 F.3d 47 (2d Cir. 2007)...........................................................11

*Exxon Corp. v. Central Gulf Lines*, 717 F. Supp. 1029 (S.D.N.Y. 1989).....................................15

*GMAC Commercial Credit, LLC v. Dillard Dep't Stores, Inc.*, 198 F.R.D. 402 (S.D.N.Y.
       2001) ....................................................................................................................................18

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) ................................................................................11

*Kuhne v. Midland Credit Mgmt., Inc.*, 2007 WL 2274873 (S.D.N.Y. Aug. 7, 2007) ..............3, 14

*Mangiafico v. Blumenthal*, 471 F.3d 391 (2d Cir. 2006).........................................................3, 13

*Matusowsky v. Merrill Lynch*, 186 F. Supp. 2d 397 (S.D.N.Y. 2002).......................................3, 13

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993).....................................................24

*Mouawad Nat'l Co. v. Lazare Kaplan Int'l, Inc.*, 476 F. Supp.2d 414 (S.D.N.Y. 2007) ...... *passim*

*In re Musicland Holding Corp. v. Wachovia Bank*, 374 B.R. 113 (S.D.N.Y. 2007)....................14

*New Moon Shipping Co., Ltd v. MAN B & W Diesel AG*, 121 F.3d 24 (2d Cir. 1997) ................10

*Owens v. Haas*, 601 F.2d 1242 (2d Cir. 1979) .............................................................................18

*Playwell Toy, Inc. v. Bureau Veritas Consumer Prod. Serv., Inc.*, 2007 WL 2892031

(W.D.N.Y. Sept. 28, 2007) ................................................................................13

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117 (2d Cir. 2007)..................11

*Reddington v. Staten Island Univ. Hosp'l*, 2007 WL 4372962 (2d Cir. Dec. 14, 2007) .............12

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007) .......................................................................3, 13

*In re Scottish Re Group Sec. Litig.*, 2007 WL 3256660 (S.D.N.Y. Nov. 2, 2007)..................11, 12

*Septembertide Publ'g, B.V. v. Stein and Day, Inc.*, 884 F.2d 675 (2d Cir. 1989) ........................18

*Shenango Inc. v. Am. Coal Sales Co.*, 2007 WL 2310869 (W.D. Pa. Aug. 9, 2007) ...................13

*Spagnola v. The Chubb Corp.*, 2007 WL 927198 (S.D.N.Y. Mar. 27, 2007) ........................ 13-14

*Statharos v. New York City Taxi and Limousine Comm.*, 198 F.3d 317 (2d Cir. 1999)...............12

*Telstar Resource Group, Inc. v. MCI, Inc.*, 476 F. Supp.2d 261 (S.D.N.Y. 2007).......................22

*U.S. v. Investronica, Inc.*, 2 F. Supp.2d 330 (W.D.N.Y. 1998) .....................................................24

## STATE CASES

*Auburn Steel Co. v. Westinghouse Elec. Corp.*, 158 A.D.2d 938, 551 N.Y.S.2d 101 (4th Dep't 1990) ...........................................................................................................21

*Daily News, L.P. v. Rockwell Int'l Corp.*, 256 A.D.2d 13, 680 N.Y.S.2d 510 (1st Dep't 1998) ...................................................................................................................21

*Feeney v. City of New York*, 255 A.D.2d 253, 681 N.Y.S.2d 62 (2d Dep't 1998)........................23

*M. Paladino, Inc. v. J. Lucchese & Son Contracting Corp.*, 247 A.D.2d 515, 669 N.Y.S.2d 318 (2d Dep't 1998).............................................................................15

*Morris v. New York State Department of Taxation*, 82 N.Y.2d 135, 603 N.Y.S.2d 807 (1993)...........................................................................................................12

*Polymer Trading, S.A.R.L. v. CIC-Union Europeenne et Cie*, 225 A.D.2d 274, 640 N.Y.S.2d 32 (1st Dep't 1996) ............................................................................15

*The River Glen Assoc. Ltd. v. Merrill Lynch Credit Corp.*, 295 A.D.2d 274, 743 N.Y.S.2d 870 (1st Dep't 2002) ........................................................................................25

*Roney v. Janis*, 77 A.D.2d 555, 430 N.Y.S.2d 333 (1st Dep't 1980) ...........................................24

*Salvador v. Uncle Sam's Auctions & Realty, Inc.*, 307 A.D.2d 609, 763 N.Y.S.2d 360 (3d Dep't 2003) ...........................................................................................................25

*Vogel v. Lyman*, 246 A.D.2d 422, 668 N.Y.S.2d 162 (1st Dep't 1998) .......................................15

## STATUTES AND RULES

Fed.R.C.P. Rule 9(b)  .......................................................................................... *passim*

Fed.R.C.P. Rule 12(b)..................................................................................................9

N.Y. Uniform Commercial Code § 9-102(42).............................................................19

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS**</u>
<u>**COUNTERCLAIMS OF GREYSTONE BUSINESS CREDIT II, LLC**</u>

Plaintiffs Diesel Props S.r.l. ("Props") and Diesel Kid S.r.l. ("Kid") (collectively, "Plaintiffs") respectfully submit this Memorandum of Law in support of their motion (the "Motion") to dismiss the counterclaims asserted by Defendant Greystone Business Credit II, L.L.C. ("Greystone"). Greystone's counterclaims are an attempt by Greystone to bring claims (i) for which it lacks standing, (ii) which are belied, in part or in whole, by the very agreements relied upon by Greystone or (iii) which, even if Greystone had standing to assert, must be brought in Milan, Italy.

Global Brand Marketing Inc.'s ("GBMI") has filed an Answer which is in most respects identical to Greystone's and in which it asserts the very same claims that Greystone alleges to have standing to assert by reason of assignment from GBMI. Clearly one of such defendants lacks standing to assert such counterclaims. Plaintiffs also have moved to dismiss GBMI's counterclaims and submitted a Memorandum of Law in Support of Plaintiffs' Motion to Dismiss GBMI's counterclaims (the "GBMI Brief"). Because many of Greystone's claims are identical to those asserted by GBMI, Plaintiffs incorporate the GBMI Brief by reference herein. As is demonstrated in the GBMI Brief, and supplemented below, the counterclaims asserted by Greystone must be dismissed.

First, Greystone's counterclaims must be dismissed because the applicable contracts contain mandatory forum selection clauses which designate Milan, Italy as the only competent forum.

Second, Greystone asserts almost identical claims against Props, Kid and SpA as GBMI. Greystone and GBMI cannot both recover on their duplicative claims.

Third, Greystone asserts several tort claims against both Kid and Props, while failing to

allege any actions taken by Kid that would support those tort claims.

