UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DIESEL PROPS S.R.L. and
DIESEL KID S.R.L.,

                                                     Civil Action No.
                                                     07 CV 9580 (HB)

                         Plaintiffs/Counter-Defendants,

             -against-


GREYSTONE BUSINESS CREDIT II LLC
and GLOBAL BRAND MARKETING INC.,

                       Defendants/Counter-Plaintiffs,

             -against-

DIESEL S.p.A.,

                     Third-Party Defendant.
-------------------------------------------------------------x


**MEMORANDUM OF LAW IN SUPPORT OF THIRD-PARTY**
**DEFENDANT'S MOTION TO DISMISS THE THIRD-PARTY COMPLAINTS**

Ira S. Sacks
Mark S. Lafayette
DREIER LLP
499 Park Avenue
New York, New York 10022
(212) 328-6100
(212) 328-6101 (fax)
*Counsel for Diesel S.p.A.*

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................. ii

MEMORANDUM OF LAW IN SUPPORT OF THIRD-PARTY DEFENDANT'S MOTION TO DISMISS THE THIRD-PARTY COMPLAINTS ........................................................... 1

BACKGROUND FACTS ...................................................................................................... 2

I.    THE THIRD-PARTY COMPLAINTS FAIL TO STATE A CLAIM ................................... 8

II.   THE THIRD-PARTY COMPLAINTS DO NOT SET FORTH ANY ALLEGATIONS THAT ARE ACTIONABLE AGAINST SPA .................................................................. 11

A.   The Conversion, Tortious Interference and Fraud Claims Must Be Dismissed ................... 11

B.   The Claim For Unjust Enrichment Must Be Dismissed ........................................................ 14

C.   The Oral Agreement Claim Must Be Dismissed ................................................................... 15

D.   The Fraud Claim Must Be Dismissed .................................................................................... 17

1.    The Third-Party Complaints Fail To Meet The Heightened Rule 9(b) Pleading Standard As Against SpA ........................................................................................................................ 18

2.    The Alleged Representations Are Not Misrepresentations of Fact, Greystone and GBMI Have Not Pled Facts Demonstrating Reasonable Reliance, And The Fraud Claim Is No More Than A Dressed Up Claim For Breach Of Contract ................................................... 19

3.    The Fraud Claim Makes No Claim Against SpA ................................................................. 22

E.   The Claims For Breach Of The Non-Interference, Distribution, Sourcing and Oral Agreements Must Be Dismissed ........................................................................................... 22

III.  MILAN, ITALY IS THE EXCLUSIVE JURISDICTION FOR ALL CLAIMS ............... 24

IV.   THERE ARE ADDITIONAL REASONS WHY THE THIRD-PARTY COMPLAINTS MUST BE DISMISSED ......................................................................................................... 24

CONCLUSION ...................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

### FEDERAL CASES

*Apace Commc'ns, Ltd. v. Burke*, 2007 WL 4125232 (W.D.N.Y. Nov. 16, 2007).........8, 10, 13, 18

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007)..............................9, 10, 22

*In re Adler, Coleman Clearing Corp.*, 469 F. Supp.2d 112 (S.D.N.Y. 2007) ...............................13

*Babitt v. Vebeliunas*, 332 F.3d 85 (2d Cir. 2003) ........................................................................13

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ........................................................ *passim*

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002).......................................................10

*In re Currency Conversion Fee Antitrust Litig.*, 265 F. Supp.2d 385 (S.D.N.Y.2003).............9, 13

*Deutsche Asset Mgmt., Inc. v. Callaghan*, 2004 WL 758303 (S.D.N.Y. Apr. 7, 2004) ...............16

*EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp.2d 265 S.D.N.Y.2004) ...10, 13

*EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508 (S.D.N.Y. 2005) .............22

*In re Elevator Antitrust Litig.*, 502 F.3d 47 (2d Cir. 2007)............................................................9

*Exxon Corp. v. Central Gulf Lines,* 717 F. Supp. 1029, 1031 (S.D.N.Y. 1989) ...........................14

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007) ..................................................................................9

*Kuhne v. Midland Credit Mgmt., Inc.*, 2007 WL 2274873 (S.D.N.Y. Aug. 7, 2007) ..............2, 11

*Mangiafico v. Blumenthal*, 471 F.3d 391 (2d Cir. 2006)..........................................................2, 10

*Matusowsky v. Merrill Lynch*, 186 F. Supp.2d 397 (S.D.N.Y. 2002)......................................2, 11

*Mills v. Polar Molecular Corp.*, 12 F.3d 1170 (2d Cir. 1993)......................................................18

*Mouawad Nat'l Co. v. Lazare Kaplan Int'l Inc.*, 476 F. Supp.2d 414 (S.D.N.Y. 2007).........14, 22

*In re Musicland Holding Corp. v. Wachovia Bank*, 374 B.R. 113 (S.D.N.Y. 2007).....................11

*Playwell Toy, Inc. v. Bureau Veritas Consumer Prod. Serv., Inc.*, 2007 WL 2892031
    (W.D.N.Y. Sept. 28, 2007) ................................................................................... 10, 13-14

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117 (2d Cir. 2007)....................8

*Reddington v. Staten Island Univ. Hosp.*, 2007 WL 4372962 (2d Cir. Dec. 14, 2007).............9, 22

*Rey-Willis v. Citibank, N.A.*, 2004 WL 315267 (S.D.N.Y. Feb. 18, 2004) ..................................18

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007*)*....................................................................2, 10

*In re Scottish Re Group Sec. Litig.*, 2007 WL 3256660 (S.D.N.Y. Nov. 2, 2007)...............8, 9, 22

*Shenango Inc. v. Am. Coal Sales Co.*, 2007 WL 2310869 (W.D. Pa. Aug. 9, 2007) ................9, 13

*Spagnola v. The Chubb Corp.*, 2007 WL 927198 (S.D.N.Y. Mar. 27, 2007) ...............................10

*Statharos v. New York City Taxi and Limousine Comm'n*, 198 F.3d 317 (2d Cir.1999)..............13

*Telstar Res. Group, Inc. v. MCI, Inc.*, 476 F. Supp.2d 261 (S.D.N.Y. 2007)...............................14

*Tokio Marine and Fire Ins. Co., Ltd. v. Fed. Marine Terminal, Inc.*, 397 F. Supp.2d 530
(S.D.N.Y. 2005) ......................................................................................................16

*U.S. v. Investronica, Inc.*, 2 F. Supp.2d 330 (W.D.N.Y. 1998) .......................................18


### STATE CASES

*Brett Fabrics, Inc. v. Garan, Inc.*, 170 A.D.2d 253, 565 N.Y.S.2d 521 (1st Dep't 1991) .............17

*Feeney v. City of New York*, 255 A.D.2d 484, 681 N.Y.S.2d 62 (2d Dep't 1998).................. 16-17

*M. Paladino, Inc. v. J. Lucchese & Son Contracting Corp.*, 247 A.D.2d 515, 669
N.Y.S.2d 318 (2d Dep't 1998) ................................................................................23

