UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DIESEL PROPS S.R.L. and
DIESEL KID S.R.L.,

        Plaintiffs/Counter-Defendants,

    -against-

GREYSTONE BUSINESS CREDIT II LLC
and GLOBAL BRAND MARKETING INC.,

        Defendants/Counter-Plaintiffs

    -against-

DIESEL S.p.A.

        Third-Party Defendant.
-------------------------------------------------------------x

Civil Action No. 07CV9580 (HB)

**DECLARATION OF CARLO PASCOTTO**

    CARLO PASCOTTO, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury under the laws of the United States as follows:

    1.    I am an attorney at law licensed to practice in Italy and a member of the firm of di Lenardo Pascotto Zambon in Treviso, Italy. I submit this declaration in support of the motion of Diesel Props S.r.l. ("Props") and Diesel Kid S.r.l. ("Kid") for a temporary restraining order and a preliminary injunction.

    2.    On 4 November 2005, each of Props and Kid entered into distribution agreements with Global Brand Marketing Inc. ("GBMI") for the sale of their products throughout the US territory.

    3.    Article 5.4 of the distributions agreements provides for retention of title by Props and Kid until GBMI pays for products delivered by Props and Kid. Specifically, the clause states



1

that *"without prejudice to what is agreed above, the ownership of the Products will be transferred to the Distributor only when total payment of the same is collected by the Company."* This clause partly reproduces the contents of Article 1523 of the Italian Civil Code.

    4.    Subsequently, GBMI entered into a Loan Agreement with Greystone so as to finance the continuation of its distribution relationship with Diesel. By a UCC Financing Statement dated 17 November 2006 GBMI gave all of its assets "wherever located, whether now owned or existing or hereafter acquired or arising, together with all proceeds thereof" as collateral to Greystone, which therefore has a security interest in the same. The UCC Financing Statement, which has been filed with the California Secretary of State's Office, is prior to the action brought by Props and Kid against GBMI and Greystone.

    5.    I have been asked for an opinion on the enforceability of the retention of title clause between the parties, in particular its enforceability vis-à-vis Greystone also in view of the security interest held by the latter in GBMI's assets.

    6.    In this connection, first of all I note that the distribution agreements, pursuant to Article 21.1, are regulated by Italian law. Consequently, Article 5.4 is to be interpreted and applied in accordance with the principles laid down in Articles 1523 and following of the Italian Civil Code.

    7.    Retention of title by the seller is an institution provided for by Italian law within the scope of sale agreements, especially in the event of sales by instalments or, in any case, sales where payment is deferred in respect of the moment when the product sold is made available to the purchaser.

    8.    In commercial practice, the use of retention of title clauses has subsequently extended to distribution agreements as well, which however provide for a more complex



circulation of goods compared to generic sales contracts: generally, from the producer to the distributor, and from the distributor to the retailer. The Italian Civil Code sets no limits to the enforceability of the retention of title clause in distribution agreements, therefore it is fully valid and enforceable also in the case in hand.

9.  With retention of title, the purchaser is granted the possibility of enjoying the goods even though he has not yet paid their corresponding price, whereas the property of the goods remains with the seller. Thus the seller's risks are reduced in case the purchaser fails to pay the price, since the seller has the right to have the goods back.

10. In case of termination of contract due to the purchaser's failure to pay the price of the goods, the seller is therefore entitled to obtain the restitution of unpaid goods, which are still his property by virtue of the retention of title clause. With the restitution of the goods not completely paid for, under Article 1526 Italian Civil Code the purchaser in default may nonetheless obtain the portion of price already paid to the seller, except that the latter may seek equitable compensation for the use of the goods (see Supreme Court of Cassation, Civil Section II, decisions no. 2161 of 31 January 2006 and no. 2265 of 14 March 1997).

11. Based on the foregoing considerations, in the case in hand, pursuant to Article 5.4 of the distribution agreement, Props/Kid retains the exclusive property title in and to its products until GBMI has paid their full price as per the contractually agreed terms (see Supreme Court of Cassation, Civil Section II, decision no. 3415 of 8 April 1999, and Civil Section III, decision no. 2975 of 15 April 1988). Consequently, even though the goods are materially transferred to GBMI, the property of the same is retained by Props/Kid.

