(c) Existing Trade Names of Borrower: [to be inserted]

(d) Inventory Locations: [to be inserted]

(e) Other Locations: [to be inserted]

(f) Litigation: [to be inserted]

(g) Ownership of Borrower: [to be inserted]

(h) Subsidiaries (and ownership thereof): [to be inserted]

(i) Facsimile Numbers:

    Borrower: [to be inserted]

    Lender: 212-896-9199

10. Description of Real Property: None

11. Lender's Bank:
Bank of America
P.O. Box 4899
Atlanta, GA 30302-4899
ABA No.: 026-009-593
For credit to: Greystone Business Credit II, L.L.C.
Account No.: 0032-8251-0983
Re: Titan Apparel, Inc.

12. Other Covenants: For each location set forth in Section 9(d) of Schedule A, Borrower shall use commercially reasonable efforts to obtain a landlord's agreement in form and substance satisfactory to Lender

13. **[Intentionally Omitted]**

14. Commercial Tort Claims [to be inserted]

15. Deposit Accounts [to be inserted]

16. Borrower's Bank [to be inserted]

IN WITNESS WHEREOF, Borrower and Lender have signed this Schedule A as of the date set forth in the heading to the Agreement.

| Borrower: | Lender: |
|---|---|
| **TITAN APPAREL, INC.** | **GREYSTONE BUSINESS CREDIT II, L.L.C.** |
| By /s/ _____ | By /s/ _____ |
| Its _____ | Its Authorized Signatory |

A-4

Schedule B

Definitions

This Schedule is an integral part of the Loan and Security Agreement between **Titan Apparel, Inc.** and **Greystone Business Credit II, L.L.C.** (the "*Agreement*").

As used in the Agreement, the following terms have the following meanings:

"*Account*" has the meaning set forth in the UCC.

"*Account Debtor*" has the meaning set forth in the UCC.

"*Account Proceeds*" has the meaning set forth in Section 4.1.

"*Accounts Advance Rate*" means the percentage set forth in Section 1(b)(i) of Schedule A.

"*Advance*" has the meaning set forth in Section 1.1(b).

"*Advance Rates*" means, collectively, the Accounts Advance Rate and the Inventory Advance Rate.

"*Affiliate*" means, with respect to any Person, a relative, partner, shareholder, member, manager, director, officer, or employee of such Person, any parent or subsidiary of such Person, or any Person controlling, controlled by or under common control with such Person or any other Person affiliated, directly or indirectly, by virtue of family membership, ownership, management or otherwise.

"*Agreement*" and "*this Agreement*" mean the Loan and Security Agreement of which this Schedule B is a part and the Schedules thereto.

"*Availability*" has the meaning set forth in Section 1.1(a)

"*Bankruptcy Code*" means the United States Bankruptcy Code (11 U.S.C. § 101 et seq.).

"*Blocked Account*" has the meaning set forth in Section 4.1.

"*Borrower*" has the meaning set forth in the heading to the Agreement.

"*Borrower's Address*" has the meaning set forth in the heading to the Agreement.

"*Business Day*" means a day other than a Saturday or Sunday or any other day on which Lender or banks in New York are authorized to close.

B-1

"*Capital Stock*" means any and all shares, interests, participations or other equivalents (however designated) of capital stock of a corporation, any and all equivalent ownership interests in a Person (other than a corporation) and any and all warrants, rights or options to purchase any of the foregoing.

"*Chattel Paper*" has the meaning set forth in the UCC.

"*Collateral*" means all property and interests in property in or upon which a security interest or other Lien is granted pursuant to this Agreement or the other Loan Documents, including all of the property of Borrower described in Section 3.1.

"*Commercial Tort Claims*" has the meaning set forth in the UCC.

"*Credit Accommodation*" has the meaning set forth in Section 1.1(a).

"*Credit Accommodation Balance*" means the sum of (i) the aggregate undrawn face amount of all outstanding Credit Accommodations and (ii) all interest, fees and costs due or, in Lender's estimation, likely to become due in connection therewith.

"*Credit Accommodation Fees*" has the meaning set forth in Section 2.2(a).

"*Credit Accommodation Limit*" means the amount set forth in Section 1(e) of Schedule A.

"*Default*" means any event which with notice or passage of time, or both, would constitute an Event of Default.

"*Deposit Account*" has the meaning set forth in the UCC.

"*Dilution Percentage*" means the gross amount of all returns, allowances, discounts, credits, write-offs and similar items relating to Borrower's Accounts computed as a percentage of Borrower's gross sales, calculated on a ninety (90) day rolling average.

"*Document*" has the meaning set forth in the UCC.

