UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DIESEL PROPS S.R.L. and
DIESEL KID S.R.L.,                                    Civil Action No. 07 CV 9580 (HB)

              Plaintiffs/Counter-Defendants,          **<u>NOTICE OF APPEAL</u>**

              v.

GREYSTONE BUSINESS CREDIT II LLC
and GLOBAL BRAND MARKETING INC.,

              Defendants/Counter-Plaintiffs,



              v.

DIESEL S.p.A.,

              Third-Party Defendant.

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. § 1192(a)(1),

Defendant/Counter-Plaintiff Global Brand Marketing Inc. hereby appeals to the United States

Court of Appeals for the Second Circuit from: (1) the Order of the United States District Court,

Southern District of New York (Baer, Jr., U.S.D.J.), dated and entered on February 29, 2008,

which granted the motion of the Plaintiffs Diesel Props S.R.L. and Diesel Kid S.R.L. for a

preliminary injunction, and from each and every part of the Order; and, (2) the Opinion and

Order of the same court (Baer, Jr., U.S.D.J.), dated March 5, 2008, which granted the motion of

the Plaintiffs Diesel Props S.R.L. and Diesel Kid S.R.L. for a preliminary injunction, and from

each and every part of the Opinion and Order.  A copy of both the Order and the Opinion and

Order are annexed hereto.

Dated: New York, New York
March 17, 2008

LEADER & BERKON LLP

BY: _____
GLEN SILVERSTEIN (GS 9174)
MICHAEL J. TIFFANY (MT 9367)
630 Third Avenue
New York, New York 10017
(212) 486-2400
*Attorneys for Global Brand Marketing Inc.*

# EXHIBIT 1

Case 1:07-cv-09580-HB   Document 76   Filed 02/29/2008   Page 4 of 13
Case 1:07-cv-09580-HB   Document 84   Filed 03/12/2008   Page 3 of 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

DIESEL PROPS S.R.L. and
DIESEL KID S.R.L.,

            Plaintiffs/Counter-Defendants,

        -against-

GREYSTONE BUSINESS CREDIT II LLC
and GLOBAL BRAND MARKETING INC.,

        Defendants/Counter-Plaintiffs

        -against-

DIESEL S.p.A.

        Third-Party Defendant.
---------------------------------------------------------------x

Civil Action No. 07CV9580 (HB)

[PROPOSED]
ORDER FOR
PRELIMINARY INJUNCTION

Upon the Amended Complaint filed herein, the Declaration of Luigi Mezzasoma dated October 26, 2007, the Declaration of Germano Ferraro dated October 26, 2007, the Declaration of Rosanna Sartori dated October 26, 2007, the Declaration of Stephen Birkhold, dated February 8, 2008, the Declaration of Anthony Strippoli, dated February 8, 2008, the Declaration of Ira Sacks, dated February 10, 2008, the Declaration of Carlo Pascotto, dated February 11, 2008, the Declaration of Sudeepto Killick, dated February 11, 2008, the Declaration of Jaime Laguette-Stevens, dated February 11, 2008, the Declaration of Scott Home, dated February 11, 2008, the Supplemental Declaration of Ira Sacks, dated February 22, 2008, the Declaration of Daniel Shapiro, the Declaration of David Chizewer, the exhibits to all such declarations, the Verification of Guy Smith, the memoranda of law, dated October 26, 2007, and February 22, 2008, all the letters submitted by the parties and the exhibits to such letters and

pursuant to Fed. R. Evid. 201 and Document 76 and Filed 03/12/2008 Page 4 of 13 it is

hereby

FOUND that Plaintiffs are likely to succeed on the merits (or at the very least there are sufficiently serious questions going to the merits as to make it a fair ground for litigation) on their claim for conversion against Defendants Global Brand Marketing, Inc. ("GBMI") and Greystone Business Credit II, LLC ("Greystone") of inventory of 101,000 pairs of branded Diesel footwear (the "Old GBMI Product"), and Plaintiffs' proposed claims for fraud and breach of contract against Greystone; and it is further

