UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
DIESEL PROPS S.R.L. and
DIESEL KID S.R.L.,

                  Plaintiffs/Counter-Defendants,

       -against-                               Civil Action No. 07 CV 9580 (HB)

GREYSTONE BUSINESS CREDIT II LLC
and GLOBAL BRAND MARKETING INC.,

                  Defendants/Counter-Plaintiffs,

       -against-

DIESEL S.p.A.,

                  Third-Party Defendant.
-----------------------------------------------------------------x

# REPLY MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO DISMISS COUNTERCLAIMS OF GREYSTONE BUSINESS CREDIT II, LLC

Ira S. Sacks
Mark S. Lafayette
DREIER LLP
499 Park Avenue
New York, New York 10022
(212) 328-6100
(212) 328-6101 (fax)
*Counsel for Plaintiffs*

**TABLE OF CONTENTS**

Plaintiffs' Reply Memorandum of Law In Further Support Of Their Motion To Dismiss The Counterclaims Asserted By Defendant Greystone Business Credit II, L.L.C............................ 1

I.   The Italian Forum Selection Clause Contained In The Distribution Agreement Is Valid And Enforceable Against Greystone ................................................................................. 2

    a.   The Forum Selection Clause Is Valid And Enforceable ............................................... 2

    b.   Greystone Had Actual Knowledge Of The Forum Selection Clause And Is Also Bound To It According To The Allegations In Its Counterclaims ........................................... 4

    c.   All Claims Arising Out Of Or Connected With The Distribution and Sourcing Agreements Must Be Litigated In Italy ......................................................................... 6

    d.   Diesel Has Not Waived Any Rights Under The Forum Selection Clause .................... 7

    e.   The TPA Did Not Amend The Forum Selection Clause In The Distribution Agreements ...................................................................................................................... 9

II.  Greystone Does Not Have Standing to Assert Claims on Behalf of GBMI..................... 10

III. The Counterclaims Fail To Allege Veil Piercing................................................................ 12

IV.  Greystone's Claims Must Be Capped................................................................................. 14

Conclusion.................................................................................................................................... 14

# TABLE OF AUTHORITIES

**FEDERAL CASES**                                                                                                                                           **PAGE**

*Capital National Bank of New York v. McDonald's Corp.*,
    625 F. Supp. 874 (S.D.N.Y. 1986) ............................................................................... 10, 11

*Community Bank v. Newark & Lewis, Inc.*,
    534 F. Supp. 456 (E.D.N.Y. 1982) ..................................................................................... 12

*Coregis Insurance Co. v. Amer. Health Foundation, Inc.*,
    241 F.3d 124 (2d Cir. 2001) ................................................................................................... 6

*Decca Records, Inc. v. The Republic Recording Co., Inc.*,
    235 F.2d 360 (6th Cir. 1956) ................................................................................................ 10

*GMAC Commercial Credit, LLC v. Dillard Stores, Inc.*,
    98 F.R.D. 402 (S.D.N.Y. 2001) ............................................................................................. 6

*GMAC Committee Mortgage Corp. v. LaSalle Bank National Associate*,
    242 F. Supp. 279 (S.D.N.Y. 2002) ........................................................................................ 9

*Graham Tech. Solutions, Inc. v. Thinking Pictures, Inc.*,
    949 F. Supp. 1427 (N.D.Cal. 1997) ....................................................................................... 4

*Hugel v. Corporation of Lloyd's*,
    999 F.2d 206, 209 (7th Cir. 1993) ......................................................................................... 4

*Intern'l Private Satellite Partners, L.P. v. Lucky Cat Limited*,
    975 F. Supp. 483 (W.D.N.Y. 1997) ....................................................................................... 4

*In re Mid-West Metal Products, Inc.*,
    13 B.R. 562 (Bankr. Kan. 1981) .......................................................................................... 13

*Klotz v. Xerox Corp, et al.*,
    519 F. Supp. 2d 430 (S.D.N.Y. 2007) ................................................................................... 2

*Licensed Practical Nurses, Technicians and Healthcare Workers of New York, Inc. v. Ulysses Cruises, Inc.*,
    131 F. Supp. 2d 393 (S.D.N.Y. 2000) ................................................................................... 8

*Manetti-Farrow, Inc.*, *v. Gucci Amer.*,
    858 F.2d 509 (9th Cir. 1988) ............................................................................................. 4, 7

*Mylan Pharm. Inc. v. Amer. Safety Razor Co.*,
    265 F. Supp. 2d 635 (N.D.W.Va. 2002) ............................................................................. 3

*Nippon Fire & Marine Insurance Co. v. M/V Spring Wave*,
    92 F. Supp. 2d 574 (E.D. La. 2000) .................................................................................... 3

