**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DIESEL PROPS S.R.L. and<br>DIESEL KID S.R.L., | |
| Plaintiffs/Counter-Defendants, | **GREYSTONE'S OPPOSITION TO PLAINTIFFS' AND THIRD PARTY DEFENDANT'S MOTIONS TO DISMISS** |
| vs. | |
| GREYSTONE BUSINESS CREDIT II LLC and GLOBAL BRAND MARKETING INC., | |
| Defendants/Counter-Plaintiffs | Civil Action No. 07 CV 9580 (HB) |
| vs. | |
| DIESEL S.p.A. | |
| Third-Party Defendant | |

Defendant/counter-plaintiff Greystone Business Credit II, L.L.C. ("Greystone"), by its undersigned counsel, respectfully submits this Opposition to Plaintiffs Diesel Props S.r.l. and Diesel Kids S.r.l.'s (collectively, "Plaintiffs") Renewed Motion to Dismiss and Motion to Strike and Diesel S.p.A.'s (collectively with Plaintiffs, "Diesel") Renewed Motion to Dismiss and Motion to Strike (together, the "Motions").[1]  Greystone believes that Diesel's "renewed" Motions to Dismiss are improper and should be dismissed as moot because they attack a pleading that has become *functus officio*.  To the extent this Court allows Diesel's renewed Motions to Dismiss, however, Greystone incorporates and adopts by reference its Opposition to Plaintiffs' and Third Party Defendant's Motions to Dismiss (Docket Entry No. 77).

**INTRODUCTION**

On June 9, 2008, this Court granted Plaintiffs leave to file their Third Amended Complaint, which contained new allegations and new causes of action based on what Plaintiffs

---

[1] For the Court's convenience, Greystone is submitting only a single responsive brief to the two separate motions, which, while noticed separately, are both supported by the single affidavit submitted by Mr. Sacks.

apparently learned through the discovery process. In response to that amended pleading, and pursuant to well-established case law construing Rule 15(a) of the Federal Rules of Civil Procedure, Greystone could have met Plaintiffs' amended pleading with new counterclaims, added new affirmative defenses or filed a motion to dismiss. Here, however, Greystone did nothing so substantial. Instead, it added a few new factual allegations that support its pre-existing affirmative defenses and counterclaims.

Despite the modest changes made to Greystone's pleading, far more limited than the changes made to Plaintiffs' Third Amended Complaint, Diesel accuses Greystone of improperly amending its pleading. In essence, Diesel asks this Court to rule that while Plaintiffs should be permitted to amend their complaint for the third time to add both new factual allegations and entirely new claims for relief, Greystone's responsive pleading must be frozen for all time. Nothing in the Court's Individual Practices, the scheduling order governing this litigation, or the law supports such a result. Instead, the law clearly supports the opposite conclusion and permits Greystone to make new and different allegations in response to the amended complaint. Thus, this Court should deny Diesel's Motion to Strike.

This Court also should deny Diesel's "renewed" Motions to Dismiss as moot. The Motions to Dismiss purport to attack a pleading that no longer exists, while failing to address the new and different allegations of the operative pleading. Thus, the Motions to Dismiss seek relief that this Court cannot grant and that would serve no purpose in any event.

# ARGUMENT

I. **Neither This Court's Individual Practices, Nor the Federal Rules of Civil Procedure Bar a Defendant From Making Changes to Its Responsive Pleading When the Plaintiff Files an Amended Complaint.**

Mr. Sacks' declaration argues that the fourth numbered paragraph of this Court's Individual Practices prohibits Greystone from making the minor changes identified in the comparison attached to his declaration. The relevant provision of the Individual Practices provides as follows:

> i. The non-moving party must, within 10 days of receipt of the motion, notify the Court and your adversary in writing whether: 1) you intend to file an amended pleading; or 2) you will rely on the pleading being attacked. If the non-moving party elects not to amend its complaint, no further opportunities to amend will be granted.