Fourth, Greystone asserts a contractual claim against both Kids and Props even though Props is not party to the agreements which Greystone alleges to have been breached and Greystone has not alleged any legal theory by which a non-party may owe obligations to Greystone pursuant to the subject agreements.  What is more, Greystone has failed to allege any wrongful acts by Kid in breach of the agreement.

Fifth, Greystone lacks standing to assert claims allegedly assigned by GBMI.  Greystone was not assigned those claims; they belong to GBMI.  Even if <u>certain</u> contract <u>rights</u> and <u>certain</u> tort <u>claims</u> had been assigned to Greystone, that assignment does not support the claims Greystone asserts:  the contract claims Greystone asserts may only be asserted by GBMI, which retained the rights <u>and obligations</u> under the contracts at issue; and the tort claims at issue here were not assigned to Greystone because they did not exist at the time of the alleged assignment. In any event, to the extent Greystone may maintain any such causes of action, damages are limited by the controlling contracts and also to the remaining debt owed Greystone by GBMI.

Sixth, Greystone's counterclaim for unjust enrichment must be dismissed because Greystone alleges that express contracts govern the relationships between the parties.

Seventh, the alleged oral agreement asserted in Greystone's Seventh Counterclaim fails to state a claim because (i) Greystone has alleged that the actions constituting a breach of the alleged oral agreement also constitute a breach of a written agreement for which Greystone asserts a separate counterclaim, (ii) the alleged oral agreement would constitute an amendment or modification of existing agreements between Props and Kid and GBMI and such agreements prohibit oral modifications and amendments, (iii) Greystone has failed to allege that the oral agreement was supported by consideration.

Finally, Greystone's fraud claim is deficient because of its failure to (i) plead fraud with specificity as required by Rule 9(b), (ii) set forth material misrepresentations of fact made by Kids or Props and (iii) plead representations upon which Greystone could reasonably rely.

## BACKGROUND FACTS[1]

Plaintiffs Props and Kid, Italian corporations having registered offices in Marostica (Vicenza), Italy, are, among other things, involved in the sale of men's, women's or children's footwear bearing the Diesel trademarks owned by Third-Party Defendant Diesel S.p.A. ("SpA"). *See* the Amended Complaint, dated December 4, 2007 (the "Complaint") at ¶ 3; Answer to Amended Complaint, Counterclaims and Third Party Complaint of Greystone dated January 9, 2008, ("Answer") ¶¶ 58, 59.  SpA, also an Italian corporation, having registered offices in Molvena (Vicenza), Italy, is the owner of numerous valuable trademarks in the United States and elsewhere using the Diesel name.  Complaint, ¶¶ 5, 8; Answer, ¶ 60.  Those trademarks have been licensed to Props and Kid for the manufacturing and sale worldwide of adult footwear and children's footwear.   Complaint, ¶¶ 3-4.

On November 30, 2001, SpA and Global Brand Marketing Inc. ("GBMI") entered into a license agreement for GBMI to make and sell Diesel branded adult shoes in numerous areas of the world.  *Id.* at ¶ 9.  That license expired by its terms on December 31, 2006.  Complaint, ¶ 9. On June 3, 2002, Kid and GBMI entered into a license agreement for GBMI to make and sell

---

[1]  As required on this Motion, the facts material to the Motion accept the well-pleaded allegations in the Answer as true and are based on those alleged facts and the documents referred to in the Answer.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Roth v. Jennings*, 489 F.3d 499, 503 (2d Cir. 2007); *Kuhne v. Midland Credit Mgmt., Inc.*, 2007 WL 2274873, at *1 (S.D.N.Y. Aug. 7, 2007); *Matusowsky v. Merrill Lynch*, 186 F. Supp.2d 397, 400 (S.D.N.Y. 2002).  Certain background facts are supported by the allegations of the Amended Complaint, and, in addition, SpA incorporates by reference the declarations of Luigi Mezzasoma, dated October 26, 2007 (the "Mezzasoma Dec."), Germano Ferraro, dated October 26, 2007 (the "Ferraro Dec."), and Rosanna Sartori, dated October 26, 2007 (the "Sartori Dec."), and the exhibits thereto (the "Exhibit Binder"), in support of Props' and Kid's motion for a temporary restraining order and preliminary injunction, filed October 26, 2007.

Diesel branded children's shoes in numerous areas of the world.  *Id.* at ¶ 10.  That license expired by its terms on December 31, 2006.  *Id.*

GBMI was in severe default of its royalty obligations under the aforementioned licenses as of December 31, 2006.  *Id.* at ¶ 11.  At that time, GBMI owed SpA and Kid over $11.2 million in back royalties, advertising contributions and interest.  *Id.*  That amount remains unpaid.  *Id.*  Under the license agreements, the exclusive forum to recover those amounts is in Milan, Italy, and the license agreements are governed by Italian law and, accordingly, SpA and Kid have not brought suit in New York to recover these amounts.

On November 4, 2005, both Props and Kid entered into distribution agreements with GBMI (the "Distribution Agreements").  The Distribution Agreements were executed by Luigi Mezzasoma ("Mezzasoma") as Managing Director of Props and Germano Ferraro ("Ferraro") as Managing Director of Kid.  *See* Exhibit Binder, Ex. B.  The terms of the Distribution Agreements were from May 1, 2006 (for the Spring/Summer 2007 collection) through December 31, 2008 (for the Fall/Winter 2008 collection), unless terminated by either of the parties.  *Id.*  SpA was not a party to the Distribution Agreements.  *See* Exhibit Binder, Ex. B.

The Distribution Agreements provide that the exclusive forum for resolution of claims is Milan, Italy.   The forum selection clauses of the Distribution Agreements provide, in relevant part:

> 21.2   For any dispute between the Parties and arising out of or connected with this Agreement regarding in particular, but without prejudice to the generality of the foregoing, its conclusion, execution, validity, breach, termination, and determination of damages, which cannot be settled amicable, the exclusive competent jurisdiction shall be the Court of Milan, Italy.

*See* Exhibit Binder, Ex. B.

In addition, the Distribution Agreements expressly limited the type of damages that could be sought in an action arising under the Agreements. Thus, paragraph 5.6 provides:

> 5.6 …Under no circumstances shall either party be liable to the other for loss of profit, indirect, special, incidental, consequential, or similar, damages arising out from this Agreement, or manufacture, distribution sale or use of any of the Products.

The parties to the Distribution Agreement also expressly agreed to limit the ability of GBMI to counterclaim if Diesel started a legal action against GBMI. Thus, paragraph 13 provides:

> 13.   <u>No Indemnity</u>
>
> …Should the Company start a legal action against the Distributor and/or its affiliates due to breaches or failures of the Distributor and/or its affiliates which have led to the termination of the Agreement pursuant to the provisions of <u>Article 11</u> hereof, the Distributor and/or its affiliates shall be entitled to defend themselves by counterclaiming exclusively with regard and to the extent of the specific claims brought by the Company and/or its affiliates and not for any other kind of indemnity.