*Morris v. New York State Dep't of Taxation*, 82 N.Y.2d 135, 603 N.Y.S.2d 807 (1993) .............13

*Peach Parking Corp. v. 346 West 40th St., LLC*, 42 A.D.3d 82, 835 N.Y.S.2d 172 (1st
Dep't 2007)..........................................................................................................17

*Polymer Trading, S.A.R.L. v. CIC-Union Europeenne et Cie*, 225 A.D.2d 482, 640
N.Y.S.2d 32 (1st Dep't 1996)...................................................................................23

*The River Glen Assoc. Ltd. v. Merrill Lynch Credit Corp.*, 295 A.D.2d 274, 743 N.Y.S.2d
870 (1st Dep't 2002)...............................................................................................21

*Roney v. Janis*, 77 A.D.2d 555, 430 N.Y.S.2d 333 (1st Dep't 1980)............................................17

*Rose v. Spa Realty Assoc.*, 42 N.Y.2d 338, 397 N.Y.S.2d 922 (1977)........................................16

*Salvador v. Uncle Sam's Auctions & Realty, Inc.*, 307 A.D.2d 609, 763 N.Y.S.2d 360 (3d
Dep't 2003 ............................................................................................................21

*Vogel v. Lyman*, 246 A.D.2d 422, 668 N.Y.S.2d 162 (1st Dep't 1998)........................................23


### STATUTES AND RULES

Fed.R.C.P. Rule 9(b) ......................................................................................... 2, 14-15

Fed.R.C.P. Rule 12(b)(6) .......................................................................................1, 8

N.Y. General Obligations Law § 15-301 ...................................................................13

## MEMORANDUM OF LAW IN SUPPORT OF THIRD-PARTY DEFENDANT'S MOTION TO DISMISS THE THIRD-PARTY COMPLAINTS

Third-Party Defendant Diesel S.p.A. ("SpA") respectfully submits this Memorandum of Law in support of its motion to dismiss the third-party complaints of Defendants/Counter-Plaintiffs Greystone Business Credit II, L.L.C. ("Greystone") and Global Brand Marketing Inc. ("GBMI"), dated January 9, 2008 (the "Third-Party Complaints").

The Third-Party Complaints should be dismissed pursuant to Rule 12(b)(6) because the claims alleged against SpA are not actionable. The Third-Party Complaints assert claims against SpA, although SpA is not alleged to have taken any of the wrongful conduct alleged in the Third-Party Complaints. Furthermore, although SpA is the parent corporation of Plaintiffs/Counter-Defendants Diesel Props S.R.L. ("Props") and Diesel Kid S.R.L. ("Kid"), there is simply no basis to pierce the corporate veil or otherwise find liability against SpA for any claims asserted. Finally, since all of the claims asserted in the Third-Party Complaints arise under and in connection with the Distribution Agreements and Sourcing Agreements, which provide for exclusive jurisdiction in the courts of Milan, Italy, the Third-Party Complaints must be dismissed for that reason as well.[1]

---

[1] On December 3, 2007, Greystone's Answer, Counterclaims, and Third-Party Complaint (the "Greystone Answer") was served on Dreier LLP, attorneys for Props and Kid. At that time, Dreier LLP had not appeared as counsel for SpA and was not authorized to accept service on behalf of SpA. On December 17, 2007, service of the Greystone Answer was improperly made on Diesel USA, Inc., at a store located at 135 Spring Street, New York, New York. On January 9, 2008, service of both Greystone's and GBMI's Answer to the Amended Complaint, Counterclaims and Third-Party Complaint (the "Amended Answers") was made on Dreier LLP. On January 14, 2008, Greystone served its Amended Answer on SpA in Italy. GBMI has not properly served SpA with any process.

## BACKGROUND FACTS[2]

SpA, an Italian corporation having registered offices in Molvena (Vicenza), Italy, is the owner of numerous valuable trademarks in the United States and elsewhere using the Diesel name. Mezzasoma Dec., ¶ 3; Ferraro Dec., ¶ 3. Plaintiffs Props and Kid, Italian corporations having registered offices in Marostica (Vicenza), Italy, are, among other things, involved in the sale of men's, women's, or children's apparel and footwear bearing the Diesel trademarks owned by SpA. *Id.* The Diesel trademarks have been licensed to Props and Kid for the manufacturing and sale of footwear worldwide. *Id.*; Am. Compl., ¶ 8.

On November 30, 2001, SpA and GBMI entered into a license agreement for GBMI to make and sell Diesel branded adult shoes in numerous areas of the world. Am. Compl., ¶ 9. That license agreement was governed by Italian law and had exclusive jurisdiction for all disputes in Milan, Italy, and expired by its terms on December 31, 2006. *Id.* at ¶¶ 9-11.

On June 3, 2002, Kid and GBMI entered into a license agreement for GBMI to make and sell Diesel branded children's shoes in numerous areas of the world. Am. Compl., ¶ 10. That license agreement was also governed by Italian law and had exclusive jurisdiction for all disputes in Milan, Italy. *Id.* at ¶¶ 10-11. That license also expired by its terms on December 31, 2006. *Id.* at ¶ 10.

---

[2] As required on this Motion, the facts material to the Motion accept the well-pleaded allegations in the Answer as true. The Motion is based on those alleged facts and the documents referred to in the Answer. *See Roth v. Jennings,* 489 F.3d 499, 503 (2d Cir. 2007*)*; *Mangiafico v. Blumenthal,* 471 F.3d 391, 398 (2d Cir. 2006); *Kuhne v. Midland Credit Mgmt., Inc.,* 2007 WL 2274873, at *1 (S.D.N.Y. Aug. 7, 2007); *Matusowsky v. Merrill Lynch,* 186 F. Supp.2d 397, 400 (S.D.N.Y. 2002). Certain background facts are supported by the allegations of the Amended Complaint, and, in addition, SpA incorporates by reference the declarations of Luigi Mezzasoma, dated October 26, 2007 (the "Mezzasoma Dec."), Germano Ferraro, dated October 26, 2007 (the "Ferraro Dec."), and Rosanna Sartori, dated October 26, 2007 (the "Sartori Dec."), and the exhibits thereto (the "Exhibit Binder"), in support of Props' and Kid's motion for a temporary restraining order and preliminary injunction, filed October 26, 2007.

GBMI was in severe default of its royalty obligations under the aforementioned licenses. Am. Compl., ¶ 11.  As of late 2006, GBMI owed SpA and Kid over $11.2 million in back royalties, advertising contributions and interest.  *Id.*  That amount remains unpaid and interest continues to accrue.  *Id.*

On November 4, 2005, both Props and Kid – **but not SpA** – entered into distribution agreements with GBMI (the "Distribution Agreements").  Am. Compl., ¶ 12; Exhibit Binder, Ex. B.  The term of each of the Distribution Agreements was from May 1, 2006 (for the Spring/Summer 2007 collection) through December 31, 2008 (for the Fall/Winter 2008 collection), unless terminated by either of the parties.  Exhibit Binder, Ex. B. at 7.