12. Thus, in the event of GBMI's failure to pay the price and consequent termination of the agreement, GBMI may no longer freely transfer Diesel products, but will be obliged to



return them to Diesel Props/KID, as applicable, by virtue of the retention of title clause included in and granted by the agreement.

13. The retention of title is fully enforceable against Greystone. Indeed, as noted above, the goods that have not yet been paid for still belong to Diesel, which pursuant to Article 5.4 of the distribution agreement has a right of ownership in the same.

14. In this connection, first of all it should be noted that Greystone has a security interest in GBMI's assets under the UCC Financing Statement of 17 November 2006. Such security interest is related to the Loan Agreement of December 2006 between GBMI and Greystone. Yet the goods covered by the retention of title clause, although materially in GBMI's possession, are not assets of the latter and consequently in my opinion, do not fall within the scope of the UCC Financing Statement. In this respect, therefore, there seems to be little doubt as to the enforceability of the retention of title clause against Greystone with regard to the goods not paid by GBMI, since such goods delivered to GBMI by Pros/Kid under the agreement have never become part of GBMI's assets.

15. Under Italian law the only encumbrance on the goods in the material possession of GBMI that might have preference over the right of Props/Kid enjoying retention of title, would be *'pignoramento'* (attachment) of said goods by the bailiff upon request of a creditor having a valid title empowering to levy execution (*e.g.*, a judgment).

16. In the event of an attachment, the statutory reference background would be Article 1524 of the Italian Civil Code and Article 11.3 of Legislative Decree of 9 October 2002 (LD). Under Article 1524, "*Retention of title can be enforced against the buyer's creditors only if it appears from a written document bearing a certain date prior to the date of 'pignoramento' (attachment).*" Under Article 11 LD, which applies to contracts covering several supplies (such

4



as distribution agreements), "*retention of title under Article 1523 Civil Code, agreed in writing in advance between the buyer and the seller, is enforceable against the buyer's creditors if confirmed in the single invoices of the subsequent supplies bearing a certain date <u>prior to the date of attachment</u> and duly recorded in the accounts.*" Both provisions exclusively protect the creditor who has attached the goods in the buyer's possession. Indeed, it is only in that case that the seller retaining title over the goods is obliged to demonstrate that he has a valid title bearing a certain date prior to attachment.

17. To fully understand the significance of the provision I deem it useful to briefly summarise what is meant by "*pignoramento*". *Pignoramento* is a specific execution procedure which is commenced by the creditor and regulated by Article 492 of the Italian civil Procedure Code: "... *Pignoramento consists in a writ that the bailiff serves on the debtor enjoining the latter to refrain from any and all acts aimed at removing from the security of the specifically indicated creditor the goods to be attached by execution and the proceeds of such execution.*" That is the act commencing the expropriation procedure, aimed at the recourse by the creditor to the debtor's assets in order to satisfy the debt.

18. The juridical effect of *pignoramento* is that any acts aimed at selling or transferring the property of the things attached, are ineffective vis-à-vis the creditor. Thus *pignoramento* is the act, performed by the bailiff, whereby all forms of transfer of the debtors' goods subject to the procedure, are rendered ineffective against the creditor who requested the attachment. Following attachment, the debtor can no longer sell the goods attached.

19. Under Italian law, the security interest established by means of the UCC Financing Statement of 17 November 2006 certainly does not have the same effects as a *pignoramento*. Indeed, the security interest invoked by Greystone in its own favour does not



amount to an act of execution on GBMI's assets, but only secures preference to Greystone in the event of execution. Moreover, GBMI, in the period subsequent to the creation of the security interest, continued to operate, freely using its assets and performing all those acts, such as sales and assignments, that would have been impossible in the presence of a *pignoramento*.

20.  In conclusion, since the UCC Financing Statement of 17.11.2006 is not a *pignoramento*, it does not in any manner restrict the rights granted to Diesel under the retention of title clause, which therefore is fully enforceable against Greystone. Pursuant to the Italian law provisions referred to above, in the absence of a *pignoramento*, reference must be made exclusively to the relationships between seller and buyer, and within said relationships goods that have not been paid for still are owned by Pros/Kid.

21.  Thus, in my opinion, there are no doubts as to the enforceability of the retention of title clause against Greystone.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: February 11, 2008

*/s/ Carlo Pascotto*
Carlo Pascotto