"*Electronic Chattel Paper*" has the meaning set forth in the UCC.

B-2

"*Eligible Account*" means, at any time of determination, an Account which satisfies the general criteria set forth below and which is otherwise acceptable to Lender (*provided*, that Lender may, in its sole discretion, change the general criteria for acceptability of Eligible Accounts upon at least fifteen days' prior notice to Borrower). An Account shall be deemed to meet the current general criteria if (i) neither the Account Debtor nor any of its Affiliates is an Affiliate, creditor or supplier of Borrower; (ii) it does not remain unpaid more than the earlier to occur of (A) the number of days after the original *invoice date* set forth in Section 5(a) of Schedule A or (B) the number of days after the original *invoice due date* set forth in Section 5(b) of Schedule A; (iii) the Account Debtor or its Affiliates are not past due on other Accounts owing to Borrower comprising more than 50% of all of the Accounts owing to Borrower by such Account Debtor or its Affiliates; (iv) all Accounts owing by the Account Debtor or its Affiliates do not represent more than 30% of all otherwise Eligible Accounts (*provided*, that Accounts which are deemed to be ineligible solely by reason of this clause (iv) shall be considered Eligible Accounts to the extent of the amount thereof which does not exceed the applicable percentage of all otherwise Eligible Account as set forth in this clause (iv)); (v) no covenant, representation or warranty contained in this Agreement with respect to such Account (including any of the representations set forth in Section 5.4) has been breached; (vi) the Account is not subject to any contra relationship, counterclaim, dispute or set-off (*provided*, that Accounts which are deemed to be ineligible solely by reason of this clause (vi) shall be considered Eligible Accounts to the extent of the amount thereof which is not affected by such contra relationships, counterclaims, disputes or set-offs); (vii) the Account Debtor's chief executive office or principal place of business is located in the United States or Provinces of Canada which have adopted the Personal Property Security Act or a similar act, unless (A) the sale is fully backed by a letter of credit, guaranty or acceptance acceptable to Lender in its sole discretion, and if backed by a letter of credit, such letter of credit has been issued or confirmed by a bank satisfactory to Lender, is sufficient to cover such Account, and if required by Lender, the original of such letter of credit has been delivered to Lender or Lender's agent and the issuer thereof notified of the assignment of the proceeds of such letter of credit to Lender or (B) such Account is subject to credit insurance payable to Lender issued by an insurer and on terms and in an amount acceptable to Lender; (viii) it is absolutely owing to Borrower and does not arise from a sale on a bill-and-hold, guarantied sale, sale-or-return, sale-on-approval, consignment, retainage or any other repurchase or return basis or consist of progress billings; (ix) Lender shall have verified the Account in a manner satisfactory to Lender; (x) the Account Debtor is not the United States of America or any state or political subdivision (or any department, agency or instrumentality thereof), unless Borrower has complied with the Assignment of Claims Act of 1940 (31 U.S.C. §203 et seq.) or other applicable similar state or local law in a manner satisfactory to Lender; (xi) it is at all times subject to Lender's duly perfected, first priority security interest and to no other Lien that is not a Permitted Lien, and the goods giving rise to such Account (A) were not, at the time of sale, subject to any Lien except Permitted Liens and (B) have been delivered to and accepted by the Account Debtor, or the services giving rise to such Account have been performed by Borrower and accepted by the Account Debtor; (xii) the Account is not evidenced by Chattel Paper or an Instrument of any kind and has not been reduced to judgment; (xiii) the Account Debtor's total indebtedness to Borrower does not exceed the amount of any credit limit established by Borrower or Lender and the Account Debtor is otherwise deemed to be creditworthy by Lender (*provided*, that Accounts which are deemed to be ineligible solely by reason of this clause (xiii) shall be considered Eligible Accounts to the extent the amount of such Accounts does not exceed the lower of such credit limits); (xiv) there are no facts or circumstances existing, or which could reasonably be anticipated to occur, which might result in any adverse change in the Account Debtor's financial condition or impair or delay the collectibility of all or any portion of such Account; (xv) Lender has been furnished with all documents and other information pertaining to such Account which Lender has requested, or which Borrower is obligated to deliver to Lender, pursuant to this Agreement; (xvi) Borrower has not made an agreement with the Account Debtor to extend the time of payment thereof beyond the time periods set forth in clause (ii) above; and (xvii) Borrower has not posted a surety or other bond in respect of the contract under which such Account arose.