FOUND that Plaintiffs will be irreparably harmed in the absence of a preliminary injunction enjoining Defendants and those in active concert or participation with them from transferring, selling, distributing or otherwise disposing of the Old GBMI Product; and it is further

FOUND that the balance of the hardships tips in Plaintiffs favor; and therefore it is hereby

ORDERED that pursuant to Federal Rule of Civil Procedure ("FRCP") 65, ~~and pending the resolution of the merits of this action,~~ Defendants Global Brand Marketing, Inc. ("GBMI") and Greystone Business Credit II, LLC ("Greystone"), and their officers, members, agents, servants, employees and attorneys and those in active concert or participation with them who receive actual notice of this order, including but not limited to Titan Apparel, Inc., are preliminarily enjoined from transferring, selling, distributing or otherwise disposing of the Old GBMI Product; ~~and it is further~~, pending further order of this Court; and it is further

2

Case 1:07-cv-09580-HB    Document 76    Filed 02/29/2008    Page 3 of 3

Case 1:07-cv-09580-HB  the Document Bond prene03/03/2008  Plaintiff is sufficient

security for the payment of costs and damages as may be incurred by any party wrongly enjoined

or restrained hereby.

Dated: March ___, 2008

_____

Hon. Harold Baer, Jr., U.S.D.J.

3

# EXHIBIT 2

Case 1:07-cv-09580-HB     Document 84     Filed 03/12/2008     Page 6 of 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

DIESEL PROPS S.R.L. and DIESEL KID S.R.L.,

       Plaintiffs / Counter-Defendants,

       - against -

GREYSTONE BUSINESS CREDIT II LLC and
GLOBAL BRAND MARKETING INC.,

       Defendants / Counter-Plaintiffs,

       -against-

DIESEL S.p.A.,

       Third-Party Defendant.

------------------------------------------------------------x

**07 Civ. 9580 (HB)**

**OPINION &
ORDER**

Hon. HAROLD BAER, JR., District Judge:

      On February 8, 2008, Plaintiffs Diesel Props S.r.l ("Props") and Diesel Kid S.r.l. ("Kid" and, together with Props, "Plaintiffs"), moved this Court, by order to show cause, for a temporary restraining order and preliminary injunction, enjoining Defendants Greystone Business Credit II LLC ("Greystone") and Global Brand Marketing Inc. ("GBMI" and, together with Greystone, "Defendants"), and all others in active concert or participation with them, including, but not limited to, Titan Apparel, Inc. ("Titan"), from transferring, selling, distributing or otherwise disposing of approximately 101,000 pairs of Diesel-branded shoes. On February 11, 2008, this Court imposed the Temporary Restraining Order and, on February 29, 2008, after hearing the parties' oral arguments, this Court issued an Order that granted the preliminary injunction pending this Court's further opinion. For the reasons set forth below, the Plaintiffs' motion for a preliminary injunction is hereby GRANTED.

## I. BACKGROUND

      Plaintiffs Props and Kid are corporations organized under Italian law with registered offices in Italy. Pl.s' Mot. for Temp. Restraining Order & Prelim. Injunction (Oct. 26, 2007) ("Oct. 26, 2007 Mot.") Ex. D at 4. Their parent company, Diesel S.p.A. ("SpA"), is the owner of

numerous Diesel trademarks, which have been licensed to Props and Kid for the manufacturing and sale worldwide of Diesel-branded footwear. Pls.' Mem. of Law in Support of Mot. for Prelim. Injunction (Feb. 22, 2008) ("Pls.' Mem.") 3. On November 4, 2005, both Props and Kid entered into distribution agreements with Defendant GBMI (the "Distribution Agreements"), pursuant to which GBMI would distribute Diesel-branded shoes to retailers. Oct. 26, 2007 Mot. Ex. B.