*NY Metropolitan Radio Korea, Inc. v. Korea Radio USA, Inc.*,
    No. CV-07-4123, 2008 WL 189871 (E.D.N.Y. Jan. 18, 2008) ......................................... 2

*Phillips v. Audio Active Ltd.*,
    494 F.3d 378 (2d Cir. 2007) ........................................................................................... 2, 3

*Sealord Marine Co., Ltd. v. Amer. Bureau of Shipping*,
    220 F. Supp. 2d 260 (S.D.N.Y. 2002) ................................................................................ 5

*Taylor Investment Corp. v. Weil*,
    169 F. Supp. 2d 1046 (D. Minn. 2001) ............................................................................... 3

*TMC Co., Ltd. v. M/V Mosel Bridge*,
    No. 01 CIV.9860 LAK, 2002 WL 1880722 (S.D.N.Y. Aug. 15, 2002) .......................... 9, 10

**STATE CASES**

*Atlas Die Casting, Inc. v. Lendino*,
    49 A.D.2d 917, 374 N.Y.S.2d 35 (2d Dep't 1975) ........................................................... 13

*Hugo Boss Fashions, Inc. v. Sam's European Tailoring, Inc.*,
    293 A.D.2d 296, 742 N.Y.S.2d 1 (1st Dep't 2002) ............................................................. 5

*L-3 Committee Corp. v. Channel Tech., Inc.*,
    291 A.D.2d 276, 737 N.Y.S.2d 366 (1st Dep't 2002) ......................................................... 4

*Lifeco Serv. Corp. v. Robison*,
    222 Cal. App. 3d 331 (Ct. App. 1990) ........................................................................... 7, 8

*M. Paladino, Inc. v. J. Lucchese & Son Contracting Corp.*,
    247 A.D.2d 515, 669 N.Y.S.2d 318 (2d Dep't 1998) ....................................................... 13

*O'Hara & Shauer, Inc. v. Empire Bituminous Products, Inc.*,
    323 N.Y.S.2d 190 (NY Co. Ct. 1971) .............................................................................. 12

*Polymer Trading, S.A.R.L. v. CIC-Union Europeenne et Cie*,
    225 A.D.2d 482, 640 N.Y.S.2d 32 (1st Dep't 1996) ......................................................... 13

*Smith, Valentino & Smith, Inc. v. Life Ass. Co. of Penn.*,
  17 Cal. 3d 491, 551 P.2d 1206 (1976) ................................................................................ 8

*Vogel v. Lyman*,
  246 A.D.2d 422, 668 N.Y.S.2d 162 (1st Dep't 1998) ............................................................ 13

**STATUTES**

UCC § 9-102 ............................................................................................................................. 10, 11

UCC § 9-106 ............................................................................................................................. 10

UCC § 9-404 ............................................................................................................................. 5, 14

UCC. § 9-607 ............................................................................................................................. 11, 12

**Plaintiffs' Reply Memorandum of Law In Further Support Of Their Motion To Dismiss
The Counterclaims Asserted By Defendant Greystone Business Credit II, L.L.C.**

Plaintiffs Diesel Props S.r.l. ("Props") and Diesel Kid S.r.l. ("Kid") (together "Diesel" or "Plaintiffs") respectfully submit this Reply Memorandum of Law in further support of their motion to dismiss the counterclaims asserted by Defendant Greystone Business Credit II, L.L.C. ("Greystone") (the "Motion to Dismiss").

In its opposition to Plaintiffs' Motion to Dismiss, Greystone paints a distorted picture of the facts and controlling law. While on a motion to dismiss the court must accept the well-pleaded allegations in the complaint as true, the court must not accept allegations as true when they are **directly contradicted** by documentary evidence referenced in the complaint. Here, Greystone cannot rely on its pleadings where they are directly contradicted by documentary evidence that (i) Greystone had direct knowledge of the forum selection clauses contained in the parties' agreements; (ii) Greystone has no standing to assert claims on behalf of Global Brand Marketing Inc. ("GBMI"); and (iii) Greystone had knowledge of the offset provision contained in the parties' agreements. Further, Greystone itself asserts that it is an assignee of GBMI's agreements. As such, Greystone is subject to such agreements' forum selection clauses and other provisions. As further demonstrated below and in the reply memorandum of law in support of Plaintiffs' motion to dismiss GBMI's counterclaims,[1] which is incorporated by reference herein, Greystone's counterclaims must be dismissed.

---

[1] GBMI has filed counterclaims almost identical to Greystone's. Plaintiffs also incorporate by reference the arguments set forth in Third Party Defendant Diesel S.p.A.'s ("SpA") Reply Memorandum in support of its motion to dismiss the Third Party Complaints (the "SpA Reply Brief"). The facts related to the Motion to Dismiss have been previously set forth and are referenced forth the Court's convenience in the accompanying Declaration of Ira S. Sacks, dated March 25, 2008, and will not be repeated herein.