Contrary to the argument set forth in Mr. Sacks' declaration, this provision has no application to the scenario now before the Court because it is Mr. Sacks' clients, the Plaintiffs, that sought and received leave to amend their Complaint. Having done so, this Court is no longer confronted with the situation addressed by Paragraph 4(A)(i)—in which a plaintiff seeks leave to amend its complaint after an adverse ruling on a motion to dismiss. Paragraph 4(A)(i) does nothing to limit Greystone's right to file a new responsive pleading when the moving party amends its own pleading. Mr. Sacks' interpretation of Paragraph 4(A)(i) makes no sense, as it would preclude Greystone from filing *any* response to Plaintiffs' Third Amended Complaint.

Mr. Sacks states in his declaration that if Greystone had wanted to alter its allegations in response to Plaintiffs' Third Amended Complaint, it would have had to do so by February 1, 2008—*more than four months before Greystone would even receive Plaintiffs' amended pleading*. Mr. Sacks' conclusion is absurd on its face and ignores well-settled law under the Federal Rules of Civil Procedure. In particular:

> When a plaintiff files an amended complaint, the new complaint supersedes all previous complaints and controls the case from that point forward . . . . Because a plaintiff's new complaint wipes away prior pleadings, the amended complaint opens the door for defendants to raise new and previously unmentioned affirmative defenses . . . to hold to the contrary would, in essence, enable plaintiffs to change their theory of the case while simultaneously locking defendants into their original pleading. This result would clearly contravene Federal Rule of Civil Procedure 15(a) which authorizes the amendment of answers as justice so requires.

*Plon Realty Corp. v. Travelers Ins. Co.*, 533 F. Supp. 2d 391, 394 (S.D.N.Y. 2008) (quoting *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999)) (internal punctuation omitted). In accordance with this principle, courts have permitted defendants to add new affirmative defenses, *see Plon Realty*, 533 F. Supp. 2d at 394; *Massey*, 196 F.3d at 735; add new counterclaims, *see Joseph Bancroft & Sons Co. v. M. Lowenstein & Sons, Inc.*, 50 F.R.D. 415, 418-19 (D. Del. 1970); *Tralon Corp. v. Cedarapids, Inc.*, 966 F. Supp. 812, 832 (N.D. Iowa 1997); or even move to strike or dismiss the amended pleading, *see Sidari v. Orleans County*, 174 F.R.D. 275, 283 (W.D. N.Y. 1996).

Notably, these cases held or implied that it did not matter whether the newly-raised defense, counterclaim or motion addressed claims that pre-dated the amendment to the complaint. *See*, *e.g.*, *Sidari*, 174 F.R.D. at 283; *Massey*, 196 F.3d at 735. Nor did it matter whether the defendant moved for leave to amend. *See*, *e.g.*, *Joseph Bancroft*, 50 F.R.D. at 419; *Tralon*, 966 F. Supp. at 832.[2] Instead, "[s]ince the amending pleader chooses to redo his original work, and receives the benefit of this *nunc pro tunc* treatment, he can hardly be heard to

---

[2] *Tralon* did suggest in dicta that a defendant would need leave of court prior to asserting a new counterclaim if the plaintiff's amendment did not "change the theory or scope of the case." *Id.* at 832. This aspect of *Tralon* is of no consequence here, however, because Greystone did not add a new counterclaim. *See Veronico v. Pastapunto*, 1999 WL 1216951, at *1 (S.D.N.Y. Dec. 17, 1999) (refusing to apply the exception from *Tralon* where the defendant had merely asserted new defenses and had not added a counterclaim). In any event, by adding new claims for fraud and promissory estoppel, Diesel has, in fact, changed the scope of the case.

complain that claims filed against him are improper because they should have been asserted in response to his original pleading." *Joseph Bancroft*, 50 F.R.D. at 419.

In its latest pleading, Greystone went nowhere near the outer limits of what Rule 15(a) permits. Greystone did not move to dismiss the Third Amended Complaint. It did not add new counterclaims. It did not allege new affirmative defenses (with the exception of one new affirmative defense that Greystone did not yet possess during the earlier rounds of pleading and the addition of which is, ironically, not challenged by Diesel). Instead, Greystone simply added a few new factual allegations to support its ***pre-existing*** affirmative defenses and counterclaims. There is nothing improper about Greystone's inclusion of these new allegations. Diesel's Motion to Strike ignores the Federal Rules of Civil Procedure, misapprehends the purpose of Paragraph 4(A)(i) of this Court's Individual Practices, and should be denied.