On November 4, 2005, GBMI and Props also entered into the Diesel Adult Footwear Developing, Sourcing and Buying Agreement ("Sourcing Agreement").[2] The Sourcing Agreement also provides that the exclusive forum for claims is Milan, Italy. The forum selection clause of the Sourcing Agreement provides, in relevant part:

> 24.   Applicable Law: Jurisdiction: ...Any Dispute that may arise or should be associated with this Agreement, concerning in particular, but not limited to, its termination, execution, validity, default, withdrawal and damages assessment, shall be submitted to the exclusive jurisdiction of the Court of Milan, Italy.

*See* Sacks Decl., Ex. A. The Sourcing Agreement was signed by Mezzasoma on behalf of Props.

---

[2]   *See* Exhibit A to the Declaration of Ira S. Sacks dated January 22, 2008 (the "Sacks Decl.").

After the parties signed these Agreements, GBMI continued in severe financial difficulty. *See* Complaint, ¶ 13; Answer ¶ 13. As a result, GBMI negotiated a loan and security agreement with Greystone (the "Loan Agreement"). That Loan Agreement was effective December 4, 2006. *Id.*; Exhibit Binder, Ex. C.

In its essence, the Loan Agreement provided for revolving loans of up to $25 million from Greystone to GBMI. *See* Complaint, ¶ 14; Answer, ¶ 14; Exhibit Binder, Ex. C. Importantly, the Loan Agreement expressly provided that GBMI authorized Greystone to wire proceeds of revolving loans of GBMI to Props/Kid pursuant to the terms of an agreement between GBMI, Greystone and Props/Kid with respect to the payment of Diesel invoices. *Id.*

In connection with the Loan Agreement, and prior to its execution, Greystone sought from SpA and Kid – as licensors who were owed substantial amounts for past due royalties – (but from not Props) an acknowledgment that SpA and Kid each consented to GBMI's entry into the Loan Agreement and agreed not to assert liens or retention of title or similar rights in assets of GBMI until Greystone was paid in full under the Loan Agreement (the "Non-Interference Agreements"). *See* Complaint, ¶ 15; Exhibit Binder, Ex. D. The Non-Interference Agreements were signed by Marina Tosin ("Tosin") as Managing Director of SpA and Ferraro as Managing Director of Kid. No such letter was signed by Props, which at the time was not owed any money by GBMI under the Distribution Agreement. *Id.* As a result, Props is not a party to the Non-Interference Agreements. *See* Exhibit Binder, Ex. D.

Also in connection with the Loan Agreement, on December 7, 2006, SpA, Props and Kid entered into amendments of their prior agreements with GBMI (the "12/7/06 Letter Agreements"). *See* Exhibit Binder, Ex. E. In the 12/7/06 Letter Agreements, (a) SpA, Kid and GBMI agreed on a mechanism for the payment of the past due royalties and advertising

6

contributions; (b) both Props and Kid amended the Distribution Agreements with GBMI; and (c) both Props and Kid conditioned their assent to the Loan Agreement on strict adherence to the payment provisions in a tripartite agreement between GBMI, Greystone and Props/Kid.  *Id.*; *see* Complaint, ¶ 16.   The December 7, 2006 Letter Agreements were signed by Tosin on behalf of SpA, Ferraro on behalf of Kid and Mezzasoma on behalf of Props.  Exhibit Binder, Ex. E.

Tripartite agreements were executed effective December 4, 2006 among (i) Props or Kid, (ii) GBMI and (iii) Greystone (the "TPA" or "ISP").  *See* Exhibit Binder, Ex. F.  Mezzasoma and Ferraro executed the TPA on behalf of Props and Kid, respectively.   The TPA provided a procedure pursuant to which Props and Kid would be able to present invoices to Greystone, ship product to GBMI and be assured by Greystone that Greystone would pay Props or Kid for such product within two business days.  *See* Complaint, ¶ 16; Answer, ¶ 17.  Subsequently, in March 2007, the TPA procedure was streamlined.  *See* Complaint, ¶ 20.  The rights of Props and Kid under the Distribution Agreements were expressly preserved by the TPA.  *Id.* at ¶ 18.

Pursuant to the TPA, Props and Kid sent invoices to Greystone commencing in January 2007, through and including September 3, 2007.  *Id.* at ¶ 21.  The total amount of those Diesel Invoices due under the TPA was $23.5 million.  *Id.*  The balance owing from Greystone (and GBMI) is approximately $20 million.  *Id.*  That relates to hundreds of thousands of pairs of Diesel branded shoes, many of which have been sold by GBMI to its customers, with the proceeds flowing to Greystone under the Loan Agreement.  *Id.*

On September 4, 2007, Props and Kid notified Greystone that it had thirty (30) days to cure specified outstanding defaults under the TPA.  *Id.* at ¶ 24; Answer, ¶ 24; Exhibit Binder, Ex. K.  Greystone did not reply and did not cure the defaults.  *See* Complaint, ¶ 24.  On September 4, 2007, Props and Kid notified GBMI that it had thirty (30) days to cure specified outstanding

defaults under the Distribution Agreements. *Id.* at ¶ 25; Answer, ¶ 25. These default notices were signed by Ferraro and Mezzosoma on behalf of Kid and Props, respectively. Exhibit Binder, Ex. K. GBMI did not cure the defaults. *See* Complaint, ¶ 25.

As a result, on October 17, 2007, Props and Kid notified GBMI that the Distribution Agreement was terminated effective October 4, 2007. *Id.* at ¶ 26; Answer, ¶ 26; Exhibit Binder, Ex. L. These termination notices were signed by Ferraro and Mezzosoma on behalf of Kid and Props, respectively. Exhibit Binder, Ex. L. At the same time, SpA informed GBMI of its default under the 12/7/06 Agreement regarding past-due royalties and advertising contributions and demanded immediate payment of all overdue royalties, advertising contributions, accrued interest and liquidated damages. *See* Complaint, ¶ 26. In addition, in or around October 2007, Props advised GBMI that it was terminating the Sourcing Agreement due to GBMI's default. *See* Answer, ¶ 111.

On October 26, 2007, Props and Kid commenced this action against Greystone and GBMI and on December 4, 2007, Props and Kid amended their complaint. Props and Kid intentionally did not assert claims that arise under or are connected with the Distribution and Sourcing Agreements because those agreements contain mandatory forum selection clauses designating Milan, Italy as the exclusive competent jurisdiction to hear such claims.