Also on November 4, 2005, GBMI and Props – **but not SpA** – entered into the Diesel Adult Footwear Developing, Sourcing and Buying Agreement (the "Sourcing Agreement").  *See* Exhibit A to the declaration of Ira S. Sacks dated January 22, 2008 (the "Sacks Decl.").  The Sourcing Agreement also provides that the exclusive forum for disputes is Milan, Italy.  *Id.* at ¶ 24.

GBMI continued in severe financial difficulty throughout 2006.  Am. Compl., ¶ 13.  As a result, GBMI negotiated a loan and security agreement with Greystone (the "Loan Agreement").  Mezzasoma Dec., ¶ 8; Ferraro Dec., ¶ 8; Exhibit Binder, Ex. C.  That Loan Agreement was effective December 4, 2006.[3]  Exhibit Binder, Ex. C at 1.  In its essence, the Loan Agreement provided for revolving loans of up to $25 million from Greystone to GBMI.  Am. Compl., ¶ 14.  Importantly, the Loan Agreement provided that GBMI expressly authorized Greystone to wire proceeds of revolving loans of GBMI to Props/Kid pursuant to the terms of an agreement

---

[3]  The Loan Agreement is governed by New York law and provides for jurisdiction in the state and federal courts in New York County, New York to hear and determine any claims or disputes pertaining to the Loan Agreement.  *See* Exhibit Binder, Ex. C at 27-28.

between GBMI, Greystone and Props/Kid with respect to the payment of Diesel invoices.  Am. Compl., ¶ 14.

In connection with the Loan Agreement, and prior to its execution, Greystone sought from SpA and Kid – as licensors who were owed substantial amounts for past due royalties – (but not from Props) an acknowledgment that each consented to GBMI's entry into the Loan Agreement and agreed not to assert right liens or retention of title in assets of GBMI until Greystone was paid in full under the Loan Agreement (the "Non-Interference Agreements").  Am. Compl., ¶ 15; Mezzasoma Dec., ¶ 10; Ferraro Dec., ¶ 10; Exhibit Binder, Ex. D.  The Non-Interference Agreement was signed by Marina Tosin ("Tosin") as Managing Director of SpA and Ferraro as Managing Director of Kid.  No such letter was signed by Props, which at the time was not owed any money by GBMI under the Distribution Agreement.   Am. Compl., ¶ 15 Mezzasoma Dec., ¶ 10; Ferraro Dec., ¶ 10.

Also in connection with the Loan Agreement, on December 7, 2006, SpA, Props and Kid entered into amendments of their prior agreements with GBMI (the "12/7/06 Letter Agreements").  Am. Compl., ¶ 16; Exhibit Binder, Ex. E.  In the 12/7/06 Letter Agreements, (a) SpA, Kid and GBMI agreed on a mechanism for the payment of the past due royalties and advertising contributions; (b) both Props and Kid amended the Distribution Agreements with GBMI; and (c) both Props and Kid conditioned their assent to the Loan Agreement on strict adherence to the payment provisions in a tripartite agreement between GBMI, Greystone and Props/Kid.  Am. Compl., ¶ 16; Exhibit Binder, Ex. E.

Tripartite agreements were executed effective December 4, 2006 among (i) Props or Kid, (ii) GBMI and (iii) Greystone (the "TPA" or "ISP"), **but not SpA**.[4]  Am. Compl., ¶ 17; Exhibit

---

[4]  The TPA was governed by New York law, and the parties agreed to submit to the jurisdiction of the state and federal courts in New York County, New York for the resolution of any related disputes in relation thereto.  *See*

Binder, Ex. F.  The TPA provided that GBMI would send copies of purchase orders for Diesel product to Props or Kid and Greystone.  Am. Compl., ¶ 17.  Props or Kid would then send a Diesel invoice to GBMI and Greystone for the ordered goods.  *Id*.  Upon request, Greystone would confirm to Props or Kid that the proposed customer was a *bona fide* customer and that there was availability for revolving loans under the Loan Agreement to pay for the goods.  *Id*.  Relying on such availability, Props or Kid would then ship the product to GBMI.  *Id*.  When GBMI invoiced the retailer for the products ordered, it would send a copy of the customer invoice to Props or Kid and Greystone, and Greystone was required to pay Props or Kid the proceeds of a revolving loan in an amount equal to the corresponding Diesel invoice within two business days.  *Id*.  Greystone also unconditionally agreed to provide Props or Kid with written notice of any request for a revolving loan for a Diesel invoice that was not permitted to be made pursuant to the terms of the Loan Agreement. *Id*.

That procedure was intended to insure that Props and Kid were paid for shipments.  Am. Compl., ¶ 18.  Unless and until payment was made, however, the products remained the property of Props or Kid under the Distribution Agreements, which expressly provided that product shipped to GBMI remained the property of Props or Kid until full payment for the shipment was made by GBMI.  *Id*.; Exhibit Binder, Ex. B at ¶ 5.4.  The rights of Props and Kid under the Distribution Agreements were expressly preserved by the TPA.  Am. Compl., ¶ 18.

The TPA procedure was streamlined slightly in March 2007.  Am. Compl., ¶ 20; Mezzasoma Dec., ¶ 15; Ferraro Dec., ¶ 15; Sartori Dec., ¶ 3; Exhibit Binder, Ex. G.  Pursuant to the TPA, Props and Kid sent Diesel invoices to Greystone commencing in January 2007, through and including September 3, 2007.  Am. Comp., ¶ 21; Ferraro Dec., ¶ 16; Sartori Dec., ¶ 4; Exhibit Binder, Ex. H.  The total amount of those Diesel Invoices due under the TPA was $23.5

Exhibit Binder, Ex. F at 3.

million.  Am. Compl., ¶ 21.  The balance owing from Greystone (and GBMI) is approximately $20 million.  *Id*.  That relates to hundreds of thousands of pairs of Diesel branded shoes, many of which have been sold by GBMI to its customers, with the proceeds flowing to Greystone under the Loan Agreement.  *Id*.

With each Diesel Invoice it sent, Props and Kid requested notice from Greystone under the TPA as to whether (i) there was availability under the Loan Agreement for revolving loans to pay the invoice, (ii) GBMI was otherwise prevented from requesting such revolving loans, or (iii) GBMI was not in compliance with, or was in default of, any of the covenants and/or warranties of the Loan Agreement.  Am. Compl., ¶ 22.  Greystone sat mute.  *Id*.  On only two occasions – on January 29, 2007 and on August 2, 2007 – did Greystone indicate any issue with the availability of revolving loans.  *Id*.  Indeed, after the January 29, 2007 notice, Greystone paid over $7 million in Diesel invoices.  *Id*.