B-3

"*Eligible Inventory*" means, at any time of determination, Inventory (other than packaging materials and supplies) which satisfies the general criteria set forth below and which is otherwise acceptable to Lender (*provided*, that Lender may, in its sole discretion, change the general criteria for acceptability of Eligible Inventory upon at least fifteen days' prior written notice to Borrower). Inventory shall be deemed to meet the current general criteria if (i) it consists of raw materials or finished goods, or work-in-process that is readily marketable in its current form; (ii) it is in good, new and saleable condition; (iii) it is not slow-moving, obsolete, unmerchantable, returned or repossessed; (iv) it is not in the possession of a processor, consignee or bailee, or located on premises leased or subleased to Borrower, or on premises subject to a mortgage in favor of a Person other than Lender, unless such processor, consignee, bailee or mortgagee or the lessor or sublessor of such premises, as the case may be, has executed and delivered all documentation which Lender shall require to evidence the subordination or other limitation or extinguishment of such Person's rights with respect to such Inventory and Lender's right to gain access thereto; (v) it meets all standards imposed by any governmental agency or authority; (vi) it conforms in all respects to any covenants, warranties and representations set forth in the Agreement; (vii) it is at all times subject to Lender's duly perfected, first priority security interest and no other Lien except a Permitted Lien; and (viii) it is situated at an Inventory Location listed in Section 9(d) of Schedule A or other location of which Lender has been notified as required by Section 5.8.

"*Equipment*" has the meaning set forth in the UCC.

"*ERISA*" means the Employee Retirement Income Security Act of 1974 and all rules, regulations and orders promulgated thereunder.

"*Event of Default*" has the meaning set forth in Section 8.1.

"*Fixtures*" has the meaning set forth in the UCC.

"*GAAP*" means generally accepted accounting principles as in effect from time to time, consistently applied.

"*General Intangibles*" has the meaning set forth in the UCC.

"*Goods*" has the meaning set forth in the UCC.

"*Ineligible Receivable Payments*" has the meaning set forth in Section 1.4.

"*Initial Maturity Date*" means the date set forth in Section 7 of Schedule A.

B-4

"*Initial Term*" has the meaning set forth in Section 7.1.

"*Instrument*" has the meaning set forth in the UCC.

"*Inventory*" has the meaning set forth in the UCC.

"*Inventory Advance Rate*" means the percentage(s) set forth in Section 1(b)(ii) of Schedule A.

"*Inventory Sublimit*" means the amount(s) set forth in Section 1(d) of Schedule A.

"*Investment Property*" has the meaning set forth in the UCC.

"*Lender*" has the meaning set forth in the heading to the Agreement.

"*Letter-of-Credit Right*" has the meaning set forth in the UCC.

"*Lien*" means any interest in property securing an obligation owed to, or a claim by, a Person other than the owner of the property, whether such interest is based on common law, statute or contract, including rights of sellers under conditional sales contracts or title retention agreements and reservations, exceptions, encroachments, easements, rights-of-way, covenants, conditions, restrictions, leases and other title exceptions and encumbrances affecting property. For the purpose of this Agreement, Borrower shall be deemed to be the owner of any property which it has acquired or holds subject to a conditional sale agreement or other arrangement pursuant to which title to the property has been retained by or vested in some other Person for security purposes.

"*Loan Account*" has the meaning set forth in Section 2.4.

"*Loan Documents*" means, collectively, the Agreement and all notes, guaranties, security agreements, certificates, landlord's agreements, Lock Box and Blocked Account agreements and all other agreements, documents and instruments now or hereafter executed or delivered by Borrower or any Obligor in connection with, or to evidence the transactions contemplated by, this Agreement.

"*Loan Limits*" means, collectively, the Availability limits, all other limits on the amount of Loans or Credit Accommodations set forth in this Agreement.

"*Loans*" means collectively the Revolving Loans and the Term Loan.

"*Lock Box*" has the meaning set forth in Section 4.1.

"*Maturity Date*" has the meaning set forth in Section 7.1.

"*Maximum Facility Amount*" means the amount set forth in Section 2(a) of Schedule A.

B-5

"*Net Profits*" means, for any given period of determination, Borrower's net profits for such period determined in accordance with GAAP.

"*Net Sales*" means net sales as determined in accordance with GAAP.

"*Net Sales Participation*" has the meaning set forth in Section 2.2(b).