The choice of law clauses in the Distribution Agreements expressly provided that the Agreements "shall be governed by and construed in accordance with Italian law." *Id.* ¶ 21.1. Paragraph 5.4 of the Distribution Agreements provided that "the ownership of the Products [Diesel-branded shoes] will be transferred to the Distributor [GBMI] *only* when total payment of the same is collected by the Company [Props or Kid]," even if this took place after delivery of the shoes to GBMI. *Id.* ¶ 5.4 (emphasis added). Paragraph 12.3 of the Distribution Agreements, as amended by the parties effective October 27, 2006, provided that upon the Agreement's termination by either party, GBMI must sell Diesel-branded product back to Props or Kid, at their request, "at the original cost price that the Distributor [GBMI] paid for such Product to the Company [Props or Kid]." *Id.* ¶ 12.3.

On December 4, 2006, Defendant GBMI entered into a loan and security agreement with Defendant Greystone (the "Loan Agreement"), which granted Greystone a security interest in, *inter alia*, all inventory of GBMI. Oct. 26, 2007 Mot. Ex. C. To perfect that security interest, Greystone filed a UCC financing statement in California, where GBMI was located. Greystone obtained from SpA and Kid, but not Props, letters in which they consented to GBMI's entry into the Loan Agreement and agreed not to interfere with Greystone's security interest. Oct. 26, 2007 Mot. Ex. D.

On December 4, 2006, GBMI and Greystone also entered into agreements with Props and Kid (the "Tripartite Agreements") under which Props and Kid would ship shoes to GBMI but invoice Greystone, which, as GBMI's lender, would then pay Props or Kid. Oct. 26, 2007 Mot. Ex. F. The Tripartite Agreements, which refer to the Distribution Agreements, state that they are "not in any way intended to limit any of" the obligations of GBMI to Plaintiffs.

Greystone failed to pay Plaintiffs under the Tripartite Agreements. When Greystone failed to cure and GBMI failed to pay Plaintiffs for the Diesel shoes delivered to it, Plaintiffs notified GBMI that the Distribution Agreements were terminated effective October 4, 2007. Oct.

Case 1:07-cv-09580-HB-RLE    Document 85    Filed 03/17/2008    Page 10 of 16
Case 1:07-cv-09580-HB    Document 84    Filed 03/12/2008    Page 8 of 13
Case 1:07-cv-09580-HB    Document 82    Filed 03/03/2008    Page 8 of 13

26, 2007 Mot. Ex. L. In letters dated October 17, 2007, Plaintiffs demanded that GBMI return to them all Diesel shoes remaining in their warehouse, but GBMI kept the shoes—101,000 pairs—and they are now the subject of the instant preliminary injunction. Complicating matters, when GBMI defaulted under the Loan Agreement, Greystone treated the shoes as collateral and sold them to Titan, financing the sale itself, on December 14, 2007. Supp. Decl. of Ira S. Sacks (Feb. 22, 2008) ("Sacks Decl.") ¶ 20, Exs. H, I. Titan now intends to sell the shoes to yet another buyer. Greystone's Resp. to Pl.s' Mot. Prelim. Injunction 8.

## II. LEGAL STANDARD

"To secure a preliminary injunction in district court, the moving party must demonstrate (1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make it a fair ground for litigation, and a balance of hardships tipping decidedly in its favor." *MONY Group, Inc. v. Highfields Capital Mgmt, L.P.*, 368 F.3d 138, 143 (2d Cir. 2004) (quoting *Forest City Daly Hous., Inc. v. Town of North Hempstead*, 175 F.3d 144, 149 (2d Cir. 1999)).