I.   **The Italian Forum Selection Clause Contained In The Distribution Agreement Is Valid And Enforceable Against Greystone**

The forum selection clause contained in the Distribution Agreements is valid and enforceable against Greystone. The forum selection clause must be enforced because (1) principles of judicial economy will be served by bringing all of the claims arising under or connected with the Distribution Agreements in Italy; (2) Greystone had actual knowledge of the clause and pleads that it is the assignee of the Distribution Agreements; (3) all claims asserted by Greystone in this action arise under or are connected with the Distribution Agreements or arise under or are associated with the Sourcing Agreement; (4) Plaintiffs have not waived any rights under the forum selection clause; and (5) the forum selection clause was never amended.

    a.  **The Forum Selection Clause Is Valid And Enforceable**

The forum selection clause contained in the Distribution Agreements is presumptively enforceable because "the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007); *see Klotz v. Xerox Corp, et al.,* 519 F. Supp. 2d 430, 434 (S.D.N.Y. 2007); *NY Metro Radio Korea, Inc. v. Korea Radio USA, Inc.*, No. CV-07-4123, 2008 WL 189871, at *3-4 (E.D.N.Y. Jan. 18, 2008). Here, the forum selection clauses are contained in written agreements which were executed by GBMI and which were known and relied upon by Greystone.[2] The use of the phrases "exclusive competent jurisdiction" and "exclusive

---

[2] The same is true with respect to the forum selection clause in the Sourcing Agreement. Indeed, Greystone admits and has alleged that the Distribution and Sourcing Agreements "are valid and enforceable." *See* Greystone Answer to Amended Complaint, dated January 9, 2008, ¶¶ 167, 179.

2

jurisdiction" establishes that Italy "is the obligatory venue for proceeding within the scope of the clause." *Phillips*, 494 F.3d at 386.

The cases cited by Greystone in support of its argument that this Court should disregard these mandatory forum selection clauses are readily distinguishable. In each of the cases cited by Greystone, the courts determined that judicial economy would not be served by removing claims to an alternative forum.[3] The concerns faced by those courts are not present here. All claims that arise out of or are connected with the Distribution Agreement would be resolved in Italy, conserving the judicial resources of this Court. As such, there is no reason to disregard the mandatory forum selection clause.

---

[3] In *Nippon Fire & Marine Ins. Co. v. M/V Spring Wave*, 92 F. Supp. 2d 574 (E.D. La. 2000) – relied upon by Greystone – the court noted that "generally, a foreign forum selection clause…will be upheld as valid." *Id.* at 575. The court declined to enforce the forum selection clause at issue primarily because the application of Japanese law would violate a strong public policy of the United States. *Id.* In dicta, the court indicated that an additional reason for its decision to disregard the forum selection clause was that one of the parties to the case would remain in front of the U. S. court, and litigate the same facts and legal theories as the parties in Japan. Here, (i) resolution of claims in Italy would not violate any United States public policy and (ii) no party would remain in front of the U.S. court to litigate the same claims as those being litigated in Italy. In fact, Plaintiffs specifically refrained from bringing claims arising under or connected with the Distribution Agreements in this action. Therefore, all claims involving the Distribution Agreements would be resolved **together** in Italy.

*Mylan Pharm. Inc. v. Amer. Safety Razor Co.*, 265 F. Supp. 2d 635 (N.D.W.Va. 2002) is inapposite. In *Mylan*, the court, citing judicial inefficiency, declined to enforce a forum selection clause when the defendant moved to have only one cross-claim dismissed, when other defendants' cross-claims would continue to exist. *Id.* at 639-40. Here, Plaintiffs have moved to dismiss all of the counterclaims, and as noted above, all of the claims arising under or connected with the Distribution Agreement would be litigated together in Italy.

Finally, *Taylor Investment Corp. v. Weil*, 169 F. Supp. 2d 1046 (D. Minn. 2001), also cited by Greystone, is similarly distinguishable. As an initial matter, the court in *Taylor Investment* noted that "[f]orum selection clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable or unjust." *Id*. at 1060-61. The court declined to enforce the forum selection clause there by dismissing cross-claims asserted against the moving party because all of the disputes concerning one contract between the parties were already in front of the District Court of Minnesota. As noted above, all of the claims arising under the Distribution Agreement are not in front of this Court. In addition, the court in found that dismissal of the resisting party's cross-claims would be unreasonable and unjust because such dismissal could lead to preclusion of the resisting party's claims or in the potential for conflicting judgments. These concerns are not presented here.