**II.    The Scheduling Order Entered In This Case Prohibits Only The Raising Of New Claims or Defenses After June 2, 2008.**

Mr. Sacks' declaration also claims that Greystone's responsive pleading runs afoul of the Scheduling Order entered in this case on December 3, 2007 (the "Scheduling Order"), which provides that "[n]o additional causes of action or defenses may be asserted after June 1, 2008." But Diesel is simply wrong. Greystone's responsive pleading does not raise a new cause of action. And, while Greystone pleads one additional defense, that defense (1) bears no relationship to Diesel's Motions to Dismiss; (2) arises out of a settlement agreement that had not yet even come into existence at the time of the earlier pleadings; and (3) in any event, is not one of the allegations that Diesel has requested be stricken. Accordingly, the Scheduling Order provides no support for Diesel's Motion to Strike.

**III.    This Court Should Deny Diesel's "Renewed" Motions to Dismiss As Moot.**

In connection with its Motion to Strike, Diesel seeks to "renew" its Motions to Dismiss Greystone's Counterclaims and Third-Party Complaint.  In a confusing twist, however, Diesel asks this Court to apply the renewed Motions to Dismiss only after striking the so-called "unauthorized portions" of Greystone's most recent pleading.  According to Mr. Sacks' declaration, Diesel requests that this Court strike certain (but not all) new allegations in Greystone's pleading, and bring back certain allegations omitted from Greystone's current pleading, but which appeared in earlier pleadings.  *See* Declaration at ¶ 14 (noting correctly that Greystone's most recent pleading omitted certain language that had appeared in earlier versions).  There is no authority for Diesel to request that this Court cherry-pick from allegations in Greystone's current and former pleadings.

Instead, because all of Greystone's modifications to its most recent pleading fall well-within permissible limits under Rule 15(a), if Diesel intends to file a motion to dismiss, it must do so with arguments that address the substance of Greystone's new pleading.  "It is well-established that an amended pleading supersedes the original pleading; facts not incorporated into the amended pleading are *functus officio*."  *Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1204 (7th Cir. 1998); *accord* 6 Charles Alan Wright, et al., *Federal Practice and Procedure* § 1476 (2d ed. 1990) ("A pleading that has been amended under Rule 15(a) supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified.").  Thus, a motion to dismiss an earlier pleading serves no purpose and can have no effect.  *See Kelley*, 135 F.3d at 1204 (reversing dismissal of amended complaint where district court had relied in part on the allegations of a prior version of the complaint in determining that dismissal was proper).  As Diesel's Renewed Motions to Dismiss fail to address any of Greystone's modifications, this Court should deny the Renewed Motions to Dismiss as moot.

*See Nat. City Mortg. Co. v. Navarro*, 220 F.R.D. 102, 106 (D. D.C. 2004) (denying as moot a motion to dismiss the original complaint in light of the filing of an amended complaint); *Turner v. Kight*, 192 F. Supp. 2d 391, 397 (D. Md. 2002) (same).

IV. **Even if Diesel Has Properly "Renewed" Its Motions to Dismiss, This Court Should Take Greystone's New Allegations Into Account When Deciding those Motions.**

Although Greystone's original Answer, Counterclaims and Third-Party Complaint more than satisfy the notice pleading requirements of Fed. R. Civ. P. 8(a), this Court must look to the allegations made by Greystone in response to Diesel's Third Amended Complaint when deciding Diesel's Motions to Dismiss, including Greystone's new allegations. Those new allegations provide further reason to deny the Motions to Dismiss. Indeed, the fact that Diesel has chosen to move to strike Greystone's new pleading on procedural grounds, rather than address it on the merits, strongly suggests that Diesel believes that Greystone's amendment cures whatever deficiencies Diesel believed to exist in the earlier pleading.