On or about January 9, 2007, Greystone answered the Amended Complaint, and asserted nine counterclaims and six third-party causes of action against Kid, Props, and/or SpA.

- The First Counterclaim/First Third-Party Cause of Action is for breach of the Non-Interference Agreement against SpA, Props and Kid.

- The Second Counterclaim/Second Third-Party Cause of Action is for conversion against SpA, Props and Kid.

- The Third Counterclaim/Third Third-Party Cause of Action is for tortious interference with business relationships against SpA, Props and Kid.

8

- The Fourth Counterclaim/Fourth Third-Party Cause of Action is for tortious interference with contractual relationships against SpA, Props and Kid.

- The Fifth Counterclaim/Fifth Third-Party Cause of Action is for unjust enrichment against SpA, Props and Kid.

- The Sixth Counterclaim is for breach of the Distribution Agreements against Props and Kid.

- The Seventh Counterclaim/Sixth Third-Party Cause of Action is for breach of oral agreement against SpA, Props, and Kid.

- The Eighth Counterclaim is for breach of the Sourcing Agreement against Props.

- The Ninth Counterclaim/Seventh Third-Party Cause of Action is for fraud against SpA, Props and Kid.

The Answer contains no specific allegations of any specific misconduct by Kid. Instead, the Answer makes certain allegations concerning Mezzasoma, which Greystone baldly and conclusorily alleges to be a senior employee of the "Diesel Entities," which Greystone defines as "Diesel SpA and two of its subsidiaries, [Kid] and [Props]" (*see* Answer, ¶ 53) and otherwise baldly and conclusorily attributes all other conduct to an unspecified actor on behalf of the Diesel Entities. These counterclaims are an unsuccessful attempt by Greystone to (1) circumvent the mandatory forum selection clauses in the Distribution and Sourcing Agreements, (2) assert claims for which it lacks standing, which are improperly pled under controlling law and which are belied by the very agreements relied upon by Greystone.

## I.    GREYSTONE'S COUNTERCLAIMS MUST BE DISMISSED BECAUSE MILAN, ITALY IS THE ONLY COMPETENT JURISDICTION

As set forth in detail in the GBMI Brief and below, Greystone's counterclaims must be dismissed, and/or this Court should decline jurisdiction, because mandatory forum selection clauses exist within applicable agreements which preclude suit in New York and require that suit be exclusively brought in Milan, Italy. The existence of a valid forum selection clause places the burden on the party seeking to circumvent the clause to "make a strong showing to defeat that

contractual commitment." *Mouawad Nat'l Co. v. Lazare Kaplan Int'l, Inc.*, 476 F. Supp.2d 414, 420 (S.D.N.Y. 2007).[3] Here, Greystone has not – and cannot – make a showing that the forum selection clauses should be ignored.

As set forth above, the forum selection clauses in the Distribution Agreements and Sourcing Agreement encompass all claims arising out of or in connection with the agreements. And as demonstrated in detail in the GBMI Brief, claims for conversion, tortious interference with business relationships, tortious interference with contractual relationships, unjust enrichment, breach of Distribution Agreement, breach of oral agreement, breach of the Sourcing Agreement, and fraud all arise out of or are connected with the Distribution Agreements or the Sourcing Agreement. As a result, Greystone's Second through Ninth Counterclaims must be dismissed.

In addition, Greystone's First Counterclaim for breach of the Non-Interference Agreement must be dismissed. That claim is supported by the very same alleged misconduct which constitutes the bases for Greystone's assertion of its Second through Ninth Counterclaims. (*See* Answer, ¶146). The Second through Ninth counterclaims are virtually identical to GBMI's counterclaims. As is demonstrated in detail in the GBMI Brief, all such claims arise out of or are connected with the Distribution Agreements or the Sourcing Agreement. *See* Declaration of Carlo Pascotto, dated January 22, 2008. And there can be no question that Greystone was aware of the applicable agreements at the time it executed the Non-Interference Agreements.

---

[3] "The Supreme Court has not specifically designated a single clause of Rule 12(b) as the proper procedural mechanism to request dismissal of a suit based upon a valid forum selection clause." *Asoma Corp. v. SK Shipping Co., Ltd.*, 467 F.3d 817, 822 (2d Cir. 2007) (internal quotations omitted). However, the Second Circuit has developed a framework for analyzing these motions. "Under this framework, the moving party must first show evidence of an apparently governing forum selection clause. The burden is then on the plaintiff who brought suit in a forum other than the one designated by that clause to make a strong showing to defeat that contractual commitment. That burden is analogous to that imposed on a plaintiff to prove that the federal court has subject matter jurisdiction over his suit or personal jurisdiction over the defendant." *Mouawad*, F. Supp.2d at 420 (citing *New Moon Shipping Co., Ltd v. MAN B & W Diesel AG*, 121 F.3d 24, 28 (2d Cir. 1997)) (internal citations and quotations omitted).

Accordingly, Greystone's counterclaims must be dismissed, or this Court should decline jurisdiction, because Milan, Italy is the only competent forum.

## II.   GREYSTONE'S COUNTERCLAIMS ALSO MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM

As this Court is well aware, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts which make each claim alleged plausible on its face.  *Bell Atlantic Corp v. Twombly*, 127 S. Ct. 1955, 1965 (2007); *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc*., 507 F.3d 117, 120-21 (2d Cir. 2007) ("a complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion"); *In re Scottish Re Group Sec. Litig*., 2007 WL 3256660, at *6 (S.D.N.Y. Nov. 2, 2007) (complaint must meet standard of plausibility); *Apace Commc'ns, Ltd. v. Burke*, 2007 WL 4125232, at *9-10 (W.D.N.Y. Nov. 16, 2007) ("it is not enough for a plaintiff simply to allege, in broad, conclusory terms, some claim to relief").

The Supreme Court in *Twombly* required pleadings with "enough facts to state a claim to relief that is plausible on its face." 127 S. Ct at 1974.  In the words of the Court, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1964-65 (citations omitted).

The Second Circuit has observed that *Twombly* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original); *see In re Elevator Antitrust Litig*., 502 F.3d 47, 50 (2d Cir. 2007) (*Twombly* requires pleading of facts

sufficient to "nudge [plaintiff's] claims across the line from conceivable to plausible").  Thus, a "complaint must provide the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient to raise a right to relief above the speculative level."  *In re Scottish*, 2007 WL 3256660, at *6; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007); *Reddington v. Staten Island Univ. Hosp*., 2007 WL 4372962, at *4 (2d Cir. Dec. 14, 2007).