On June 1, 2007, Props and Kid wrote to Greystone to inquire as to why Greystone was five (5) weeks behind in paying Diesel Invoices.  Am. Compl., ¶ 23; Mezzasoma Dec., ¶ 18. Greystone did not reply.  Am. Compl., ¶ 23.

On September 4, 2007, Props and Kid – **but not SpA** – notified Greystone that it had thirty (30) days to cure the specified outstanding defaults under the TPA.  Am. Compl., ¶ 23; Exhibit Binder, Ex. J.  Greystone did not reply and did not cure the defaults.  Am. Compl., ¶ 24. On September 4, 2007, Props and Kid – **but not SpA** – notified GBMI that it had thirty (30) days to cure the specified outstanding defaults under the Distribution Agreement.  Am. Compl., ¶ 25; Exhibit Binder, Ex. K.  GBMI did not cure the defaults.   Am. Compl., ¶ 25.  As a result, on October 17, 2007, Props and Kid – **but not SpA** – notified GBMI that the Distribution Agreement was terminated effective October 4, 2007.  Am. Compl., ¶ 26; Exhibit Binder L.  At

the same time, SpA informed GBMI of its default under the 12/7/06 Agreement regarding past-due royalties and advertising contributions and demanded immediate payment of all overdue royalties, advertising contributions, accrued interest and liquidated damages. *Id.*

On October 26, 2007, Props and Kid brought an action against Greystone and GBMI; and on December 4, 2007, Props and Kid amended their complaint. Props and Kid intentionally did not assert claims that arise under or are connected with the Distribution and Sourcing Agreements because those agreements contain mandatory forum selection clauses designating Italy as the exclusive competent jurisdiction to hear such claims.

Greystone filed an answer to the amended complaint with counterclaims and a third-party complaint against SpA on January 9, 2008 (the "Greystone Third-Party Complaint"). The Greystone Third-Party Complaint asserts claims against SpA for, *inter alia*, (i) breach of contract of the Non-Interference Agreements; (ii) conversion; (iii) tortious interference with business relations; (iv) tortious interference with contractual relations; (v) unjust enrichment; (vi) breach of oral agreement; and (vii) fraud.

Also on January 9, 2008, GBMI filed an answer with counterclaims and third-party complaint against SpA (the "GBMI Third-Party Complaint", and together with the Greystone Third-Party Complaint, the "Third-Party Complaints"). The GBMI Third-Party Complaint alleges claims for, *inter alia*, (i) conversion; (ii) tortious interference with business relations; (iii) tortious interference with contractual relations; (iv) unjust enrichment; (v) breach of oral agreement; and (vi) fraud.

As set forth in detail below, the Third-Party Complaints must be dismissed in their entirety. The Third-Party Complaints fail to state a claim against SpA, because (i) SpA is not alleged to have taken any of the wrongful acts upon which liability is based; (ii)

Defendants/Counter-Plaintiffs have no basis to pierce the corporate veil and find SpA liable for the alleged acts of Props and/or Kid; and (iii) only the courts of Milan, Italy are the proper jurisdiction for the claims asserted in the Third Party Complaints (other than the claim for breach of the Non-Interference Agreements).[5]

Moreover, the Third-Party Complaints also must be dismissed for the reasons set forth in the motions of Props and Kid to dismiss the GBMI and Greystone counterclaims. (Those arguments will not be repeated herein at length and are incorporated herein by reference.)

## I.    THE THIRD-PARTY COMPLAINTS FAIL TO STATE A CLAIM

As this Court is well aware, to survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts which make each claim alleged plausible on its face. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007); *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc*., 507 F.3d 117, 121 (2d Cir. 2007) ("a complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion"); *In re Scottish Re Group Secs. Litig.*, 2007 WL 3256660, at *6 (S.D.N.Y. Nov. 2, 2007) (complaint must meet standard of plausibility); *Apace Commc'ns, Ltd. v. Burke*, 2007 WL 4125232, at *9-10 (W.D.N.Y. Nov. 16, 2007) ("it is not enough for a plaintiff simply to allege, in broad, conclusory terms, some claim to relief").

The Supreme Court in *Twombly* required pleadings with "enough facts to state a claim to relief that is plausible on its face." 127 S. Ct. at 1974. In the words of the Court, "[w]hile a complaint attacked by a rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief"

---

[5]  Although Defendants/Counter-Plaintiffs Greystone and GBMI each filed a Third-Party Complaint individually against SpA, the substance of the allegations asserted in the Third-Party Complaints are nearly identical (except that GBMI does not assert claims for breach of the Non-Interference Agreements to which it was not a party.) As such, SpA's motion to dismiss will address the allegations of both Third-Party Complaints concurrently in this motion.

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 1964-65 (citations omitted.)

The Second Circuit has observed that *Twombly* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original); *see In re Elevator Antitrust Litig*., 502 F.3d 47, 50 (2d Cir. 2007) (*Twombly* requires pleading of facts sufficient to "nudge [plaintiff's] claims across the line from conceivable to plausible").  Thus, a "complaint must provide the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient to raise a right to relief above the speculative level."  *In re Scottish*, 2007 WL 3256660, at *6; *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007); *Reddington v. Staten Island Univ. Hosp.*, 2007 WL 4372962, at *4 (2d Cir. Dec. 14, 2007).

As applied here, *Twombly* requires specific pleading of what conduct was actionable by **each** of the three Diesel Entities and/or facts upon which one such entity is responsible for the actions of another.  The mere allegation that SpA "supervised and directed the actions" of Props and Kid (Third-Party Complaints, ¶ 60), is far less that the allegations rejected in *Twombly* and precisely the type of ritual incantation of formulaic elements that *Twombly* rejects.

"Purely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard."  *In re Currency Conversion Fee Antitrust Litig.,* 265 F. Supp.2d 385, 426 (S.D.N.Y. 2003).  *See, e.g., Shenango Inc. v. Am. Coal Sales Co.,* 2007 WL 2310869, at *4 (W.D. Pa. Aug. 9, 2007) ("averments reciting elements of the veil-piercing test, without any supporting facts, constitute legal conclusions. Even under a notice pleading standard, as interpreted in *Twombly,* such averments cannot support a veil-

piercing claim"); *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp.2d 265, 274

(S.D.N.Y.2004) ("To avoid dismissal, a party seeking application of the doctrine must come

forward with factual allegations as to both elements of the veil-piercing claim").  Thus, a

conclusory allegation of corporate domination unsupported by any specific factual allegations is

insufficient under *Twombly*.  *Apace Commc'ns, Ltd.*, 2007 WL 4125232, at *9-10; *Playwell Toy,

Inc. v. Bureau Veritas Consumer Prod. Serv., Inc.,* 2007 WL 2892031, at *11 (W.D.N.Y. Sept.

28, 2007) ("the allegations in the complaint as pleaded are conclusory and insufficient to pierce

the corporate veil and impose liability on [the parent corporation.]")