"*Obligations*" means all present and future Loans, advances, debts, liabilities, obligations, guaranties, covenants, duties and indebtedness at any time owing by Borrower to Lender, whether evidenced by this Agreement, any other Loan Document or otherwise whether arising from an extension of credit, opening a Credit Accommodation, guaranty, indemnification or otherwise (including all fees, costs and other amounts which may be owing to issuers of Credit Accommodations and all taxes, duties, freight, insurance, costs and other expenses, costs or amounts payable in connection with Credit Accommodations or the underlying goods), whether direct or indirect (including those acquired by assignment and any participation by Lender in Borrower's indebtedness owing to others), whether absolute or contingent, whether due or to become due, and whether arising before or after the commencement of a proceeding under the Bankruptcy Code or any similar statute whether or not allowed in any proceeding under the Bankruptcy Code, including all interest, charges, expenses, fees, attorney's fees, expert witness fees, audit fees, letter of credit fees, Credit Accommodation Fees and any other sums chargeable to Borrower under this Agreement or under any other Loan Document.

"*Obligor*" means any guarantor, endorser, acceptor, surety or other person liable on, or with respect to, the Obligations or who is the owner of any property which is security for the Obligations, other than Borrower.

"*Permitted Liens*" means: (i) purchase money security interests in specific items of Equipment in an aggregate amount not to exceed the limit set forth in Section 8(a) of Schedule A; (ii) leases of specific items of Equipment in an aggregate amount not to exceed the limit set forth in Section 8(b) of Schedule A; (iii) Liens for taxes not yet due and payable; (iv) additional Liens which are fully subordinate to the security interests of Lender and are consented to in writing by Lender; (v) security interests being terminated concurrently with the execution of this Agreement; (vi) Liens of materialmen, mechanics or carriers, but excluding Liens in favor of warehousemen, arising in the ordinary course of business and securing obligations which are not delinquent; (vii) Liens incurred in connection with the extension, renewal or refinancing of the indebtedness secured by Liens of the type described in clause (i) or (ii) above; *provided*, that any extension, renewal or replacement Lien is limited to the property encumbered by the existing Lien and the principal amount of the indebtedness being extended, renewed or refinanced does not increase; (viii) Liens in favor of customs and revenue authorities which secure payment of customs duties in connection with the importation of goods; and (ix) security deposits posted in connection with real property leases or subleases. Lender will have the right to require, as a condition to its consent under clause (iv) above, that the holder of the additional Lien sign an intercreditor agreement in form and substance satisfactory to Lender, in its sole discretion, acknowledging that the Lien is subordinate to the security interests of Lender, and agreeing not to take any action to enforce its subordinate Lien so long as any Obligations remain outstanding, and that Borrower agree that any uncured default in any obligation secured by the subordinate Lien shall also constitute an Event of Default under this Agreement.

B-6

"*Person*" means any individual, sole proprietorship, partnership, joint venture, limited liability company, trust, unincorporated organization, association, corporation, government or any agency or political division thereof, or any other entity.

"*Prime Rate*" means, at any given time, the prime rate as quoted in *The Wall Street Journal* as the base rate on corporate loans posted as of such time by at least 75% of the nation's 30 largest banks (which rate is not necessarily the lowest rate offered by such banks).

"*Proceeds*" has the meaning set forth in the UCC.

"*Projected EBITDA*" means EBITDA as reflected on the projections delivered on or prior to the date hereof and attached as Annex I hereto.

"*Real Property*" means the real property described in Section 10 of Schedule A.

"*Related Agreements*" means that certain Secured Party Bill of Transfer dated as of the date hereof between GBC Funding, LLC, a Delaware limited liability company (as successor to Lender), and Borrower, and the documents, instruments and agreements executed in connection therewith.

"*Related Transactions*" means the transactions contemplated by the Related Agreements.

"*Released Parties*" has the meaning set forth in Section 6.1.

"*Renewal Term*" has the meaning set forth in Section 7.1.

"*Reserves*" has the meaning set forth in Section 1.2.

"*Revolving Loans*" has the meaning set forth in Section 1.1(a).

"*Sale*" has the meaning set forth in Section 8.2.

"*Subsidiary*" means any corporation or other entity of which a Person owns, directly or indirectly, through one or more intermediaries, more than 50% of the Capital Stock or other equity interest at the time of determination.

"*Tangible Chattel Paper*" has the meaning set forth in the UCC.

B-7

"*Term*" means the period commencing on the date of this Agreement and ending on the Maturity Date.

"*Term Loan*" has the meaning set forth in Section 1.1(b).

"*UCC*" means, at any given time, the Uniform Commercial Code as adopted and in effect at such time in the State of New York.

"*Unfinanced Capital Expenditures*" shall mean, for any period, as to any Person, total Capital Expenditures less (a) long-term indebtedness and (b) proceeds of sales of rental containers.

"*Utilization*" means, with respect to any period, the average owned containers on rent divided by the average total owned containers.

"*VAT Refunds*" has the meaning set forth in Section 1.4.