## III. DISCUSSION

### A.    Irreparable Harm

Irreparable harm exists where, "but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chems. Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999). The shoes at issue here are the heart of Plaintiffs' lawsuit. Plaintiffs argue that if Defendants (or Titan) are not enjoined from selling the shoes, Plaintiffs' business, an allegedly high-end haberdasher, will be irreversibly damaged, Plaintiffs will lose goodwill because the market will be flooded with discounted, out-of-style Diesel shoes that are a season or two behind, and their injuries will not be adequately compensated by monetary damages.

Based on Greystone's counsel's representations to Plaintiffs' counsel in November 2007 that all the shoes soon would be sold to discount retailers as approved by Plaintiffs, Plaintiffs assured Plaintiffs' high-end retail customers that few, if any, shoes remained to be sold to the discount market. Pl.s' Mem. 12; Sacks Decl. ¶ 12; Decl. of Stephen G. Birkhold (Feb. 8, 2008) ¶ 5; Decl. of Anthony N. Strippoli (Feb. 8, 2008) ¶ 5. Plaintiffs argue that if the shoes are sold to

3

Case 1:07-cv-09580-HB    Document 84    Filed 03/12/2008    Page 9 of 13
Case 1:07-cv-09580-HB    Document 82    Filed 03/05/2008    Page 9 of 13

discount retailers, as they will be without an injunction, their high-end customers will cease doing business with them.

This Court finds that Plaintiffs have met the irreparable harm prong of the preliminary injunction standard. *See Tom Doherty Assocs. v. Saban Entmt., Inc.*, 60 F.3d 27, 37-39 (2d Cir. 1995) (loss of prospective goodwill constitutes irreparable harm); *Reuters Ltd. v. United Press Int'l, Inc.*, 903 F.2d 904, 908-09 (2d Cir. 1990) (overturning finding of no irreparable injury because wire service demonstrated that some customers would cease dealing with if injunction not granted). Here, any damage to Plaintiffs' reputation would be unquantifiable. *See Tom Doherty*, 60 F.3d at 38 ("This rule is necessary to avoid the unfairness of denying an injunction to a plaintiff on the ground that money damages are available, only to confront the plaintiff at a trial on the merits with the rule that damages must be based on more than speculation.").

The only case in this Circuit that Defendants rely on does not address irreparable harm. *H.L. Hayden Co. v. Siemens Med. Sys.*, 879 F.2d 1005, 1023 (2d Cir. 1989) (unauthorized sale of trademarked article does not, without more, constitute a Lanham Act violation).

**B.    Merits of the Case**

While this Court does not find, at this stage in the proceedings, that Plaintiffs have demonstrated a likelihood of success on the merits, Plaintiffs have shown sufficiently serious questions to make the case a fair ground for litigation. Plaintiffs have posited three distinct bases for success on their conversion claim. First, paragraph 5.4 of the Distribution Agreements, as given effect by Italian law, dictates that title to the shoes belongs to Plaintiffs, and not Defendants. Second, even should this Court disregard the Italian choice-of-law clause and apply the Uniform Commercial Code (the "UCC"), paragraph 5.4 of the Distribution Agreements remains enforceable as written and title did not pass to GBMI because Plaintiffs were not paid. Third, notwithstanding the governing law, paragraph 12.3 required GBMI to sell the shoes back to Plaintiffs at cost, *i.e.* no cost, when Plaintiffs so demanded upon terminating the Distribution Agreement, and since GBMI has not done so Plaintiffs have a superior right to the shoes. This Court finds sufficiently serious questions on all three points.

*Choice-of-Law Clause*

According to the undisputed declaration of Carlo Pascotto, an Italy-qualified attorney, dated February 11, 2008, provisions like the one in paragraph 5.4 of the Distribution Agreements that purport to vest title continuously in the seller until payment is received, even if after

4

Case 1:07-cv-09580-HB    Document 82    Filed 03/08/2008    Page 5 of 13

delivery, are enforceable as written.  Defendants claim, however, that this Court should disregard the choice of Italian law and apply the UCC, whose Section 2-401, they allege, would transform Plaintiffs' title into a reservation of a security interest, giving Greystone a superior right to the shoes.