3

### b. Greystone Had Actual Knowledge Of The Forum Selection Clause And Is Also Bound To It According To The Allegations In Its Counterclaims

Greystone had actual knowledge of the forum selection clause contained in the Distribution Agreements, and is also bound to it by the very allegations of its counterclaims. As demonstrated in Plaintiffs' moving papers, each of the documents requested by Greystone from Diesel or SpA in connection with the Loan Agreement **expressly** was conditioned on the continuing force and effect of the Distribution Agreements. *See* Exs. E, F.[4] Greystone cannot avoid the forum selection clauses when it clearly knew that the Distribution Agreements were still in effect, and Plaintiffs' entry into the business relationship with Greystone was explicitly conditioned upon the continuing forcefulness of the Distribution Agreements.

It is well-established that "a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." *See Intern'l Private Satellite Partners, L.P. v. Lucky Cat Limited*, 975 F.Supp. 483, 486 (W.D.N.Y. 1997) (quoting *Graham Tech. Solutions, Inc. v. Thinking Pictures, Inc.*, 949 F.Supp. 1427, 1434 (N.D.Cal. 1997)). A non-party to "a contract containing a forum selection clause may therefore be bound by the clause if the entity is 'closely related' to the dispute such that it becomes 'foreseeable' that it will be bound." *Id*. (quoting *Hugel v. Corporation of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)); *see Manetti-Farrow, Inc. v. Gucci Amer.*, 858 F.2d 509, 514 (9th Cir. 1988).[5] Greystone's

---

[4] Reference herein to "Ex. __" refer to the Exhibit Binder filed under seal by Props and Kid in support of their Motion for a Temporary Restraining Order and Preliminary Injunction on October 26, 2007.

[5] The cases cited by Greystone in support of its position that, as a third party, it cannot be bound by the forum selection clause, do not stand for that proposition. In *L-3 Comm. Corp. v. Channel Tech., Inc.*, 291 A.D.2d 276, 737 N.Y.S.2d 366 (1st Dep't 2002), the court noted that there was no factual predicate to find that the third party could have been foreseeably bound by and implicitly included within the agreement's forum selection clause. Here, as demonstrated above, there **is** such a factual predicate for Greystone to be bound by the forum selection clause.

interactions with Diesel and SpA prior to execution of the Loan Agreement and Diesel's express reliance on the continuing force of the Distribution Agreements is such that it was foreseeable that Greystone would be bound by the forum selection clause. Therefore, the clause must be enforced.

In addition, Greystone's Third, Fourth, Sixth, Seventh and Eighth counterclaims are asserted by Greystone as the alleged assignee of GBMI. In that capacity, Greystone is suing to enforce GBMI's claims for alleged breach of the Distribution Agreement and the Sourcing Agreement, and tort claims related to such alleged breaches. Under New York Law, "an assignee cannot sue to enforce its rights under the contract without also assuming the other terms of the contract, including the forum selection clause." *See GMAC Commercial Credit, LLC v. Dillard Stores, Inc.*, 98 F.R.D. 402, 407 (S.D.N.Y. 2001). In addition, Uniform Commercial Code § 9-404 is clear that an assignee to a contract takes subject to the terms, claims and defenses to such contract. The forum selection clauses are terms of the Sourcing and Distribution Agreements; as assignee, Greystone is subject to those clauses.[6] Therefore, the forum selection clause is binding on Greystone.

---

Similarly distinguishable is *Sealord Marine Co., Ltd. v. Amer. Bureau of Shipping*, 220 F. Supp. 2d 260 (S.D.N.Y. 2002), which involved a non-party trying to enforce a forum selection clause. The Court, although finding that the relationship between the signatory with the non-party was not sufficiently close to invoke the forum selection clause, noted that such relationship would exist if the non-party was a successor entity to the signatory. Here, GBMI is a party to the contracts that contain the forum selection clauses and Greystone alleges that it is an assignee of the contracts, had a close relationship with GBMI and had full knowledge and involvement with the Distribution Agreements.

Finally, *Hugo Boss Fashions, Inc. v. Sam's European Tailoring, Inc*., 293 A.D.2d 296, 742 N.Y.S.2d 1 (1st Dep't 2002) is inapplicable here. The issue in *Hugo Boss* was whether an alleged oral contract included a forum selection clause contained in plaintiff's unilateral confirmatory invoice. In that event, the Court found that the confirmatory invoice altered the parties' oral agreement and refused to enforce the forum selection clause. Here, there is no question that the forum selection clause was contained in the written Distribution Agreements and Sourcing Agreement.