Diesel's earlier Motions to Dismiss focused largely on Greystone's alleged failure to differentiate between the three Diesel Entities and identify the specific conduct taken by each entity. As demonstrated in prior briefing, Diesel's position finds no support in case law or the Federal Rules of Civil Procedure. Even if it did, however, Greystone's new allegations would cure any deficiency by providing additional detail regarding the relationship between Diesel SpA, Diesel Props and Diesel Kid. For example, Greystone clarified that "Diesel SpA was heavily involved in the relationship between Diesel, GBMI and Greystone, and made all decisions on behalf of the Diesel Entities. Upon information and belief, Diesel Props and Diesel Kid could not take action on significant matters without the approval, authority and consent of Diesel SpA." Answer to Third Amended Complaint at ¶ 82. Greystone also alleged that "[t]he Diesel Entities effectively operated as a single entity, with decision-making responsibility vested

-7-

in Diesel SpA" and that "employees of Diesel SpA participated in and made decisions regarding the business activities of Diesel Props and Diesel Kid." *Id.* at ¶ 86; *see also id.* at ¶ 122 ("No one from Diesel ever differentiated between Diesel SpA and Diesel Props or Diesel SpA and Diesel Kid in the day-to-day performance of the various agreements between Greystone, GBMI and the Diesel Entities . . . the parties understood that Mezzasoma was representing Diesel Props, Diesel Kid and Diesel SpA in his communications with GBMI."). Greystone even provided an example of Diesel SpA's heavy involvement in the GBMI-Diesel relationship, alleging that in March 2007, "Diesel SpA employees took the leading role for the Diesel Entities" in meetings regarding the performance of GBMI under the Distribution Agreement. *Id.* at ¶ 86.[3]

These allegations help to establish the liability of SpA, Props and Kid on Greystone's claims. Indeed, if, as alleged, SpA made the decision to file this lawsuit, take the Long Beach Shoes out of customs, and solicit orders from GBMI's customers, then SpA would be directly liable under Greystone's tort and contract theories of recovery. Similarly, if Props acted at the direction of SpA in those same acts, then Props would be liable on those claims, too, despite Props' argument that it is not a party to one of the contracts at issue. Finally, if, as alleged, Mezzasoma had actual or apparent authority to represent Props, Kid and SpA, then Mezzasoma's allegations would give rise to liability against any of those entities.[4]

The purpose of the new allegations remains the same as that of the old allegations: to defeat Diesel's attempt to play a corporate "shell game" in which, for example,

---

[3] Just this week, Diesel finally provided hundreds of thousands of pages of documents, including internal emails, responsive to discovery requests issued several months ago. Greystone anticipates that these new emails will demonstrate many more examples of SpA's heavy involvement in the activities of Props and Kid. Greystone obviously could not have made any allegations arising out of these emails prior to receiving them.

[4] In any event, the new allegations do not depart substantially from prior versions of Greystone's pleading. Greystone previously alleged, for example, that at all relevant times, "Diesel SpA supervised and directed the actions of Diesel Props and Diesel Kid." Answer to Second Amended Complaint at ¶ 98. This is very similar, although slightly less detailed, than Greystone's current allegations. Based on information obtained during oral and written discovery since July 2, 2008, Greystone could now go even further in making allegations regarding the

Props claims to have no duty to comply with SpA's contractual obligations. Greystone has alleged all along that Diesel SpA directed the actions of its two subsidiaries, thus defeating Diesel's apparent attempt to rely on corporate formalities to avoid contractual and legal obligations. The newest round of allegations simply articulates that theory in slightly more detail. Thus, in addition to the reasons stated in Greystone's Opposition to Plaintiffs' and Third Party Defendant's Motions to Dismiss, which is incorporated and adopted by reference, Greystone urges this Court to deny the Motions to Dismiss on account of the new allegations in Greystone's pleading.

### IV.     Diesel SpA Also Must Address Greystone's New Allegations.

Diesel SpA may attempt to argue that it falls outside the well-established authority justifying Greystone's modifications to its pleading because SpA was not one of the parties who sought leave to amend in the first place. This argument would fail.

First, Diesel SpA is so closely linked to the other two Diesel entities that the litigation actions of those other two entities should be imputed to SpA. Indeed, as demonstrated in Greystone's July 23, 2008 letter to this Court, Plaintiffs' newly-added fraud and promissory estoppel claims arise directly out of representations allegedly made to executives of Diesel SpA. Thus, Diesel SpA cannot plausibly claim to have been uninvolved in the amendment of Plaintiffs' complaint. Moreover, it would make no sense to assess the viability of Greystone's claims against Diesel SpA under the old allegations, but assess the viability of the claims against the other two Diesel entities under a completely different and new set of allegations. The same operative facts underlie the claims against all three entities. Given the substantial similarity between Greystone's counterclaims and third-party claims, and the fact that Diesel's own

---

relationship between SpA, Props and Kid, and the role of SpA in the Diesel-GBMI relationship. Rule 8(a), of course, does not require this heightened level of detail.

decisions forced the filing of the third-party claims, Diesel SpA should not be permitted to separate itself from the fate of Props and Kid.