As applied here, *Twombly* requires specific pleading of what conduct was actionable by <u>each</u> of the three Diesel Entities and/or facts upon which one such entity is responsible for the actions of another.  Therefore, the mere allegation that SpA "supervised and directed the actions" of Props and Kid (Answer, ¶ 60), and allegations that "the Diesel Entities" committed some act or made certain representations, are far less that the allegations rejected in *Twombly* and precisely the type of ritual incantation of formulaic elements that *Twombly* rejects.

As the Second Circuit has explained, "under New York law, where the corporation is essentially an alter ego of a family or individual, the [corporate] veil may be pierced" and that family or individual held personally liable for what were ostensibly the acts of the corporation.  *Statharos v. New York City Taxi and Limousine Comm*., 198 F.3d 317, 324 (2d Cir. 1999).  A party seeking to pierce the corporate veil under such a theory must generally show that: "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury."  *Morris v. New York State Dep't of Taxation*, 603 N.Y.S.2d 807, 810 (1993); *Babitt v. Vebeliunas,* 332 F.3d 85, 91-92 (2d Cir. 2003); *In re Adler, Coleman Clearing Corp*., 469 F. Supp.2d 112, 117-18 (S.D.N.Y. 2007).

"Purely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard."  *In re Currency Conversion*

*Fee Antitrust Litig.*, 265 F. Supp.2d at 426. *See, e.g., Shenango Inc. v. Am. Coal Sales Co.*, 2007 WL 2310869, at *4 (W.D. Pa. 2007) ("averments reciting elements of the veil-piercing test, without any supporting facts, constitute legal conclusions. Even under a notice pleading standard, as interpreted in *Twombly*, such averments cannot support a veil-piercing claim"); *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp.2d 265, 274 (S.D.N.Y.2004)("To avoid dismissal, a party seeking application of the doctrine must come forward with factual allegations as to both elements of the veil-piercing claim"). Thus, the conclusory allegations here of corporate domination unsupported by any specific factual allegations is insufficient under *Twombly*. *Apace Comm., Ltd.*, 2007 WL 4125232, at *9-10; *Playwell Toy, Inc., v. Bureau Veritas Consumer Prod. Serv., Inc.*, 2007 WL 2892031, at *10 (W.D.N.Y. Sept. 28, 2007).

Further, while the Court generally must accept the complaint's factual allegations and all reasonable inferences therefrom as true, if (a) a claim is not amplified by sufficient factual allegations to render the claim plausible or (b) if it appears beyond doubt based upon (i) the allegations of the complaint, (ii) from documents annexed to the complaint, incorporated therein by reference, or integral to the complaint even if not incorporated by reference, and (iii) from matters to which the court may take judicial notice, that the plaintiff can prove no set of facts in support of its claim, a motion to dismiss should be granted. *Spagnola v. The Chubb Corp.*, 2007 WL 927198, at *2 (S.D.N.Y. Mar. 27, 2007) (Baer, J.); *see ATSI Comm'ns, Inc.*, 493 F.3d at 98; *Mangiafico*, 471 F.3d at 398; *Roth*, 489 F.3d at 503. Thus, "even where a document is not incorporated by reference, the court may consider it [in connection with a motion pursuant to Rule 12(b)(6)] where the Complaint relies heavily upon its terms and effect, which renders the document integral to the Complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d. Cir. 2002) (citations and internal quotations omitted); *Spagnola*, 2007 WL 927198 at *2 (Baer,

J.). As a result, when a plaintiff's conclusory allegations are contradicted by documentary evidence which may be considered by the court in connection with a motion pursuant to Rule 12(b)(6), the court is not required to accept them. *See, e.g., In re Musicland Holding Corp. v. Wachovia Bank*, 374 B.R. 113, 119 (S.D.N.Y. 2007); *Kuhne*, 2007 WL 22744873, at *1; *Matusowsky*, 186 F. Supp.2d at 400.

As we shall now further demonstrate, the Greystone counterclaims must be dismissed.

## A.    GBMI and Greystone Allege The Same Claims

Other than the First Counterclaim and a portion of the Ninth Counterclaim, GBMI and Greystone assert the same counterclaims against Kid and Props. Greystone does so as the alleged assignee of GBMI. In order to conserve judicial resources, the Court is respectfully referred to the GBMI Brief as to why such claims must be dismissed and/or otherwise limited, and all such arguments are incorporated by reference herein.[4]

## B.    The First Counterclaim Must Be Dismissed

Greystone asserts in its First Counterclaim that Props, Kid, and SpA breached the Non-Interference Agreement. In order to be liable for breach of contract, a defendant must be in privity of contract with the party claiming breach. However, Props is not a party to a Non-Interference Agreement. Therefore, Props cannot breach the Non-Interference Agreement. What is more, although Kid is a party to a Non-Interference Agreement, there are no allegations of actionable wrongs by Kid. As a result, no claim has been asserted against Kid either. In addition, to the extent that Greystone is seeking to pierce the corporate veil between Props and SpA, that argument fails. As discussed more fully in the GBMI Brief and above, Greystone has not pled any facts that would demonstrate that Props is the alter ego of SpA, or that there is any

---

[4]   In addition, to the extent that this Court finds that any of the duplicate causes of action to have any merit, any damages of GBMI and Greystone must be limited to a single recovery.

other basis for burdening Props with SpA's or Kid's alleged obligations.

More specifically, Props cannot be held liable for obligations under a Non-Interference Agreement because it is not party to the agreement. An entity cannot be held liable for a contractual obligation where it is not a party to that contract. *See, e.g., Polymer Trading, S.A.R.L. v. CIC-Union Europeenne et Cie*, 225 A.D.2d 482, 483, 640 N.Y.S.2d 32, 33 (1st Dep't 1996); *Vogel v. Lyman*, 246 A.D.2d 422, 422-23, 668 N.Y.S.2d 162, 163 (1st Dep't 1998); *M. Paladino, Inc. v. J. Lucchese & Son Contracting Corp.*, 247 A.D.2d 515, 516, 669 N.Y.S.2d 318, 319 (2d Dep't 1998). Here, Props is not a party to and did not sign the Non-Interference Agreement. *See* Exhibit Binder, Ex. D. As a non-party to the Non-Interference Agreement, Props cannot be held liable for any claimed breach.