    Further, while the Court generally must accept the complaint's factual allegations and all

reasonable inferences therefrom as true, (a) if a claim is not amplified by sufficient factual

allegations to render the claim plausible or (b) if it appears beyond doubt based upon (i) the

allegations of the complaint, (ii) from documents annexed to the complaint, incorporated therein

by reference, or integral to the complaint even if not incorporated by reference, and (iii) from

matters to which the court may take judicial notice, that the plaintiff can prove no set of facts in

support of its claim, a motion to dismiss should be granted.  *Spagnola v. The Chubb Corp*., 2007

WL 927198 (S.D.N.Y. Mar. 27, 2007) (Baer, J.); *see ATSI Commc'ns, Inc.*, 493 F.3d at 98;

*Mangiafico*, 471 F.3d at 398; *Roth*, 489 F.3d at 503.  Thus, "even where a document is not

incorporated by reference, the court may consider it 'in connection with a motion pursuant to

Rule 12(b)(6) where the Complaint relies heavily upon its terms and effect, which renders the

document integral to the Complaint."  *Chambers v. Time Warner, Inc*., 282 F.3d 147, 153 (2d

Cir. 2002) (internal citations and quotation marks omitted); *Spagnola*, 2007 WL 927198, at *2

(Baer, J.).  As a result, when a plaintiff's conclusory allegations are contradicted by documentary

evidence which may be considered by the court in connection with a motion pursuant to Rule

12(b)(6), the court is not required to accept them.  *See, e.g., In re Musicland Holding Corp. v. Wachovia Bank*, 374 B.R. 113, 119 (S.D.N.Y. 2007); *Kuhne*, 2007 WL 2274873, at *1; *Matusowsky,* 186 F. Supp.2d at 400.

As demonstrated below, Greystone and GBMI have failed to meet the required standard of plausibility based on specific factual pleadings with respect to their claims against SpA.

## II.    THE THIRD-PARTY COMPLAINTS DO NOT SET FORTH ANY ALLEGATIONS THAT ARE ACTIONABLE AGAINST SPA

The Third-Party Complaints allege no actionable conduct by SpA.  Rather, SpA is simply alleged to be the parent entity of Kid and Props, baldly and conclusorily alleged to have supervised and directed the actions of Props and Kid and thereafter**,** by force of definition, Greystone and GBMI lump together Props, Kid, and SpA, labeling them all as the "Diesel Entities."  As explained above, that is insufficient under *Twombly*, and the Third-Party Complaints should be dismissed.

### A.    The Conversion, Tortious Interference and Fraud Claims Must Be Dismissed

Greystone and GBMI allege claims against SpA for conversion, tortious interference and fraud, asserting that the Diesel Entities (1) converted the Long Beach Shoes; (2) tortiously interfered with GBMI's business relationships; (3) tortiously interfered with GBMI's contractual relationships, and (4) defrauded GBMI.   However, GBMI fails to allege that SpA was responsible for any of the actions that form the basis for these claims and fails to allege facts sufficient to pierce the corporate veil between Props, Kid and SpA, or that there is an agency relationship between the entities.  Therefore, those claims against SpA must be dismissed.

In its allegations in support of its claims for conversion, tortious interference and fraud, Greystone and GBMI refer to "the Diesel Entities" as having committed the actions which form the basis for the torts.  Greystone and GBMI define the "Diesel Entities" in their Third-Party

Complaints as SpA, Props and Kid.  Third-Party Complaints, ¶ 53.  However, Greystone and GBMI fail to plead <u>which</u> of the Diesel Entities is responsible for any of the complained of actions.  To the extent that Greystone and GBMI specifically identify any actor on behalf of the Diesel Entities, they only identify Luigi Mezzasoma, an alleged "senior employee" of the Diesel Entities.  However, it is clear from the documents referred to in Greystone's and GBMI's pleadings, and the agreements and documents referenced therein, that Mezzasoma was a Managing Director of <u>Props</u> and had no relationship with Kid and SpA.  Indeed, as Greystone and GBMI well knew, Kid and SpA were separate entities from Props, and other individuals – Tosin and Ferraro – acted on behalf of SpA and Kid, respectively.  *See* Exhibit Binder Exs. B through F and I through L.

Greystone and GBMI do not identify any representatives of SpA that were responsible for the alleged conversion of the Long Beach Shoes, tortious interference with GBMI's business relationships and contracts, or fraud.  As such, Greystone and GBMI's use of the defined term "Diesel Entities" and allegations regarding Mezzasoma as a "senior employee of the Diesel Entities" is a bald and conclusory allegation and label which does not raise a right to relief above the speculative level.  *See Twombly,* 127 S.Ct. at 1965.  Therefore, there is no basis for holding SpA responsible for any alleged conversion, tortious interference or fraud.

To the extent that Greystone and GBMI are attempting to pierce the corporate veil between Prop, Kid and SpA, that argument fails.  The only bases alleged in the Third-Party Complaints for holding Props, Kid and SpA liable for each others' obligations are (i) by <u>defining</u> Props, Kid and SpA as the "Diesel Entities," (ii) baldly and conclusorily alleging that SpA supervised and directed the actions of Props and Kid, and then (iii) failing to distinguish which entity did what.  That sleight of hand does not pierce the corporate veil.  Indeed, as the various

agreements and documents referred to in the Third Party Complaints make plain, GBMI and Greystone dealt with all three entities as separate corporations.  *See* Exhibit Binder, Exs. B through F and J through L; Sacks Decl., Ex. A.

As the Second Circuit has explained, "under New York law, where the corporation is essentially an alter ego of a family or individual, the [corporate] veil may be pierced" and that family or individual held personally liable for what were ostensibly the acts of the corporation. *Statharos v. New York City Taxi and Limousine Comm'n,* 198 F.3d 317, 324 (2d Cir. 1999).  A party seeking to pierce the corporate veil under such a theory must generally show that: "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury."  *Morris v. New York State Dep't of Taxation,* 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807, 810-11 (1993); *Babitt v. Vebeliunas,* 332 F.3d 85, 91-92 (2d Cir. 2003); *In re Adler, Coleman Clearing Corp.,* 469 F. Supp.2d 112, 117-18 (S.D.N.Y. 2007).

"Purely conclusory allegations cannot suffice to state a claim based on veil-piercing or alter-ego liability, even under the liberal notice pleading standard."  *In re Currency Conversion Fee Antitrust Litig.,* 265 F. Supp.2d at 426.  *See, e.g., Shenango Inc.*, 2007 WL 2310869, at *4 ("averments reciting elements of the veil-piercing test, without any supporting facts, constitute legal conclusions.  Even under a notice pleading standard, as interpreted in *Twombly,* such averments cannot support a veil-piercing claim"); *EED Holdings*, 387 F. Supp.2d at 274 ("to avoid dismissal, a party seeking application of the doctrine must come forward with factual allegations as to both elements of the veil-piercing claim").  Thus, the conclusory allegations here of corporate domination unsupported by any specific factual allegations is insufficient under *Twombly.  Apace Commc'ns, Ltd.*, 2007 WL 4125232, at *9-10; *Playwell Toy, Inc.,* 2007 WL

13

2892031, at *11.[6]

Therefore, the conversion, tortious interference and fraud claims must be dismissed.