All accounting terms used in this Agreement, unless otherwise indicated, shall have the meanings given to such terms in accordance with GAAP. All other terms contained in this Agreement, unless otherwise indicated, shall have the meanings provided by the UCC, to the extent such terms are defined therein. The term "*including*," whenever used in this Agreement, shall mean "including but not limited to." The singular form of any term shall include the plural form, and vice versa, when the context so requires. References to Sections, subsections and Schedules are to Sections and subsections of, and Schedules to, this Agreement. All references to agreements and statutes shall include all amendments thereto and successor statutes in the case of statutes.

B-8

IN WITNESS WHEREOF, Borrower and Lender have signed this Schedule B as of the date set forth in the heading to the Agreement.

**Borrower:**                                                                 **Lender:**

**TITAN APPAREL, INC.**                                          **GREYSTONE BUSINESS CREDIT II, L.L.C.**


By _____                              By _____
   Its _____                                    Its Authorized Signatory


B-9

**Annex I**

**See attached.**

---

Exhibit A

**FORM OF TERM NOTE**

$_____  New York, New York

_____ \_\_\_, 2007

      FOR VALUE RECEIVED, the undersigned, **Titan Apparel, Inc.**, a _____ corporation ("*Borrower*"), hereby unconditionally promises to pay to the order of Greystone Business Credit II, L.L.C. ("*Lender*"), a Delaware limited liability company having an address at 152 West 57th Street, 60th Floor, New York, New York 10019, or at such other place as the holder of this Term Note ("*Term Note*") may from time to time designate in writing, in lawful money of the United States of America and in immediately available funds, the principal sum of _____ \_\_\_/100 Dollars ($_____). Reference is hereby made to the Loan and Security Agreement between Borrower and Lender of even date herewith (the "*Loan Agreement*") for a statement of the terms and conditions under which the loan evidenced hereby was made and is to be repaid. This Term Note evidences a Term Loan Advance described in the Loan Agreement. Capitalized terms used herein which are not otherwise specifically defined herein shall have the meanings ascribed to such terms in the Loan Agreement.

      The outstanding principal balance of this Term Note shall be payable in full on the Maturity Date. Prior thereto, the Term Note shall be repayable as set forth in the Loan Agreement.

      Borrower further promises to pay interest on the outstanding principal amount hereof from the date hereof until payment in full hereof at the per annum rate as set forth in the Loan Agreement. Following the occurrence and during the continuance of an Event of Default the entire outstanding principal balance of this Term Note shall, at Lender's option, bear interest until paid in full at a per annum rate equal to the interest rate applicable to the Term Loan from time to time in effect plus three percent (3.00%). Until maturity, interest on the outstanding principal amount hereof shall be payable in arrears on the first day of each month, commencing January 1, 2008 and on the Maturity Date. After maturity, whether by acceleration or otherwise, accrued interest shall be payable on demand. Interest as aforesaid shall be charged for the actual number of days elapsed over a year consisting of three hundred sixty (360) days on the actual daily outstanding balance hereof. Changes in the interest rate provided for herein which are due to changes in the Prime Rate shall be effective on the date of the change in the Prime Rate.

      Notwithstanding anything to the contrary contained herein, the aggregate of all interest hereunder and charged or collected by Lender is not intended to exceed the highest rate permissible under any applicable law, but if it should, such interest shall automatically be reduced to the extent necessary to comply with applicable law and Lender will refund to Borrower any such excess interest received by Lender.

      Subject to Section 7.2 of the Loan Agreement, Borrower may, prepay the outstanding principal balance hereof in whole or in part. Any partial prepayment of the Term Loan shall be applied to the unpaid installments of the Term Loan in the inverse order of their maturities.

      Upon and after the occurrence of an Event of Default, this Term Note may, at the option of Lender, and without demand, notice or legal process of any kind, be declared, and immediately shall become, due and payable.

      Payments received by Lender from Borrower on this Term Note shall be applied to the Obligations as provided in the Loan Agreement.

      Presentment, demand, protest and notice of presentment, demand, nonpayment and protest are hereby

waived by Borrower.

THIS TERM NOTE SHALL BE INTERPRETED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES HERETO DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK. If any provision of this Term Note or the application thereof shall be held to be void or unenforceable by any court of competent jurisdiction, such defect shall not affect the remainder of this Term Note, which shall continue in full force and effect. Whenever in this Term Note reference is made to Lender or Borrower, such reference shall be deemed to include, as applicable, a reference to their respective successors and assigns. The provisions of this Term Note shall be binding upon Borrower and its successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

<b>TITAN APPAREL, INC.</b>

By _____
Its _____