Defendants rely primarily on *Hongkong & Shanghai Banking Corp, Ltd. v. HFH USA Corp.*, 805 F. Supp. 133 (W.D.N.Y. 1992) (hereinafter "*HSBC*").  The court found that if a German choice-of-law clause were given effect, the title retention provision in the applicable agreement would be operative and the supplier would have title to the goods.  *Id.* at 140.  The plaintiff, HSBC, like Greystone here, was a subsequent secured lender to one of the parties to the agreement but was not a party itself.  Notwithstanding the agreement, the court declined to apply German law "because the stipulation would work to the detriment of HSBC—a third party and *stranger to the agreement*." *Id.* at 140 (emphasis added).  Finding that New York's UCC controlled, the court held that HSBC, the secured lender, had a superior interest in the goods because "[a]ny retention or reservation by the seller of the title . . . is limited in effect to a reservation of a security interest" under UCC Section 2-401 and therefore title passed on delivery.  *Id.* at 141-42 (quoting UCC. § 2-401).

*HSBC*, however, is distinguishable from the case at bar because here, as evidenced by the Tripartite Agreements and correspondence between the parties, Greystone was not a stranger to the Distribution Agreements.  The policy consideration suggested by the Western District of New York—that secured creditors ought to be able to rely on their perfected security interests and UCC financing statements—is less strong here, where the secured lender had notice of and presumably, as a sophisticated business, understood the arrangement made by Props, Kid and GBMI.  Therefore, this Court is less inclined to disregard the foreign choice-of-law clause than was the *HSBC* court and finds that sufficiently serious questions exist as to whether that clause should be enforced.

### *Application of the UCC*

Plaintiffs argue in the alternative that the UCC does not require this Court to ignore the plain meaning of paragraph 5.4 of the Distribution Agreements, that the shoes' ownership transferred to GBMI upon payment to Props or Kid and not at delivery to GBMI.  The issue here is whether the UCC permitted Plaintiffs and GBMI to agree to an arrangement contrary to UCC Section 2-401, which provides that "[a]ny retention or reservation by the seller of the title

Case 1:07-cv-09580-HB    Document 82    Filed 03/08/2008    Page 6 of 13

(property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest." Defendants appear to have some viable arguments, based on UCC Sections 1-105(2) and 1-301(g), that the parties' freedom to vary the UCC's provisions is limited when certain provisions of UCC Article 9 on Secured Transactions specifies the applicable law. Nevertheless, this Court finds sufficiently persuasive the case relied upon by Plaintiffs, *Subaru Distributors Corp. v. Subaru of America, Inc.*, No. 98CV-5566, 2002 WL 188473 (S.D.N.Y. Feb. 5, 2002), to hold that the arguments merit further litigation. Specifically, in *Subaru*, the court held UCC

> § 2-401, like almost all of the UCC, is an 'unless otherwise agreed' provision. As long as the parties to a contract explicitly agree that title shall pass at some other time, it does. . . . [T]he parties are free to agree that title passes prior to or subsequent to delivery, and nothing in [*HSBC*] makes an agreement that title shall pass after delivery contrary to law. However, any such agreement must be explicit. Otherwise, the Code, by operation of law, transforms a retention or reservation by the seller of title in goods shipped or delivered to the buyer into a reservation of a security interest.

*Id.*, at *45.

The *Subaru* court distinguished between an original contract that explicitly provided "title shall pass" to the distributor when invoiced, on the one hand, and an amended contract that removed the "title shall pass" language and provided that title "shall remain" with the importer until the distributor was invoiced and the importer received payment, on the other hand. *Id.*, at *44-45. The court held that the amendment "fundamentally changed" the provision because "the language expressly identifying the moment that title passed was deleted, and was replaced with language that can only be interpreted as retention of title language," which resulted in a mere reservation of a security interest under UCC Section 2-401. *Id.*, at *45.