[6] UCC § 9-404 provides, in relevant part:
    (a) Assignee's rights subject to terms, claims, and defenses; exceptions. Unless an

5

### c. All Claims Arising Out Of Or Connected With The Distribution and Sourcing Agreements Must Be Litigated In Italy

All claims arising out of or connected with the Distribution and Sourcing Agreements must be litigated in Italy. The forum selection clause contained in the Distribution Agreements specifically encompasses "any dispute between the Parties and **arising out of or connected with** this Agreement." *See* Ex. B, ¶21.1. The forum selection clause contained in the Sourcing Agreement specifically encompasses "[a]ny Dispute that **may arise or should be associated with** this Agreement." *See* Declaration of Ira S. Sacks, dated January 22, 2008, Ex. C, ¶ 24. In its opposition, Greystone hides from the fact that the forum selection clauses contained in these agreements encompass not only disputes **arising out of** the agreements, **but also** any disputes **"connected with" (or "associated with")** those agreements. *See* Ex. B, ¶ 21.2. Rather than address this fact, Greystone simply states that "only two of Greystone's Counterclaims…even arise out of the Distribution Agreements and Sourcing Agreement." Greystone Brief, p. 4-5 (emphasis added). However, **all** of Greystone's counterclaims are "**connected with**" the Distribution Agreements or "**associated with**" the Sourcing Agreement, a showing Greystone never denies.

As the Second Circuit has explained, the scope of the phrase "related to" is broader than "arising under." *See Coregis Ins. Co. v. Amer. Health Found., Inc.*, 241 F.3d 124, 128-29 (2d Cir. 2001) ("the term 'related to'…is broader than the term "arising out of", and "in relation to" or "related to" is "equivalent to the phrase 'in connection with' and 'associated with'"").

---

account debtor has made an enforceable agreement not to assert defenses or claims, and subject to subsections (b) through (e), the rights of an assignee are subject to: (1) all terms of the agreement between the account debtor and assignor and any defense or claim in recoupment arising from the transaction that gave rise to the contract; and (2) any other defense or claim of the account debtor against the assignor which accrues before the account debtor receives a notification of the assignment authenticated by the assignor or the assignee.

Therefore, not only are the claims for breach of the Distribution Agreement or Sourcing Agreement subject to exclusive jurisdiction in Milan, Italy, but also any disputes which are **connected with** the Distribution Agreement **or associated with** the Sourcing Agreement must be litigated in Milan, Italy. *See Manetti-Farrow, Inc.*, 858 F.2d at 514-15 (where a forum selection clause provided that Florence, Italy would be the sole jurisdiction for interpretation or fulfillment of the contract, tort claims that required interpretation of the contract also were subject to the forum selection clause). **All** of Greystone's counterclaims are connected with the Distribution Agreements or associated with the Sourcing Agreement, and must be brought in Italy.

### d.  Diesel Has Not Waived Any Rights Under The Forum Selection Clause

Plaintiffs have not waived any of their rights under the forum selection clause.[7]  Plaintiffs intentionally did not bring claims in this Court that they had under the Distribution Agreements or under the prior license agreements, knowing full well that the Distribution Agreements and License Agreements contained forum selection clauses.  Plaintiffs invoked the jurisdiction of this Court to resolve (i) disputes arising under other agreements without foreign forum selection clauses and (ii) certain limited issues relating to conversion in an emergency situation.  That does not result in waiver of the forum selection clause.

A California court faced a similar issue to that presented here in *Lifeco Serv. Corp. v. Robison*, 222 Cal. App. 3d 331 (Ct. App. 1990).  In *Lifeco*, the plaintiff brought suit in California court for a temporary restraining order, preliminary injunction, and permanent injunction.  The defendant filed a cross-complaint against the plaintiff.  The plaintiff moved to dismiss the cross-complaint based upon a forum selection clause in one of the agreements between the parties that

---

[7] The parallels drawn by Greystone between objections to venue and mandatory forum selection clause are wrong. The cases cited by Greystone regarding objections to improper venue are inapplicable because of the valid, binding mandatory forum selection clause here.

designated Texas as the appropriate forum for resolution of any disputes. The court found that the plaintiff did not waive its rights under the forum selection clause merely because it had filed a complaint and motion for a temporary restraining order in California. Thus, the court held that "[the Plaintiff's] action is not a waiver of their right to a Texas forum to settle the broader dispute among the parties which touches on all aspects of their relationship," and further stated that "in deference to the forum selection clauses the cross-complaint must be tried in Texas." *Id.* at 337; *see Smith, Valentino & Smith, Inc. v. Life Ass. Co. of Penn.*, 17 Cal.3d 491, 497, 551 P.2d 1206, 1210 (1976) (declining to find a waiver of forum selection clause where a plaintiff had previously brought suit in other than the required forum, due to the "relatively minor nature of the prior action when compared to the present proceedings").