Moreover, according to the Second Circuit, "absent evidence of undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility, Rule 15's mandate [that leave to amend 'shall be freely given'] must be obeyed." *Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 283 (2d Cir. 2000). Indeed, Rule 15 "reflects two of the most important principles behind the Federal Rules: pleadings are to serve the limited role of providing the opposing party with notice of the claim or defense to be litigated . . . and 'mere technicalities' should not prevent cases from being decided on the merits." *Id.* For that reason, and in the alternative, Greystone respectfully requests leave to file its amended Third Party Claims against Diesel SpA pursuant to Rule 15(a)(2).

Diesel SpA cannot possibly claim "undue delay, bad faith, or dilatory motive" on the part of Greystone, nor can it claim "undue prejudice" resulting from the additional allegations in Greystone's most recent pleading. Those allegations do not raise new issues, as they do nothing more than add factual detail to pre-existing allegations. Greystone added the new allegations on the basis of information obtained during written discovery, which had not even commenced at the time of Greystone's earlier pleading. Thus, Greystone could not have amended its pleading within ten days of the earlier motions to dismiss even if it believed such amendment to be necessary to survive a motion to dismiss (which, of course, it did not). Indeed, Diesel's production of documents continues to this very day, and each new production from Diesel provides Greystone with additional facts to support its causes of action against the three Diesel entities. Greystone should not be punished for not having these documents (or, by extension, these facts) sooner. Instead, this Court should deny the Motion to Strike even with

respect to Diesel SpA, or grant Greystone leave to file its amended Third Party Claims against Diesel SpA pursuant to Rule 15(a)(2).

## CONCLUSION

On June 2, 2008, Plaintiffs filed their Third Amended Complaint. Plaintiffs included new causes of action, as well as new factual allegations unrelated to their new causes of action. Plaintiffs' Third Amended Complaint opened the door to Greystone filing an amended responsive pleading that changed far less than Diesel's amendment. For this reason, and others set out more fully above, this Court's Individual Practices concerning amendments of complaints following an adverse ruling on a motion to dismiss is irrelevant. Moreover, nothing in the Federal Rules or Scheduling Order prohibits Greystone from making the modest changes that it did to its responsive pleading. Accordingly, this Court should deny Diesel's Motion to Strike and deny Diesel's "renewed" Motions to Dismiss as moot.

Dated: August 1, 2008

Respectfully submitted,

GREYSTONE BUSINESS CREDIT II, L.L.C.,

By: /s/ Stephen H. Locher
    One of its Attorneys

Mark N. Parry
Danielle S. Friedberg
MOSES & SINGER LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
(212) 554-7800
mparry@mosessinger.com
ebusch@mosessinger.com
*Attorneys for Defendant*
  *Greystone Business Credit II, L.L.C.*

Of Counsel:

>Richard M. Kohn
>David J. Chizewer
>A. Colin Wexler
>Stephen H. Locher
>GOLDBERG KOHN BELL BLACK
>  ROSENBLOOM & MORITZ, LTD.
>55 East Monroe Street
>Suite 3300
>Chicago, Illinois  60603
>(312) 201-4000

Case 1:07-cv-09580-HB-RLE   Document 116   Filed 08/01/2008   Page 12 of 13

-13-

## CERTIFICATE OF SERVICE

The undersigned, an attorney, certifies that on August 1, 2008 he caused a copy of **Greystone's Opposition To Plaintiffs' And Third Party Defendant's Motions To Dismiss** to be served by the Court's ECF Notification Delivery System upon the following:

> Ira S. Sacks
> Dreier LLP
> 499 Park Avenue
> New York, NY 10022
>
> Glen Silverstein
> Leader & Berkon LLP
> 630 Third Avenue
> New York, NY 10017

/s/ Stephen H. Locher
    Stephen H. Locher