In support for its claim of breach of the Non-Interference Agreement against Props, Greystone simply asserts that "the Non-Interference Agreement between Diesel SpA and Greystone is a valid and enforceable agreement that is also binding on Diesel SpA's subsidiary, Diesel Props." *See* Answer, ¶ 143. However, Greystone does not allege any facts which support the conclusion that the Non-Interference Agreement is binding on Props. That is particularly important since (i) the agreement itself makes plain that only SpA is a party and (ii) Greystone entered into a separate Non-Interference Agreement with Kid, another subsidiary of SpA. *See* Exhibit Binder, Ex. D. Greystone's conclusory argument for holding Props liable for any obligations under the Non-Interference Agreement fails, as Greystone has not – and cannot – allege any basis for making Props liable for SpA's contracts.[5] *See, e.g., EED Holdings v. Palmer*

---

[5] Nor are the Diesel Entities agents of one another. Under New York law, "an agency relationship is established where there is evidence of '(1) consent; (2) fiduciary duty; (3) absence of gain or risk to the agent; (4) control by the principal; and (5) power of the agent to alter the legal relations between the principal and third persons and between the principal and himself.'" *Mouawad Nat'l. Co.*, 476 F. Supp.2d at 422 (quoting *Exxon Corp. v. Central Gulf Lines*, 717 F. Supp. 1029, 1031 (S.D.N.Y. 1989)). Greystone has not alleged any of the factors necessary to establish an agency relationship between "the Diesel Entities."

*Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005). Indeed, "purely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice of pleading standard." *Apace Commc'ns, Ltd.*, 2007 WL 4125232, at *9-10.

As a result, the First Counterclaim must be dismissed.

**C.      The Second, Third, Fourth, Fifth, Eighth and Ninth Counterclaims Must Be Dismissed As Against Kid**

Greystone alleges in the Second, Third, Fourth, Fifth and Ninth Counterclaims that Kid, SpA, and Props (1) converted the Long Beach Shoes; (2) tortiously interfered with GBMI's business relationships; (3) tortiously interfered with GBMI's contractual relationships; (4) were unjustly enriched; (5) breached an oral agreement and (6) defrauded Greystone and GBMI.   As set forth above and more fully in the GBMI Brief, Greystone fails to allege that Kid was responsible for any of the actions that form the basis for these claims.   In addition, Greystone fails to allege that the corporate veil should be pierced between Kid, Props and SpA or that an agency relationship exists between Kid, Props and SpA that would make each entity liable for each others' obligations.   Therefore, the Second, Third, Fourth, Fifth, Eighth and Ninth Counterclaims must be dismissed as against Kid for failure to state a claim.

**D.      The Third, Fourth, Sixth, Seventh And Eighth Counterclaims Must Be Dismissed Because Greystone Lacks Standing To Assert Those Claims**

Greystone asserts the following counterclaims as the supposed assignee of GBMI's rights and causes of action:  tortious interference with business relationships, tortious interference with contractual relationships, breach of the Distribution Agreements, breach of oral agreement and breach of the Sourcing Agreement.[6]   However, Greystone lacks standing to assert these claims on GBMI's behalf for several reasons:

---

[6]  The Ninth Counterclaim must be dismissed for that reason as well to the extent that it asserts a fraud perpetrated on GBMI, and not directly on Greystone.

- First, Greystone received only a collateral assignment for purposes of security. Greystone did not receive all of GBMI's rights and obligations. Greystone cannot stand in GBMI's litigation shoes for purposes of its rights, but not its obligations. The Diesel Entities have claims, offsets and defenses against GBMI. If – after all is said and done – GBMI has a net recovery in its disputes with the Diesel Entities, Greystone has a security interest in those proceeds. Greystone does not have the claims themselves.

- Second, Greystone cannot assert contract claims as assignee of GBMI. Only GBMI can assert those claims.

- Third, Greystone cannot assert tort claims as assignee of GBMI. Only GBMI can assert those claims. The claims at issue in this suit did not exist at the time that GBMI assigned tort claims to Greystone. Thus those claims were not assigned to Greystone.

- Finally, Greystone's claims are capped at the amount of the unpaid debt from GBMI and also capped by the Distribution Agreements.

## 1.  Greystone Cannot Assert Claims As Assignee Of GBMI

Greystone cannot stand in GBMI's shoes in this litigation and assert claims on behalf of GBMI. Greystone claims that it is the assignee of GBMI's contract rights and tort claims. That is wrong as a matter of fact on the face of the very documents relied upon by Greystone, and wrong as a matter of law. Greystone only received a collateral assignment of those alleged rights and claims as security for the debts owed by GBMI. It did not receive an outright assignment of those rights. Exhibit Binder, Ex. C, at ¶ 3.1; *Beaconwear Clothing Co. v. United States*, 355 F.2d 583, 590 (Ct. Claims 1966) ("an assignment made as collateral security for a debt gives the assignee only a qualified interest in the assigned chose"). Proof positive of that is that GBMI has sued on the very same claims. It could not do so if it had assigned the claims to Greystone.

Any other result makes no sense. GBMI's claims against the Diesel Entities are subject to offset of over $31 million owed by GBMI to the Diesel Entities under the License Agreements, Distribution Agreements and otherwise. GBMI's claims are also subject to defenses and claims back by the Diesel Entities against GBMI. Greystone cannot avoid those

offsets, defenses and claims by asserting the claims on behalf of GBMI.

As a result, GBMI remains possessed of all of its claims against the Diesel Entities. If GBMI receives a net recovery, Greystone has a security interest in that recovery. But Greystone may not assert the claims directly against the Diesel Entities, without being subject to the claims, defenses and offsets by the Diesel Entities against GBMI.

## 2. Greystone Cannot Assert Contract Claims As Alleged Assignee From GBMI

Greystone cannot assert contract claims as an alleged assignee of GBMI. First, as noted above, it is not a true assignee of contract rights. Moreover, it is black letter law in New York that only a party to a contract or an intended third party beneficiary may sue for breach of contract. *Coalition of 9/11 Families, Inc. v. Rampe*, 2005 WL 323747, at *2 (S.D.N.Y. Feb. 8, 2005) (only party or intended third party beneficiary may sue to enforce a contract); *Owens v. Haas*, 601 F.2d 1242, 1250 (2d Cir. 1979).

Of equal importance, Greystone is not an assignee of the <u>contracts</u>. Rather, it is an assignee only of GBMI's <u>rights</u> under the contracts, but not GBMI's obligations. If GBMI was allowed to sue, it would not be subject to the defenses against GBMI, of counterclaims or offsets. That is not permitted. To be permitted to sue on a contract, an assignee must have assumed "<u>all the terms of the contract between the account debtor … and assignor.</u>" *Septembertide Publ'g, B.V. v. Stein and Day, Inc.*, 884 F.2d 675, 682 (2d Cir. 1989) (emphasis added); *GMAC Commercial Credit, LLC v. Dillard Dep't Stores, Inc.*, 198 F.R.D. 402, 407 (S.D.N.Y. 2001) ("Under New York law, an assignee cannot sue to enforce its rights under the contract without also assuming the other terms of the contract"). Indeed, in a similar situation, a secured lender was found not to have the right to assert breach of contract claims on behalf of its creditor, despite collateral assignments virtually identical to those here. *Capital Nat'l Bank of New York v. McDonald's Corp.*, 625 F. Supp. 874, 882-83 (S.D.N.Y. 1986).