**B.**    **The Claim For Unjust Enrichment Must Be Dismissed**

The claim for unjust enrichment must be dismissed because Greystone and GBMI plead throughout the Third-Party Complaints that there are valid contracts that govern the alleged relationships.  Accordingly, Greystone and GBMI may not assert a claim for unjust enrichment; their only recourse is for GBMI or Greystone to sue for breach of the agreement.

It is well-established under New York Law that "the existence of a contract governing a particular dispute normally forecloses recovery by an unjust enrichment theory."  *Telstar Res. Group, Inc. v. MCI, Inc.*, 476 F. Supp.2d 261, 274 (S.D.N.Y. 2007) (an exception to this rule exists only in cases where a "bona fide dispute" exists as to the existence of a contract).  No such allegation warranting a "bona fide dispute" exists here.  Therefore the alleged existence of valid written contract precludes any claim for unjust enrichment brought by GBMI and based upon these agreements.

In the unjust enrichment claim, Greystone and GBMI assert that the Diesel Entities were unjustly enriched by their:  (a) assertion of control over the Long Beach Shoes; (b) breaches of the Distribution Agreements; (c) interference with GBMI's contractual relationships; (d) interference with GBMI's business relationships; (e) solicitation of GBMI employees; (f) breach of oral agreements with GBMI; (g) appropriation of benefits of GBMI's efforts to develop and sell shoes for the Spring/Summer 2008 and Fall/Winter 2008 season; and (h)  failure to make payments under the Sourcing Agreements.  Greystone Third-Party Complaint, ¶ 163; GBMI

---

[6]  Nor are the Diesel Entities agents of one another.  Under New York law, "an agency relationship is established where there is evidence of '(1) consent; (2) fiduciary duty; (3) absence of gain or risk to the agent; (4) control by the principal; and (5) power of the agent to alter the legal relations between the principal and third persons and between the principal and himself.'" *Mouawad Nat'l. Co. v. Lazare Kaplan Int'l. Inc.*, 476 F. Supp.2d 414, 422 (S.D.N.Y. 2007) (quoting *Exxon Corp. v. Central Gulf Lines,* 717 F. Supp. 1029, 1031 (S.D.N.Y. 1989)).  Neither GBMI nor Greystone has alleged any of the factors necessary to establish an agency relationship between "the Diesel Entities."

Third-Party Complaint, ¶ 157.

However, Greystone and GBMI also has alleged that (a), (e), (f) and (g) are governed by the Distribution Agreements and/or Sourcing Agreements and constitute a breach of such agreements (Greystone Third-Party Complaint, ¶¶ 63-65, 112-113, 121-122, 124, 127, 133-134, 138, 163, 166, 178, and 181; GBMI Third-Party Complaint, ¶¶ 63-65, 112-113, 121-122, 124, 127, 133-134, 138, 160, 163, 172, 175), and Greystone and GBMI have separately asserted claims for breach of the Distribution Agreements (b), breach of the Sourcing Agreement (h), and claims for tortious interference with business relations and contractual relations (c) and (d). Greystone Third-Party Complaint, ¶¶ 160-165, 172-177, 146-155; GBMI Third-Party Complaint, ¶¶152-161, 166-171, 178-183.  Accordingly, the unjust enrichment claim must be dismissed.

## C.     The Oral Agreement Claim Must Be Dismissed

Greystone and GBMI allege that the Diesel Entities, through an oral promise of Mezzasoma, breached an oral agreement to release the "Long Beach Shoes" to GBMI. (Greystone Third-Party Complaint, ¶¶ 172-77; GBMI Third-Party Complaint, ¶¶ 166-71.) However, the alleged oral agreement claim must be dismissed because (1) Greystone and GBMI assert that the failure to release the Long Beach Shoes also constitutes a breach of the Distribution Agreement; (2) Greystone and GBMI fail to allege any consideration to support the Diesel Entities alleged promise and (3) the Distribution Agreements contain clauses which prohibit oral modification or amendment of those contracts.

The Third-Party Complaints assert that the Diesel Entities presented bills of lading to customs agents and induced them to release the Long Beach Shoes to them and alleges that these actions constitute a breach the Distribution Agreement.  *See* Third-Party Complaints, ¶¶ 126-27. Accordingly, the allegation of the existence of an <u>oral</u> agreement is contradicted by GBMI's own

pleadings and must be dismissed.

Further, the alleged oral agreement is invalid under the Distribution Agreement, which specifically prohibits oral modification or amendments.  Paragraph 22.1 of the Distribution Agreements provides that:  "No amendment or modification of this Agreement nor waiver of any of the terms or provisions hereof shall be deemed valid unless made in writing and signed by both Parties hereto."  *See* Exhibit Binder, Ex. B.  Such an agreement to prohibit oral modifications is "protected by subdivision 1 of section 15-301 of the General Obligations Law." *See Rose v. Spa Realty Assoc.*, 42 N.Y.2d 338, 343, 397 N.Y.S.2d 922, 926 (1977).  Therefore, where the "only proof of an alleged agreement to deviate from a written contract is the oral exchanges between the parties, the writing controls." *Id.*[7]

Greystone and GBMI have expressly alleged that the ownership of the Long Beach Shoes is governed by the Distribution Agreement.  *See* Third-Party Complaints, ¶ 124 (citing to Section 5.4 of the Distribution Agreement).  Therefore, any alleged agreement that Mezzasoma may have orally reached with respect to the Long Beach Shoes is either a modification of, or amendment to, the Distribution Agreements.   As a result, such an oral promise is barred by Paragraph 22.1 of the Distribution Agreement.

Moreover, the oral agreement claim also must be dismissed for lack of consideration, an essential element to contract formation.  *Deutsche Asset Mgmt., Inc. v. Callaghan*, 2004 WL 758303, at *15 (S.D.N.Y. Apr. 7, 2004); *Tokio Marine and Fire Ins. Co., Ltd. v. Federal Marine Terminal, Inc.*, 397 F. Supp.2d 530, 535 (S.D.N.Y. 2005).  The alleged oral agreement asserted fails because Greystone and GBMI have not alleged any consideration.  *See Feeney v. City of*

---

[7] General Obligations Law §15-301 provides that  "a written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent."

*New York*, 255 A.D.2d 484, 485, 681 N.Y.S.2d 62, 62 (2d Dep't 1998).  That is yet another reason why the oral agreement claim must be dismissed.

Finally, even if the alleged oral agreement is found to be enforceable, the claim must be dismissed as to SpA.  GBMI alleges Mezzasoma made the alleged oral promise.  *See* Third-Party Complaints, ¶¶ 98-99, 106, 108, 123.  However, it is clear from the documents referred to in the Third-Party Complaints that Mezzasoma acted on behalf of Props, not SpA or Kid.  *See* Exhibit Binder, Exs. B through F and I through L).