Here, however, paragraph 5.4 of the Distribution Agreements resembles the original contract in *Subaru* because it explicitly provided that ownership would be transferred to GBMI at a specifically identified time, *i.e.*, when Props or Kid received full payment. Therefore, Plaintiffs have shown sufficiently serious questions as to whether they have title to the shoes even should the Court apply the UCC to the Distribution Agreements. This Court need not reach Plaintiffs' third argument, concerning paragraph 12.3 of the Distribution Agreements, but notes that it finds sufficiently serious questions that merit litigation with respect to this line of reasoning, as well.

Case 1:07-cv-09580-HB    Document 82    Filed 03/03/2008    Page 7 of 13

C.    **Balance of Hardships**

Defendants argue that the balance of hardships tips in their favor because a preliminary injunction would prevent them from materializing a planned sale of the shoes for approximately $1.5 million. While this may be true, any damages suffered by Defendants, should they prevail in this litigation, are more likely to be quantifiable than any damages suffered by Plaintiffs. Plaintiffs, moreover, have posted a $1 million bond to cover any damages assessed against them. Therefore, this Court finds that the injuries suffered by Plaintiffs should the injunction not be imposed, as discussed above under irreparable harm, outweigh those suffered by Defendants.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction is GRANTED, and the trial on the permanent injunction and any related matters, including motions addressed to the amended pleading, will commence on May 1, 2008 at 9:30 a.m. in Courtroom 23B. You will together construct a schedule by which any such motions will be fully briefed with time to be decided all before the May 1 trial.


**IT IS SO ORDERED.**


**New York, New York**
**March _____, 2008**

                                        _____
                                                        **U.S.D.J.**

7

C.  **Balance of Hardships**

Defendants argue that the balance of hardships tips in their favor because a preliminary injunction would prevent them from materializing a planned sale of the shoes for approximately $1.5 million.  While this may be true, any damages suffered by Defendants, should they prevail in this litigation, are more likely to be quantifiable than any damages suffered by Plaintiffs. Plaintiffs, moreover, have posted a $1 million bond to cover any damages assessed against them. Therefore, this Court finds that the injuries suffered by Plaintiffs should the injunction not be imposed, as discussed above under irreparable harm, outweigh those suffered by Defendants.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction is GRANTED, and the trial on the permanent injunction and any related matters, including motions addressed to the amended pleading, will commence on May 1, 2008 at 9:30 a.m. in Courtroom 23B.  You will together construct a schedule by which any such motions will be fully briefed with time to be decided all before the May 1 trial.


IT IS SO ORDERED.


New York, New York
March ____, 2008

U.S.D.J.

7

## AFFIDAVIT OF SERVICE

STATE OF NEW YORK      )
                                       : ss.:
COUNTY OF NEW YORK  )

         **PATRICE SARACCO,** being duly sworn, deposes and says: deponent is not a party to the action, is over 18 years of age, and resides in New York, New York, that on the 17th day of March 2008, deponent served by **GLOBAL BRAND MARKETING INC.'S NOTICE OF APPEAL** upon the following:

        Mark S. Lafayette
        DREIER, LLP
        499 Park Avenue
        New York, NY 10022

        Stephen H. Locher
        Goldenberg, Kohn, Bell, Black,
        Rosenbloom & Moritz, LLP
        55 East Monroe, Suite 330
        Chicago, IL 60603

        Mark N. Parry
        Moses & Singer
        405 Lexington Avenue
        New York, NY 10174

by depositing a true copy of same enclosed in a postpaid properly addressed wrapper in an official depository under the exclusive care and custody of the United States Post Office Department within the State of New York.

*Patrice Saracco*
           **PATRICE SARACCO**

Sworn to before me this
17th day of March 2008

Notary Public

KWASI LEIBEL
Notary Public, State of New York
No. 01LE6176758
Qualified in New York County
Commission Expires Nov. 5, 20__