Similarly, here, Plaintiffs brought this action and the conversion claim in New York based on the threat of imminent, irreparable harm posed by Greystone's threatened sale of Diesel shoes to off-price retailers. The claims asserted by Plaintiffs in this action arise out of and are connected with the TPA, and any damages claimed by Plaintiffs in this action arise out of and are connected with the TPA, which contains a permissive New York forum selection clause. Because payment for the shoes in question by Greystone was required pursuant to the TPA, this action was brought in New York. Finally, Diesel intentionally did not sue in New York – and deferred suit to Italy – for all claims that arose out of or were connected with the Distribution Agreement, Sourcing Agreement and/or License Agreements. Those claims will be litigated in Italy, as mandated under the various agreements. As a result, the forum selection clause was not waived.[8]

---

[8] *Licensed Practical Nurses, Technicians and Healthcare Workers of New York, Inc. v. Ulysses Cruises, Inc.*, 131 F. Supp. 2d 393 (S.D.N.Y. 2000), cited by Greystone, involves a limited waiver of the forum selection totally disparate from the facts here. There, defendants moved to dismiss based (a) upon a forum selection clause providing for a

### e. The TPA Did Not Amend The Forum Selection Clause In The Distribution Agreements

The TPA did not amend the forum selection clause in the Distribution Agreements. First, the TPA does not amend the Distribution Agreements in any way, but rather expressly preserved all rights under the Distribution Agreements. *See* Ex. F. Moreover, the TPA does not have a forum selection clause, but rather only a limited consent to jurisdiction. The forum clause in the TPA is permissive, and is much more limited in scope than the mandatory forum selection clause contained in the Distribution Agreements.

Thus, the forum clause in the TPA provides, in relevant part, "the parties submit to the jurisdiction of the state and federal courts located in New York County, New York for resolution of disputes." *See* Ex. F. This is a consent to jurisdiction clause, which only provides that the parties submit to jurisdiction in New York, not that New York is the only proper venue for resolution of disputes. *See GMAC Comm. Mortgage Corp. v. LaSalle Bank National Assoc.*, 242 F.Supp. 279, 282 (S.D.N.Y. 2002) (forum selection clause permissive where it does not contain specific clear language of election and language of exclusion). Further, the reference to "disputes" clearly relates solely to disputes about the TPA and not disputes arising out of, or connected with or associated with, the TPA.[9] For all of those above, the TPA did not amend the forum selection clause in the Distribution Agreement.

---

Florida forum and (b) on a statute of limitations clause in the parties' agreement. The court observed that the plaintiff, by bringing suit in New York, and defendant, by putting the issue before the court, waived the forum selection clause "at least to the extent of submitting to [the] court [the] issue of the validity and application of the [statute of] limitations clause." *See id.* at 410. Indeed, the court pointed out that the plaintiff had fought vigorously to keep the case in New York court, and did not indicate that plaintiff wanted to enforce the forum selection clause.

[9] Greystone cites to two cases to support its argument that the TPA amended the forum selection provision in the Distribution Agreements. Both of those cases are readily distinguishable. In *TMC Co., Ltd. v. M/V Mosel Bridge*, No. 01 CIV. 9860 LAK, 2002 WL 1880722 (S.D.N.Y. Aug. 15, 2002), the court found that a forum selection clause contained in a way bill was not superseded by a forum selection clause contained in an earlier service contract. The court pointed out that the forum selection clause contained in the way bill was mandatory, and the service contract

## II.     Greystone Does Not Have Standing to Assert Claims on Behalf of GBMI

Greystone does not have standing to assert claims as an assignee of GBMI. Greystone asserts the following counterclaims as the supposed assignee of GBMI's rights and causes of action: tortious interference with business relationships, tortious interference with contractual relationships, breach of the Distribution Agreements, breach of oral agreement and breach of the Sourcing Agreement.[10]  However, Greystone lacks standing to assert these claims on GBMI's behalf for several reasons, which were briefed more fully in Plaintiffs' Motion to Dismiss.

Despite Greystone's assertion to the contrary, Plaintiffs' reliance on the court's holding in *Capital Nat'l Bank of New York v. McDonald's Corp.*, 625 F.Supp. 874 (S.D.N.Y. 1986) is directly on point and *Capital* remains good law. *Capital* stands for the proposition that the assignment of a "truly future claim or interest does not work a present transfer of property. It does not because it cannot; no property yet exists." *Id.* at 879.  Greystone argues that *Capital* is no longer good law because of subsequent amendments to UCC § 9-106 (now 9-102). *See* Greystone Br. at 22-23.  That is a distinction without a difference.  The changes in the definition

---

itself expressly provided that all terms and conditions of Carrier's way bills should apply, "*notwithstanding the terms of the service contract.*" *TMC Co., Ltd.*, 2002 WL 1880722 at *2.  Similarly, here (i) the forum selection clause contained in the Distribution Agreements is mandatory and (ii) the Distribution Agreements, expressly preserves the parties' rights under the Distribution Agreements. *See* Ex. F. at 2.  While the court, in dicta, noted that a second contract could supersede an earlier contract, the court expressly stated that the later contract must contain the same subject matter as the earlier contract and be inconsistent with the earlier contract.  As is clear, the TPA and the Distribution Agreements did not cover the same subject matter and is not inconsistent with it since, as set forth above, the TPA expressly preserves the parties' rights under the Distribution Agreements.