Greystone's theory is that it has succeeded to GBMI's <u>rights</u> against the Diesel Entities, but not GBMI's <u>obligations</u>. For example, Greystone seeks to assert GBMI's claim for breach of the Distribution Agreements, without being subject to the claims by the Diesel Entities against GBMI under the Distribution Agreements and License Agreements. That is not permitted.

### 3.  **Greystone Cannot Assert Tort Claims As Alleged Assignee From GBMI**

Nor can Greystone assert tort claims as an alleged assignee of GBMI. Again, Greystone was not a true assignee of those claims; it merely received a collateral assignment for purposes of security and GBMI has asserted each and every one of the tort claims on its own behalf. Moreover, Greystone did not receive an assignment of the tort claims it seeks to assert. Accordingly, Greystone has no standing to assert the tort claims on behalf of GBMI.[7]

Greystone has alleged that, through the Loan Agreement, GBMI collaterally assigned and granted Greystone a security interest in virtually all of GBMI's assets, including general intangibles, contract rights and rights of indemnification, as well as commercial tort claims. *See* Answer, ¶ 69; Exhibit Binder, Ex. C, ¶ 3.1. However, as a matter of law, that assignment does not include future tort claims.[8]

In *Capital Nat'l Bank*, the court was faced with facts similar to those presented here. McDonald's entered into a franchise agreement with Miranda, who in turn entered into a financing agreement with Capital National Bank ("Capital"). Under the financing agreement, Capital was granted a security interest in all of virtually all Miranda's assets, whether then or thereafter existing. 625 F. Supp. at 878. Capital sued McDonald's alleging a variety of claims, asserting that many of the claims had been assigned by Miranda under the security agreement.

---

[7]  Greystone also lacks standing to assert the Ninth Counterclaim to the extent that it asserts a fraud perpetrated on GBMI, and not directly on Greystone.

[8]  The same is true with respect to any assertion that Greystone received an assignment of future breach of contract causes of action from GBMI.

The court disagreed, holding that "one can only assign a chose in action that is sufficiently choate." *Id.* at 879.   The assignment of a "truly future claim or interest does not work a present transfer of property.  It does not because it cannot; no property yet exists." *Id.* The court held that because the claims asserted by Capital were future interests which did not exist at the time Miranda executed the security agreement, the security agreement did not assign to Capital most of the claims in the complaint. *Id.*

This same result must accrue here.  At the time that Greystone entered into the Loan Agreement, none of the tort claims asserted in the counterclaims existed.  Therefore, because they were not sufficiently choate, the assignment of GBMI's rights to Greystone did not serve to transfer these future claims to Greystone.  Therefore, Greystone lacks standing to assert any tort claims as alleged assignee of GBMI.

**4.  Greystone's Interest In Any Cause Of Action Must Be Capped**

To the extent that Greystone was assigned a security interest in GBMI's causes of action against Props and Kid, its interest in such causes of action is limited to recovery of an amount commensurate with the debt or liabilities secured thereby.  *See Capital Nat'l Bank*, 625 F. Supp. at 879 ("holder of a security interest in a chose in action has only a 'qualified interest in the assigned chose, commensurate with the debt or liabilities secured, even though the assignment appears to be absolute on its face" (citing *Beaconwear*, 355 F.2d at 590); *Applied Companies v. U.S.*, 144 F.3d 1470, 1477 (Fed. Cir. 1998).

Greystone has asserted claims seeking over $159 million of damages, notwithstanding that Greystone's financing facility was for no more than $27 million.  *See* Exhibit Binder, Ex. C, Exhibit A; Answer, ¶ 68.  Indeed, the debt owed Greystone by GBMI is undoubtedly far less than $27 million, as a result of payments by GBMI on its debt and the sale of GBMI's assets.

Therefore, Greystone's claims must be capped at the amount GBMI currently owes Greystone.

Furthermore, as discussed more fully in the GBMI Brief, the Distribution Agreements contain clauses (1) excluding consequential damages; and (2) limiting the counterclaims that GBMI may assert.[9]  The exclusion of consequential damages under the Distribution Agreements precludes Greystone from seeking consequential damages.  *See Daily News, L.P. v. Rockwell Int'l Corp.*, 256 A.D.2d 13, 13-14, 680 N.Y.S.2d 510, 510 (1st Dep't 1998) ("breach of contract claim seeking consequential damages was properly dismissed since the parties' contract…expressly exclude[d] as a remedy the recovery of consequential damages"); *Auburn Steel Co. v. Westinghouse Elec. Corp.*, 158 A.D.2d 938, 938, 551 N.Y.S.2d 101, 101 (4th Dep't 1990) (sophisticated business entities may contract to exclude claims for consequential damages).  The Distribution Agreements also limit any counterclaims exclusively to the extent of the specific claims brought by Plaintiffs in this lawsuit.[10]  Therefore, pursuant to paragraph 13 of the Distribution Agreement, Greystone's claims also must be capped to the extent of the specific claims brought by Plaintiffs in this lawsuit.

**E.** **The Fifth Counterclaim For Unjust Enrichment Must Be Dismissed Because Valid Contracts Exists**

The Fifth Counterclaim for unjust enrichment against Kid and Props must be dismissed because Greystone pleads that there are valid contracts that governs the alleged relationship

---

[9] The Distribution Agreements provide, in relevant part:

> 5.6  …Under no circumstances shall either party be liable to the other for loss of profit, indirect, special, incidental, consequential, or similar, damages arising out from this Agreement, or manufacture, distribution sale or use of any of the Products.

[10]  Paragraph 13 of the Distribution Agreements provides:

> …Should the Company start a legal action against the Distributor and/or its affiliates due to breaches or failures of the Distributor and/or its affiliates which have led to the termination of the Agreement pursuant to the provisions of Article 11 hereof, the Distributor and/or its affiliates shall be entitled to defend themselves by counterclaiming exclusively with regard and to the extent of the specific claims brought by the Company and/or its affiliates and not for any other kind of indemnity.

between Greystone and Props and Kid. Indeed, Greystone alleges that Props and Kid breached the Distribution and Sourcing Agreements by the very same conduct as asserted in support of its claim for unjust enrichment and seeks the same estimated $30 million in damages in connection therewith. *See* Answer, ¶¶ 63-65, 112-13, 121-22, 124, 127, 133-34, 138, 163, 166, 169, 178, 181.