For all of these reasons, the claim for breach of the oral agreement must be dismissed.

**D.    The Fraud Claim Must Be Dismissed**

In addition to the reasons set forth above, there are additional reasons why the fraud claim must be dismissed.  In order to successfully plead a claim for fraud, a party must allege: "(1) misrepresentation or a material omission of fact which was false and known to be false by the defendant; (2) that the misrepresentation was made for the purpose of inducing the other party to rely upon it; (3) justifiable reliance of the other party on the misrepresentation or material omission; and (4) injury."  *Peach Parking Corp. v. 346 West 40th St., LLC*, 42 A.D.3d 82, 86, 835 N.Y.S.2d 172, 175 (1st Dep't 2007).  *See Roney v. Janis*, 77 A.D.2d 555, 557, 430 N.Y.S.2d 333, 335 (1st Dep't 1980) (cause of action for fraud requires an alleged misrepresentation of a present or pre-existing fact).  Thus, a stated intent, "rather than being a material misrepresentation of fact, [is] only a statement of future intentions, speculative expectations, or an expression of hope when made," and cannot form the basis for a fraud claim. *See Brett Fabrics, Inc. v. Garan, Inc.*, 170 A.D.2d 253, 254, 565 N.Y.S.2d 521, 522 (1st Dep't 1991) (a stated intent to maintain a business relationship was not a material misrepresentation of fact); *Roney*, 77 A.D.2d at 557, 430 N.Y.S.2d at 335 (cause of action for fraud cannot be based on statement of future intentions).

In addition, Rule 9(b) provides:

> In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

To satisfy this heightened pleading standard, the "complaint must allege when and where the alleged statements were made, identify the individual responsible for the statements, and specify the content of the alleged fraudulent statements." *U.S. v. Investronica, Inc.*, 2 F. Supp.2d 330, 336 (W.D.N.Y. 1998) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *Rey-Willis v. Citibank, N.A.*, 2004 WL 315267, at *1 (S.D.N.Y. Feb. 18, 2004).

In *Apace Commc'ns, Ltd., v. Burke*, 2007 WL 4125232, at *6 (W.D.N.Y. Nov. 16, 2007), the court dismissed a claim for fraud that was insufficiently pled, holding:

> "Rather than attribute false statements to specific individual defendants, the complaint typically alleges that multiple defendants (whether identified by name or simply as "these defendants" or some similar collective term), sometimes in concert with unnamed "others," made misrepresentations about some general subject matter . . . Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant . . . Therefore, in a case involving multiple defendants, the complaint should inform each defendant of the nature of his alleged participation in the fraud."

Greystone and GBMI have failed to plead fraud with particularity as required by Rule 9(b) and have failed to assert statements which constitute misrepresentations of a present or pre-existing fact or set forth alleged representations on which Greystone and GBMI may allege reasonable reliance, as required to properly allege a cause of action for fraud. Accordingly, the fraud claim must be dismissed.

1.    <u>The Third-Party Complaints Fail To Meet The Heightened Rule 9(b) Pleading Standard As Against SpA</u>

The fraud claims must be dismissed against SpA because Greystone and GBMI have

failed to plead fraud with particularity. The Third-Party Complaints allege that the "Diesel Entities" (a) "repeatedly assured GBMI that they wanted the relationship [with GBMI] to continue throughout 2008 and beyond;" (b) "represented to GBMI that deliveries [of shoes] would be completed on time;" and (c) "represented that the Fall/Winter 2007 shoes would begin reaching GBMI in April 2007 - one month earlier than expected," but fail to identify the person who made these statements, or on behalf of which entity the alleged statements was made, or when the statements were made. *See* Third-Party Complaints, ¶¶ 66, 90, 102. They also allege that "the Diesel Entities informed GBMI that deliveries would be much better for the Fall/Winter 2007," but once again fail to identify the speaker or when this statement occurred. *See* Third-Party Complaints, ¶ 102.

In other instances, Greystone and GBMI identify Mezzasoma as the speaker of certain statements, but fails to allege when and where the statements were made, as required under Second Circuit law. Thus, Greystone and GBMI allege that Mezzasoma "consistently informed GBMI that the Diesel Entities intended to work with GBMI throughout the Fall/Winter 2007 season and beyond." *See* Third-Party Complaints, ¶ 108. In addition to failing to allege when and where these alleged statements were made, Greystone and GBMI ignore the fact that Mezzasoma is the Managing Director of Props, and does not work for SpA or Kid. *See* Exhibit Binder, Exs. B through F. Thus, Greystone and GBMI have failed to plead fraud with the required particularly.

2.    The Alleged Representations Are Not Misrepresentations of Fact, Greystone and GBMI Have Not Pled Facts Demonstrating Reasonable Reliance, And The Fraud Claim Is No More Than A Dressed Up Claim For Breach Of Contract

As set forth above, the allegations of fraud encompass several different statements allegedly made by representatives of the Diesel Entities, mostly unspecified. These statements

include the following:  "prior to September 2007, the Diesel Entities repeatedly assured GBMI that they wanted the relationship to continue throughout 2008 and beyond" (Third-Party Complaints, ¶ 66); "the Diesel Entities knew or should have known that circumstances were present that would prevent them from shipping the shoes in time for GBMI to meet the cancel dates…they represented to GBMI that the deliveries would be completed on time" emphasis added (Third-Party Complaints, ¶ 90); "Mezzasoma informed GBMI that the Diesel Entities would strive to improve their performance and help GBMI  overcome the negative impact on GBMI's business" (Third-Party Complaints, ¶ 99); "the Diesel Entities informed GBMI that deliveries would be much better for the Fall/Winter 2007 season" (Third-Party Complaints, ¶ 102); "Mezzasoma consistently informed GBMI that the Diesel Entities intended to work with GBMI throughout the Fall/Winter 2007 season and beyond" (Third-Party Complaints, ¶ 108).

These statements, even if made, are not misrepresentations of fact.  In particular, Greystone and GBMI characterizes the alleged false representations as concerning the Diesel Entities "(a) _ability_ to deliver shoes on time to GBMI for the Spring/Summer 2007 and Fall/Winter 2007 seasons; (b) _willingness_ to help GBMI overcome the consequences of the late delivery of the Spring/Summer 2007 shoes; (c) _intention_ to continue their relationship with GBMI through the Spring/Summer 2008 season and beyond; and (d) _willingness_ to release bills of lading for the Long Beach Shoes."  Greystone Third-Party Complaint, ¶ 185; GBMI Third-Party Complaint, ¶ 179 (emphasis added).  These allegations are statements of intentions or speculative expressions of hope or opinions which, as set forth above, are not misrepresentations of present fact as a matter of law.