Greystone's reliance on *Decca Records, Inc. v. The Republic Recording Co., Inc.*, 235 F.2d 360 (6th Cir. 1956) is also misplaced, because there the court simply held that a second contract which neglected to reserve any rights under a previous contract rescinded the previous contract.  Here, the TPA expressly reserved the parties' rights under the Distribution Agreements.

[10]  The Ninth Counterclaim must be dismissed for that reason as well to the extent that it asserts a fraud perpetrated on GBMI, and not directly on Greystone.

of "commercial tort claims" and "general intangibles" in UCC §§ 9-102(13), (42) did nothing to allow inchoate commercial tort claims or general intangibles to be used as collateral.

Second, Greystone's reliance on its after-acquired property clause is also misplaced. In *Capital*, the secured creditor had an after-acquired property clause, but that did not change the analysis. *See Capital*, 625 F.Supp. 874, 878. Thus, as *Capital* makes plain, there cannot be an assignment of a future claim.

Greystone also argues that UCC § 9-607(a)(3) allows it to assert claims on behalf of GBMI. UCC § 9-607(a) provides, in pertinent part:

> If so agreed, and in any event after default, a secured party: …(3) may enforce the obligations of an account debtor or other person obligated on collateral and exercise the rights of the debtor with respect to the obligations of the account debtor or other person obligated on collateral to make payment or otherwise render performance to the debtor, and with respect to any property that secures the obligations of the account debtor or other person obligated on the collateral.

*See* UCC § 9-607(a)(3).

The alleged collateral Greystone relies upon for § 9-607 purposes are GBMI's goodwill, contract rights and commercial tort claims. *See* Greystone Br. at 21. That is wrong. As UCC § 9-607 and the comments to UCC § 9-607 (that Greystone itself relies upon) make plain, Greystone is only entitled to receive performance on or proceeds of the collateral and to enforce claims inherent in the collateral, such as for product defects. *See* UCC § 9-607 Official Comment No. 3 ("For example, the claims might include a breach-of-warranty claim arising out of a defect in equipment that is collateral or a secured party's action for an injunction against infringement of a patent that is collateral. Those claims typically would be proceeds of original collateral under Section 9-315").

The comments to § 9-607 specifically indicate that the section applies "not only to collections from account debtors and obligors on instruments but also to enforcement more generally against all persons **obligated on collateral**." *See* UCC § 9-607 Official Comment No. 3 (emphasis added). Greystone's counterclaims do not relate to Diesel's obligations to GBMI and therefore UCC § 9-607 does not support those claims. Greystone's rights under UCC § 9-607(a)(3) here are limited to receiving payment or performance properly due to GBMI from Diesel – that is, receipt of product after payment by GBMI – or breach of warranty claims. Diesel is not otherwise obligated to GBMI and nothing more can be tortured out of UCC § 9-607(a)(3).[11]

### III.  The Counterclaims Fail To Allege Veil Piercing

Greystone's first counterclaim for breach of the Non-Interference Agreement must be dismissed against Props because Greystone has failed to allege any basis for holding Props liable on the Non-Interference Agreement.[12] The Non-Interference Agreement was entered into so that SpA and Kid, who as licensors to GBMI were owed millions of dollars, would not interfere with certain of Greystone's rights and remedies under the Loan Agreement.[13] *See* Ex. D. Props did not sign the Non-Interference Agreement and the allegations in the counterclaim are insufficient to pierce the corporate veil and hold Props liable under contracts of its parent or sister

---

[11] Greystone's reliance on *O'Hara & Shauer, Inc. v. Empire Bituminous Products, Inc.* 323 N.Y.S. 2d 190 (NY Co. Ct. 1971) and *Community Bank v. Newark & Lewis, Inc.*, 534 F. Supp. 456 (E.D.N.Y. 1982) for the proposition that it can assert future claims, is misplaced. In *Community Bank*, the court merely held that a secured creditor in accounts now existing or hereinafter acquired can sue to collect on unpaid invoices of the debtor other than those for which the secured creditor had made its loan. In *O'Hara & Shauer*, the court merely held that a perfected secured creditor in after acquired accounts had priority over of a subsequent judgment creditor with respect to such accounts. These cases do not hold that the secured creditor could have a security interest in future causes of action.

[12] Plaintiffs incorporate by reference Diesel S.p.A's Reply Memorandum of Law in Support of Motion to Dismiss Third Party Complaints ("SpA Reply Brief").