As set forth in the GBMI Brief, it is well-established under New York Law that "a claim for unjust enrichment cannot be sustained where a valid written contract governs the relationship between the parties." *Telstar Resource Group, Inc. v. MCI, Inc*., 476 F. Supp.2d 261, 274-75 (S.D.N.Y. 2007). An exception to this rule exists only in cases where a "bona fide dispute" exists as to the existence of a contract. *Id.* at 275. No such allegation warranting a "bona fide dispute" exists here. On the contrary, Greystone alleges that the agreements were valid, enforceable and breached by Props and Kid. Therefore the alleged existence of valid written contract precludes any claim for unjust enrichment brought by Greystone and based upon these agreements. Accordingly, the Fifth Counterclaim must be dismissed.

**F.    The Seventh Counterclaim Must Be Dismissed Because The Alleged Oral Agreement Is Barred By A No Oral Modification Clause And Lacks Consideration**

In the Seventh Counterclaim, Greystone alleges that Props and Kid, through an oral promise of Mezzasoma on behalf of "the Diesel Entities," breached an oral agreement with GBMI to release certain shoes to GBMI, which Greystone defines as the "Long Beach Shoes." As set forth more fully in the GBMI Brief, the counterclaim based on the alleged oral agreement must be dismissed because (1) Greystone asserts that the failure to release the Long Beach Shoes constitutes a breach of the Distribution Agreements and the Distribution Agreements contain clauses which prevent oral modification or amendment of those contracts and (2) Greystone fails to allege any consideration to support the alleged oral promise.

As a result, the alleged oral agreement is invalid under the Distribution Agreement, which specifically prohibits oral modification. *See* Exhibit Binder, Ex. B.[11] The oral agreement claim asserted in the Seventh Counterclaim also fails because Greystone did not allege any consideration. *See Feeney v. City of New York*, 255 A.D.2d 484, 485, 681 N.Y.S.2d 62, 62 (2d Dep't 1998).

Finally, as noted above, even if the alleged oral agreement is found to be enforceable, the claim must be dismissed as to Kid. Greystone alleges Mezzasoma made the alleged oral promise on behalf of the "Diesel Entities" defined by Greystone to include SpA, Kids and Props. *See* Answer, ¶¶ 53, 173. However, it is clear from the documents referred to in Greystone's pleading that Mezzasoma acted on behalf of Props and that other individuals acted on behalf of Kid and SpA. *See* Exhibit Binder, Exs. B through F. Accordingly, and at the very least, the Seventh Counterclaim must be dismissed as to Kid.

### G.    The Ninth Counterclaim Alleging Fraud Must Be Dismissed

In addition to the reasons set forth above for dismissing the Ninth Counterclaim, there are several more infirmities in the fraud claims. As set forth more fully in the GBMI Brief, the fraud counterclaim must be dismissed for several reasons. First, Greystone has failed to plead fraud with particularity as required by Rule 9(b). Second, Greystone has failed to assert allegations which constitute misrepresentations of a present or pre-existing fact. Third, Greystone has failed to allege that it reasonably relied upon the alleged fraudulent statements. Fourth, the fraud claims are no more than dressed up contract claims. Finally, at the very least, the fraud counterclaim must be dismissed against Kid because Greystone has failed to allege how Kid was responsible for any of the alleged fraud.

---

[11]  Paragraph 22.1 of the Distribution Agreements provides that: "No amendment or modification of this Agreement nor waiver of any of the terms or provisions hereof shall be deemed valid unless made in writing and signed by both Parties hereto."

First, to satisfy the heightened pleading standard for fraud under Rule 9(b), Greystone's Answer "must allege when and where the statements were made, identify the individual responsible for the statements, and specify the content of the alleged fraudulent statements." *U.S. v. Investronica, Inc.*, 2 F. Supp.2d 330, 336 (W.D.N.Y. 1998) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). For example, in *Apace Commc'ns, Ltd.*, 2007 WL 4125232, at *6, the court dismissed a claim for fraud that was insufficiently pled, holding:

> Rather than attribute false statements to specific individual defendants, the complaint typically alleges that multiple defendants (whether identified by name or simply as "these defendants" or some similar collective term), sometimes in concert with unnamed "others," made misrepresentations about some general subject matter . . . Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant . . . Therefore, in a case involving multiple defendants, the complaint should inform each defendant of the nature of his alleged participation in the fraud.

Greystone fails to plead fraud with particularity by failing to identify the speaker of the fraudulent statements, or on behalf of which entity the alleged statements was made, or when the statements were made.

Second, Greystone failed to assert any allegations which constitute misrepresentations of a present or pre-existing fact. *See Roney v. Janis*, 77 A.D.2d 555, 556-57, 430 N.Y.S2d 333, 335 (1st Dep't 1980) (a "cause of action for fraud and deceit cannot be maintained unless it alleges misrepresentation of a present or pre-existing fact"). Rather, and as outlined fully in the GBMI Brief, the fraud allegations are based on statements of intentions, opinions or speculative expressions of hope which are not representations of present or pre-existing fact.

Third, to the extent that this Court finds any of the alleged representations of the Diesel Entities to be representations of fact, those representations cannot form the basis for a fraud

claim, because the fraud claim is simply a dressed up contract claims.  As set forth in the GBMI Brief, the alleged fraudulent representations also serve as the basis for breach of contract claims, and because the fraud claim is duplicative of the breach of contract claims, the fraud claim must be dismissed.  *See, e.g., The River Glen Assoc. Ltd. v. Merrill Lynch Credit Corp.*, ., ., 295 A.D.2d 274, 275, 743 N.Y.S.2d 870, 871 (1st Dep't 2002); *Salvador v. Uncle Sam's Auctions & Realty, Inc.*, 307 A.D.2d 609, 611, 763 N.Y.S.2d 360, 362 (3d Dep't 2003).

Fourth, and as set forth in detail in the GBMI Brief, Greystone has not – and cannot – assert that it reasonably relied on any of the allegedly fraudulent statements.

Finally, Greystone fails to allege how Kid is responsible for any of the complained of fraudulent representations.  As set forth in detail the GBMI Brief, the only speaker of any misrepresentation is allegedly Mezzasoma, Managing Director of Props.  *See* Exhibit Binder, Exs. B, E, F.  Further, Greystone has completely failed to allege any facts necessary to pierce the corporate veil between SpA, Kid and Props or establish an agency relationship.  *See, e.g., EED Holdings*, 228 F.R.D. at 512-14; *Mouawad Nat'l Co.*, 476 F. Supp.2d at 421.  Accordingly, the fraud claim must be dismissed.

## CONCLUSION

For all the foregoing reasons, the Court should grant the Motion in its entirety.

Dated: New York, New York
          January 22, 2008                    DREIER LLP


                                              By:____s/ Ira S. Sacks_____
                                                    Ira S. Sacks
                                              499 Park Avenue
                                              New York, New York
                                              Telephone: (212) 328-6100
                                              Facsimile: (212) 328-6101
                                              *Counsel for Plaintiffs*