In addition, to the extent that this Court finds any of the alleged representations with respect to "late deliveries" of the "Long Beach Shoes" to be representations of fact, such

representations fail to support a cause of action for fraud.  The alleged misrepresentations are also alleged to be breaches of the Distribution Agreement, the Non-Interference Agreement and an alleged oral agreement, for which Greystone and GBMI have sought the same damages.  *See* Third-Party Complaints, ¶¶ 95, 146 (Greystone only), ¶¶ 163-169 (late deliveries), and ¶¶ 124, 127, 146 (Greystone only), ¶¶ 169-175 (Long Beach Shoes).  Because the fraud claims relate to, and are duplicative of, the breach of contract claims, the fraud claims must be dismissed.  *See, e.g.*, *The River Glen Assoc. Ltd. v. Merrill Lynch Credit Corp.,* 295 A.D.2d 274, 275, 743 N.Y.S.2d 870, 871 (1st Dep't 2002); *Salvador v. Uncle Sam's Auctions & Realty, Inc.,* 307 A.D.2d 609, 611, 763 N.Y.S.2d 360, 362 (3d Dep't 2003).

Further, Greystone and GBMI have not – and cannot – assert reasonable reliance with respect to the alleged representations. For example, Greystone and GBMI allege that "on or about October 4, 2007, Mezzasoma represented to GBMI's Chief Executive Officer, Sudeepto Datta, that the Diesel Entities would deliver the bills of lading to GBMI and thus allow GBMI to obtain the Long Beach Shoes." Third-Party Complaints, ¶ 123.  However, Greystone and GBMI plead that such statement was allegedly made thirty days <u>after</u> GBMI was advised that it was in default of the Distribution Agreements and that if such default was not cured within thirty days Props and Kid would terminate the Distribution Agreements pursuant to which the alleged shipment was made.  *See* Third-Party Complaints, ¶¶ 109, 111, 123; Exhibit Binder, Exs. K, L. In addition, Greystone and GBMI cannot be heard to assert that they reasonably relied upon alleged representations that future deliveries would be timely at the same time it alleges a history of late deliveries by "the Diesel Entities." *See* Third-Party Complaints, ¶¶ 85-97.  Finally, Greystone and GBMI cannot have reasonably relied upon representations of a continuing relationship between GBMI and the "Diesel Entities" when the parties had written contracts

which contained termination dates.  *See* Exhibit Binder Ex. B; Sacks Decl., Ex. A.

3.    The Fraud Claim Makes No Claim Against SpA

In addition, Greystone and GBMI fail to allege how SpA is responsible for any of the alleged fraudulent representations.  As discussed above, the only identified speaker of any alleged misrepresentation is Mezzasoma, the Managing Director of Props, not SpA.  *See* Exhibit Binder, Ex. E.  That is another reason why the fraud claim against SpA must be dismissed.  *See*, *e.g.*, *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 513 (S.D.N.Y. 2005); *Mouawad Nat'l Co. v. Lazare Kaplan Int'l, Inc.*, 476 F. Supp.2d 414, 421 (S.D.N.Y. 2007).

For all of the foregoing reasons, the fraud claim must be dismissed.

**E.    The Claims For Breach Of The Non-Interference, Distribution, Sourcing and Oral Agreements Must Be Dismissed**

Greystone asserts in the Greystone Third-Party Complaint that SpA breached the Non-Interference Agreement by, *inter alia*, (i) interfering with their ability to liquidate the Gilbert West and Long Beach Shoes; (ii) asserting control over the Long Beach Shoes; (iii) breaching the Distribution Agreement; (iv) soliciting GBMI employees; (v) breaching oral agreements with GBMI; (vi) preventing GBMI from recouping certain costs and (vii) breaching the Sourcing Agreement.   However, none of the factual allegations asserted in support of this claim relate to conduct alleged to have been taken by SpA.  As a result, although SpA was a party to the Non-Interference Agreements, it has not been sufficiently alleged how SpA breached the agreement. The general allegations of breach by the "Diesel Entities" are insufficient under *Twombly*.  *See In re Scottish Re Group Secs. Litig.*, 2007 WL 3256660, at *6 (S.D.N.Y. Nov. 2, 2007) ("complaint must provide the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient to raise a right to relief above the speculative level"); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 98 (2d Cir. 2007); *Reddington*, 2007 WL 4372962, at *4.

22

Second, SpA was not a party to either the Distribution or Sourcing Agreements. Thus any allegation of a breach of the Non-Interference Agreement by SpA breaching the Distribution or Sourcing Agreements is simply "implausible." *See, e.g., Polymer Trading, S.A.R.L. v. CIC-Union Europeenne et Cie*, 225 A.D.2d 482, 483, 640 N.Y.S.2d 32, 33 (1st Dep't 1996); *Vogel v. Lyman*, 246 A.D.2d 422, 422-23, 668 N.Y.S.2d 162, 163 (1st Dep't 1998); *M. Paladino, Inc. v. J. Lucchese & Son Contracting Corp.*, 247 A.D.2d 515, 516, 669 N.Y.S.2d 318, 319 (2d Dep't 1998). Similarly, the alleged actionable conduct cited by Greystone in connection with the Gilbert West and Long Beach Shoes cannot be attributed to SpA, since SpA was not a party to the Distribution Agreements, and thus could not purportedly claim any ownership interest pursuant to the "retention-of-title" provision thereof.

Third, to the extent the Third-Party Complaint alleges any "breach of an oral agreement" with GBMI, that oral agreement was purportedly made by Mezzasoma, the Managing Director of Props, not SpA.

Thus, none of the factual allegations asserted by Greystone in support of its claim for breach of the Non-Interference Agreement is attributable to SpA, and the claim must be dismissed. For all of the foregoing reasons, the Third-Party Complaints must be dismissed in their entirety.

III.     **MILAN, ITALY IS THE EXCLUSIVE JURISDICTION FOR ALL CLAIMS**

The Third-Party Complaint must also be dismissed, and/or this court should decline jurisdiction, because mandatory forum selection clauses exist within the applicable agreements which preclude suit in New York, and provide for the exclusive jurisdiction in the courts of Milan, Italy.  The reasons for that result are fully set forth in the accompanying memoranda of law in support of Plaintiffs' motion to dismiss the GBMI and Greystone Counterclaims, and are incorporated herein by reference.

IV.     **THERE ARE ADDITIONAL REASONS WHY THE THIRD-PARTY COMPLAINTS MUST BE DISMISSED**

There are additional reasons why the Third-Party Complaints must be dismissed, not the least of which is Greystone's lack of standing to assert most of the claims it asserts.  Those reasons are full set forth in the memoranda of Props and Kid in support of their motions to dismiss the Greystone and GBMI counterclaims, which are incorporated herein by reference.

## **CONCLUSION**

For all the foregoing reasons, this Court should grant SpA's motion to dismiss the Third-

Party Complaints in their entirety.

Dated: New York, New York
      January 22, 2008

                                    DREIER LLP

                                    By:    s/ Ira S. Sacks
                                          Ira S. Sacks
                                  499 Park Avenue
                                  New York, New York
                                  Telephone: (212) 328-6100
                                  Facsimile: (212) 328-6101
                                  *Counsel for Diesel S.p.A.*