[13] Greystone's rights and remedies under the Loan Agreement are against GBMI.

corporation. *See* SpA Reply Brief at 5-6.

Greystone also argues that it need not pierce the corporate veil to hold Props liable under the Non-Interference Agreement. That is absurd: Props did not sign the agreement, and there is no allegation that Props intended to be bound by the Non-Interference Agreement. *See* Ex. D. It is black letter law that a non-party to a contract cannot be held liable under that contract. *See, e.g., Polymer Trading, S.A.R.L. v. CIC-Union Europeenne et Cie*, 225 A.D.2d 482, 483, 640 N.Y.S.2d 32, 33 (1st Dep't 1996); *Vogel v. Lyman*, 246 A.D.2d 422, 422-23, 668 N.Y.S.2d 162, 163 (1st Dep't 1998); *M. Paladino, Inc. v. J. Lucchese & Son Contracting Corp.*, 247 A.D.2d 515, 516, 669 N.Y.S.2d 318, 319 (2d Dep't 1998).[14] Thus, there is no basis to pierce the corporate veil to establish liability against Props for breach of the Non-Interference Agreement.

Greystone also alleges that Kid, SpA, and Props (1) converted the Long Beach Shoes; (2) tortiously interfered with GBMI's business relationships; (3) tortiously interfered with GBMI's contractual relationships, and (4) defrauded GBMI. However, Greystone fails to allege that Kid was responsible for any of the actions that form the basis for these claims and fails to allege facts sufficient to establish that the corporate veil between Kid and Props or SpA should be pierced, or that there is an agency relationship between the entities. Therefore, at the very least, those

---

[14] Greystone cites *Atlas Die Casting, Inc. v. Lendino*, 49 A.D.2d 917, 374 N.Y.S.2d 35 (2d Dep't 1975) and *In re Mid-West Metal Products, Inc.*, 13 B.R. 562 (Bankr. Kan. 1981) to argue that Props should be held liable despite the fact it did not sign the agreement. In *Atlas Die*, the factual issue to be resolved was whether the defendant had signed a contract as an individual or as an officer of the company. On the contrary, there is no question that Props did not sign the Non-Interference Agreement or in any other way agree to be bound by its terms. *Mid-West* is also distinguishable, and is a veil piercing case. In *Mid-West* the bankruptcy court found that a subsidiary company would be held liable for the debts of the parent only by finding that the parent was merely an alter ego of the subsidiary. The court determined that, unlike the facts presented here, the individuals that had signed the agreement in question, to which facially the parent company was a party, had intended to sign that agreement on behalf of the subsidiary. In addition, *Mid-West* was decided under Kansas law, and the court noted that the Kansas Supreme Court has "always been liberal in indicating a 'tendency to disregard the theory of a corporation as an entity separate from its corporators." *See Mid-West*, 13 B.R. at 568. This is different from New York law, where corporate entities are not lightly disregarded. As demonstrated in the SpA Reply Brief, Greystone has failed to properly plead veil piercing.

counterclaims must be dismissed as against Kid.

### IV. Greystone's Claims Must Be Capped

Finally, Greystone has completely failed to address the offset provision contained in the Distribution Agreements.[15] The Distribution Agreements limit any counterclaims exclusively to the extent of the specific claims brought by Plaintiffs in this lawsuit. *See* Ex. B, ¶ 13. Therefore, pursuant to Paragraph 13 of the Distribution Agreements, Greystone's claims must be capped to the extent of the specific claims brought by Plaintiffs in this lawsuit.

### Conclusion

For all of the foregoing reasons and the reasons set forth in Diesel's moving papers, this Court should grant Diesel's motion in its entirety.[16]

Dated: New York, New York
　　　　March 25, 2008　　　　　　　　　　　　　　DREIER LLP

　　　　　　　　　　　　　　　　　　　　　　　　By: /s/ Ira S. Sacks
　　　　　　　　　　　　　　　　　　　　　　　　　　　Ira S. Sacks
　　　　　　　　　　　　　　　　　　　　　　　　　　　Mark S. Lafayette
　　　　　　　　　　　　　　　　　　　　　　　　499 Park Avenue
　　　　　　　　　　　　　　　　　　　　　　　　New York, New York
　　　　　　　　　　　　　　　　　　　　　　　　Telephone: (212) 328-6100
　　　　　　　　　　　　　　　　　　　　　　　　Facsimile: (212) 328-6101
　　　　　　　　　　　　　　　　　　　　　　　　*Attorneys for Plaintiffs*

---

[15] In the event that Greystone may assert GBMI's alleged claims – which it cannot for the reasons set forth above – Greystone, as an alleged assignee, is subject to all offsets, defenses and claims of Diesel. *See* UCC 9-404.

[16] Plaintiffs request permission to file this 14 page reply brief.

14